No. 20–2387

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

SCHUYLER FILE,

Plaintiff-Appellant,

v.

KATHLEEN BROST, in her official capacity as President
of the State Bar of Wisconsin, LARRY MARTIN, in his of-
ficial capacity as Director of the State Bar of Wisconsin,
and Chief Justice PATIENCE ROGGENSACK and Jus-
tices ANN WALSH BRADLEY, ANNETTE ZIEGLER,
REBECCA BRADLEY, REBECCA DALLET, BRIAN
HAGEDORN, and JILL KAROFSKY in their official ca-
pacities as members of the Wisconsin Supreme Court,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:19-cv-01063-LA
Honorable Lynn Adelman

**APPELLANT'S BRIEF AND SHORT APPENDIX**

Daniel R. Suhr
   *Counsel of Record*
Jeffrey M. Schwab
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
dsuhr@libertyjusticecenter.org

*Attorneys for Plaintiff-Appellant*

## DISCLOSURE STATEMENT

1.  The full name of every party that the undersigned attorney represents in the case: Appellant Schuyler File.

2.  The name of all law firms whose partners or associates have appeared on behalf of the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this Court: the Liberty Justice Center.[1]

3.  If the party or amicus is a corporation: not applicable.

/s/ Daniel R. Suhr
Daniel R. Suhr
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
312-263-7668
dsuhr@libertyjusticecenter.org

*Appellant's Counsel of Record*

---

[1] Liberty Justice Center is technically not a law firm, but a legal aid foundation.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS...................................................................... ii

TABLE OF AUTHORITIES ............................................................... iv

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF THE ISSUE ............................................................. 1

STATEMENT OF THE CASE ............................................................. 2

    I.    Plaintiff Schuyler File is a Wisconsin attorney who wants
to decide for himself whether to join or subsidize the State Bar. ....... 2

    II.    The State Bar of Wisconsin is a professional/trade association
that regularly speaks on controversial public issues ......................... 2

    III.    Legal and procedural background ....................................... 5

SUMMARY OF ARGUMENT .............................................................. 6

ARGUMENT ....................................................................................... 8

    I.    The requirement that all lawyers who practice law in Wisconsin
must join and pay money to the State Bar of Wisconsin raises
serious First Amendment concerns that cannot be justified by
the government's interests .................................................................. 8

        A.  Compelled speech, subsidy, and association infringe on First
Amendment freedoms, and can only be justified by a
compelling state interest and the use of the least restrictive
means ............................................................................................... 8

        B.  Over time, the Supreme Court has narrowed its reading of
how a mandatory bar may spend its compulsory dues....................... 9

        C.  The only possible compelling interest is the regulation of
lawyers' ethical conduct, but the Wisconsin State Bar has
no role in regulating legal ethics. ..................................................... 12

D.  The State Bar coerces support and subsidy for speech on
    issues of great public concern in violation of the core holdings
    of *Janus* .................................................................................... 15

E.  What is more, the *Keller/Hudson* dues deduction calculation
    method is condemned by *Janus* ............................................. 21

II.  In the alternative, the Supreme Court's GVR in *Fleck v. Wetch*
     gives this Court permission to revisit *Keller* in light of *Janus*. ......... 22

III.  In the further alternative, this Court should recognize that
      *Janus* implicitly overruled much of *Keller* .......................................... 24

A.  The *Levine* analysis shows that much of *Keller* has been
    overruled. ................................................................................ 24

B.  *Price v. City of Chicago* is distinguishable because in
    *Janus* the Supreme Court overruled *Abood,* the foundation
    for *Keller* ..................................................................................... 28

CONCLUSION .................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) ....................................................... 7

*Amaral v. Ryan*, No. CV-16-00594-PHX-JAT (BSB), 2017 U.S. Dist. LEXIS 184976 (D. Ariz. Nov. 8, 2017) ................................................................................................. 23

*Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) ............................................................ 24

*Bd. of Regents v. Southworth*, 529 U.S. 217 (2000) ...................................................... 19

*Byars v. State,* 336 P.3d 939 (Nev. 2014) ...................................................................... 23

*Chicago Teachers v. Hudson*, 475 U.S. 292 (1986) ....................................................... 10

*Doe v. Elmbrook,* 687 F.3d 840 (7th Cir. 2012) ............................................................ 19

*Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735 (W.D. Tex. 2007) ... 24

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ........................................................................ 24

*Fisher v. Univ. of Tex.*, 136 S. Ct. 2198 (2016) ............................................................. 24

*Fleck v. Wetch*, 139 S. Ct. 590 (2018) ...................................................................... 7, 22

*Graham v. Collins*, 506 U.S. 461 (1993) ....................................................................... 24

*Guilbeau v. Pfizer Inc.*, 880 F.3d 304 (7th Cir. 2018) ................................................... 11

*Harris v. Quinn,* 573 U.S. 616 (2014) .................................................................... passim

*Henry v. Rock Hill*, 376 U.S. 776 (1964) ...................................................................... 23

*Hill v. Colorado*, 530 U.S. 703 (2000) .......................................................................... 28

*In re State Bar of Wis.*, 169 Wis. 2d 21 (1992) ............................................................. 14

*Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490 (7th Cir. 2018) ................. 24

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ............................................................ passim

*Jarchow v. State Bar*, 140 S. Ct. 1720 (2020) .......................................................... 26, 30

*June Medical Services, LLC v. Gee*, 140 S. Ct. 2103 (2020) ......................................... 29

*Keller v. State Bar of Cal.*, 496 U.S. 1 (1990) ......................................................... passim

*Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010) ........................... 11, 16, 27

*Klikno v. United States,* 928 F.3d 539 (7th Cir. 2019) ................................................. 23

*Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) ............................................................ 9

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008) ......................................... 11

*Lathrop v. Donohue*, 367 U.S. 820 (1961) .......................................................... 7, 10, 12

*Lawrence v. Chater*, 516 U.S. 163 (1996) ..................................................................... 23

*Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988) ..................................... 7, 24, 25, 29

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .............................. 11

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..................................................................... 9

*McCutcheon v. FEC*, 572 U.S. 185 (2014) ...................................................................... 9

*Moskal v. United States*, 498 U.S. 103 (1990) .............................................................. 24

*N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494 (2015) .................................... 7

*Nichols v. Alcatel USA, Inc.*, 532 F.3d 364 (5th Cir. 2008) ......................................... 11

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) ................................................................ 24

*Okla. Tax Comm'n v. United States*, 319 U.S. 598 (1943) ........................................... 24

*Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir. 1986) ......... 29

*Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................................... 30

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) ..................................................... 28

*Price v. City of Chicago,* 915 F.3d 1107 (7th Cir. 2019) .............................................. 28

*Richardson v. McCann*, 653 F. Supp. 2d 831 (N.D. Ill. 2008) ....................................29
*Sanchez v. Sessions*, 894 F.3d 858 (7th Cir. 2018) ....................................................29
*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ....................................................................24
*Thompson v. Marietta Educ. Ass'n*, No. 19–4217, 2020 U.S. App. LEXIS 26989 (6th Cir. Aug. 25, 2020) ..............................................................................................31
*Trinity Lutheran Church v. Comer*, 137 S. Ct. 2012 (2017) ......................................28
*United States v. Burke*, 781 F.2d 1234 (7th Cir. 1985) ..............................................29
*United States v. Henderson*, 536 F.3d 776 (7th Cir. 2008) ........................................26
*United States v. United Foods*, 533 U.S. 405 (2001) ....................................................6
*Wash. Post v. McManus*, 355 F. Supp. 3d 272 (D. Md. 2019) ....................................9
*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ................................29
*Williams-Yulee v. Fla. Bar,* 575 U.S. 433 (2015)........................................................9

**Statutes**

28 U.S.C. § 1291 ..............................................................................................................1
28 U.S.C. § 1331 ..............................................................................................................1
28 U.S.C. § 1343 ..............................................................................................................1
42 U.S.C. § 1983..............................................................................................................1

**Other Authorities**

Jonathan R. Macey, *The Transformation of the American Law Institute,* 61 GEO. WASH. L. REV. 1212 (1993) ....................................................................................20
William Baude & Eugene Volokh, *The Supreme Court 2017 Term: Comment: Compelled Subsidies and the First Amendment*, 132 HARV. L. REV. 171 (2018) ....27

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the United States Constitution, and pursuant to 28 U.S.C. § 1343, because relief is sought under 42 U.S.C. § 1983. On July 28, 2020, Plaintiff-Appellant filed a timely notice of appeal of the District Court's June 29, 2020, judgment (Short Appendix ("S.A." 1)) granting a motion to dismiss and judgment to the Defendants. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.[2]

## STATEMENT OF THE ISSUE

In 2018, the U.S. Supreme Court held in *Janus v. AFSCME*, 138 S. Ct. 2448, 2477, 2483 (2018), that compelling a person to associate with and subsidize the speech of private speakers raises serious First Amendment concerns and is subject to at least exacting scrutiny. If Plaintiff fails to belong and pay dues to the State Bar of Wisconsin, the justices of the Wisconsin Supreme Court will fine and discipline him. The State Bar uses the dues it collects from members to regularly engage in politically and ideologically controversial activities. Does compelling Plaintiff to associate with and subsidize the State Bar of Wisconsin violate the First Amendment?

---

[2] Below, the case was denominated *File v. Kastner* because Jill Kastner was president of the bar at the time the case was filed. She has since been replaced by Kathleen Brost, so the case here is captioned *File v. Brost*. *See* Fed. R. App. Pro. 43(c)(2) ("When a public officer who is a party to an appeal or other proceeding in an official capacity dies, resigns, or otherwise ceases to hold office . . . [t]he public officer's successor is automatically substituted as a party. Proceedings following the substitution are to be in the name of the substituted party . . ."). Similarly, Justice Daniel Kelly has been replaced by Justice Jill Karofsky in the caption above.

## STATEMENT OF THE CASE

### I.     Plaintiff Schuyler File is a Wisconsin attorney who wants to decide for himself whether to join or subsidize the State Bar.

Schuyler File is a Wisconsin attorney who wants to decide for himself what organizations he associates with and supports. S.A. at 2. He has been a member of the State Bar of Wisconsin since December 2017, when he moved to Wisconsin for a new career opportunity. Dkt. 1, ¶ 6. He previously practiced in Indiana, where he was not forced to join the state bar. *Id.* The justices of the Wisconsin Supreme Court deny him the choice whether to join or subsidize the State Bar by threatening him with suspension and sanctions if he fails to belong and pay dues. S.A. at 4–7. *See* Wis. S. Ct. R. 10.03. Last year, State Bar dues were $260; the Wisconsin Supreme Court charges an additional $236 to fund the Board of Bar Examiners ($11), Office of Lawyer Regulation ($155), Fund for Client Protection ($20), and Trust Account Foundation ($50).[3] *See* Dkt. 1, ¶ 12 (when the suit was filed, dues were $258).

### II.     The State Bar of Wisconsin is a professional/trade association that regularly speaks on controversial public issues.

The State Bar of Wisconsin is the professional/trade association for lawyers in Wisconsin. Dkt. 1, ¶ 14.[4] It sponsors conferences and continuing education seminars,

---

[3] "Maintaining Your Membership," State Bar of Wis. (visited Sept. 1, 2020), available at https://www.wisbar.org/aboutus/membership/membershipandbenefits/Pages/Maintaining-Your-Membership.aspx#status.

[4] *See, e.g.*, "Our Story," State Bar of Wis. on Facebook (visited Sept. 1, 2020), available at https://www.facebook.com/pg/StateBarofWI/about/ ("We are a professional association that provides educational, career development, and other services to over 24,000 Wisconsin lawyers.").

it advocates for the profession in the halls of government, it files amicus briefs, it publishes books and a monthly magazine. Dkt. 1, ¶¶ 17–21. It even sponsors cruises and offers discounts on office supplies. Dkt. 22, p. 28 n6. *See generally* www.WisBar.org.

And it engages in extensive discussion of the law, including advocacy for certain views of the law, advocacy for potential new laws, and advocacy on public issues connected to the law. Dkt. 1, ¶¶ 17–21. For instance, the current top ("pinned") tweet on the State Bar's twitter account reads, "Black Americans suffer from police brutality and crippling fear caused by systemic racism and implicit bias that is ingrained our legal system, law enforcement institutions, and countless other facets of American life. This is unacceptable. Black Lives Matter."[5] These statements may or may not be true, or represent the views of a majority of Wisconsin lawyers, but they are certainly speech on issues of public concern; in the most recent Marquette University Law School poll, Wisconsinites were divided 48–38 when asked if they have a favorable or unfavorable impression of the Black Lives Matter movement.[6]

What the State Bar does not do, however, is act as the formal regulatory authority over Wisconsin lawyers. Dkt. 1, ¶ 15. It does not administer the bar exam; the Board of Bar Examiners does that. *Id*. (*citing* (Wis.) S. Ct. R. Ch. 40).[7] The Board of Bar

---

[5] Available at https://twitter.com/StateBarofWI/status/1273263903795970048.

[6] "Marquette Law School Poll: August 4–9, 2020, Likely Voters," Marquette University Law School (visited Sept. 1, 2020), available at https://law.marquette.edu/poll/category/results-and-data/.

[7] *See* Nat. Conf. of Bar Examiners, "Directory of State Bar Admission Agencies," http://www.ncbex.org/assets/BarAdmissionGuide/NCBE-CompGuide-2019.pdf

Examiners is also the state agency responsible for ensuring compliance with the Wisconsin Supreme Court's rules for continuing legal education. *Id.* (*citing* (Wis.) S. Ct. R. Ch. 31).[8] The Office of Lawyer Regulation is the state agency of the judicial branch responsible for investigating compliance with the Rules of Professional Conduct governing attorneys in Wisconsin. *Id.* (*citing* (Wis.) S. Ct. R. Ch. 21).[9]

The State Bar does, from time to time, propose amendments to the ethical codes governing lawyers. *See, e.g., In the Matter of the Petition to Amend Supreme Court Rule Chapter 31 and Chapter 10.03 [15–05]*. Yet the State Bar is hardly unique in this regard. Other individuals and entities far more frequently bring petitions to change the rules governing bar admission or ethical practices. *See, e.g., In the Matter of Petition to Amend Board of Bar Examiners Rule 6.02 [17–10]* (private attorney); *In the matter of amending Supreme Court Rules pertaining to referees and attorney discipline [19–04]* (Office of Lawyer Regulation); *In the Matter to Amend SCR 31.02 and 31.05 Relating to Continuing Legal Education Requirements [16–06]* (Board of Bar Examiners); *In the Matter of Petition proposing an amendment to SCR 31.05*

---

(listing eight states where the state bar is responsible for attorney admissions; Wisconsin is not one of them).

[8] *See* Continuing Legal Edu. Regulators Ass'n, "Directory," https://www.clereg.org/directory (listing 21 states where the state bar is responsible for CLE compliance; Wisconsin is not one of them).

[9] *See* American Bar Ass'n, "Directory of Lawyer Disciplinary Agencies," https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/current_disciplinary_agency_directory_online.authcheckdam.pdf (listing 18 states where the attorney discipline function is housed in the state bar; again, Wisconsin is not among them).

*concerning teaching as means to satisfy the requirements of SCR 31.02 [11–06]* (thirteen private attorneys); *In the Matter of Petition to Amend or Repeal SCR 40.03 [09–09]* (71 private attorneys). Moreover, oftentimes the State Bar's proposed changes to the ethical code begin with the American Bar Association. *See, e.g., In the Matter of Petition for Amendments to Rules of Professional Conduct for Attorneys [15–03]* (State Bar petition begins by acknowledging, "The petition reflects the recent American Bar Association ("ABA") Ethics 20/20 amendments to the Model Rules of Professional Conduct…"). In fact, the last time the Wisconsin Supreme Court ordered a thorough review of the entirety of the professional code, it entrusted the task to a specially created committee of its own choosing rather than to the State Bar. *See In the matter of the Petition for Amendment to Supreme Court Chapter 20 – Rules of Professional Conduct for Attorneys [04–07]*. These examples show that many actors besides the State Bar propose professional code provisions to govern legal practice.

### III.   Legal and procedural background.

In order to vindicate his First Amendment rights, File brought a pre-enforcement § 1983 challenge against the officers of the State Bar and the justices of the Wisconsin Supreme Court (Dkt. 1). The Bar Defendants and the State Defendants both filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), which were granted. The District Court found that the File had standing and that the Supreme Court justices did not have immunity, S.A. at 4–8, but ruled against him on the merits. S.A. at 8–13. The District Court acknowledged that "the [Supreme] Court's reasoning in *Janus* might in some respects support the argument that mandatory bar membership is

unconstitutional," but ultimately concluded only the Supreme Court could reach that decision. S.A. at 11. File timely appealed to this Court.

## SUMMARY OF ARGUMENT

"Freedom of association plainly presupposes a freedom not to associate." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463 (2018) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) (internal punctuation omitted)). Similarly, "First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech . . ." *United States v. United Foods*, 533 U.S. 405, 411 (2001).

Yet this is precisely what the Defendants do to lawyers in Wisconsin — they force them on pain of fines, suspension, and ultimately the loss of their livelihood, to join and pay money to the State Bar of Wisconsin, which uses their affiliation and dollars to speak on controversial issues of public moment.

Plaintiff does not wish to associate with or subsidize the State Bar of Wisconsin. If he exercises that desire, he credibly fears the Wisconsin Supreme Court will enforce its rules against him, costing him professionally and monetarily. This threat of enforcement chills Plaintiff's speech, and so he continues to pay dues and belong to an organization he does not want to support.

None of this is constitutional. Over time, the U.S. Supreme Court has narrowed its reading of what a court may compel from those who practice before it. Current cases show that compelled association and subsidy can only persist if justified by a compelling interest and only if achieved by the least restrictive means (termed

exacting scrutiny often, but elements of a test described elsewhere as strict scrutiny). In its most recent statement on point, in *Harris v. Quinn*, the Court emphasized that the government's compelling interest in a mandatory bar with mandatory dues is in the formal systems of professional ethical regulation. 573 U.S. 616, 655–56 (2014). Because the State Bar is not the formal system for legal ethics in Wisconsin, the government's compelling interest in mandatory membership is not present here.

Before *Harris*, the Court took an admittedly broader view of the government's interests in a mandatory bar in *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990), and *Lathrop v. Donohue*, 367 U.S. 820 (1961) (plurality). These decisions, applying something approximating rational-basis scrutiny, upheld the mandatory bar based on the Supreme Court's earlier decisions on mandatory unionization, such as *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). However, the Supreme Court explicitly overruled *Abood* two years ago in *Janus*. The Supreme Court subsequently vacated and remanded the 8th Circuit's decision in *Fleck v. Wetch* for reconsideration of the mandatory bar in light of *Janus*. 139 S. Ct. 590, *1 (2018). If this Court does not find *Harris* a sufficient basis for its ruling, it should accept the Supreme Court's "GVR" as an invitation to do as the Supreme Court says, and reconsider the mandatory bar "in light of" *Janus*. If this Court finds the GVR in another case an insufficient basis for its own reconsideration, then it should conclude that *Janus* implicitly overruled much of *Keller* using the principles of *Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988).

Plaintiff is not seeking an end to the regulation of lawyers' professional conduct. States have a compelling interest in ensuring the ethical practice of important

7

professions in our society, including lawyers. *See N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 512–13 (2015). But an association that executes on a state's compelling interest must be narrowly tailored to that purpose. The State Bar of Wisconsin, unlike the bar in other states, fails that test because it performs no formal regulatory functions — it is purely a trade association or guild for lawyers. For this reason, it cannot survive exacting scrutiny. The District Court's judgment must be reversed.

## ARGUMENT

I. **The requirement that all lawyers who practice law in Wisconsin must join and pay money to the State Bar of Wisconsin raises serious First Amendment concerns that cannot be justified by the government's interests.**

A. **Compelled speech, subsidy, and association infringe on First Amendment freedoms, and can only be justified by a compelling state interest and use of the least restrictive means.**

Compelled speech, subsidy, and association infringe significantly on First Amendment freedoms. "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Janus*, 138 S. Ct. at 2463. "When speech is compelled, . . . individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . ." *Id.* at 2464. The mandatory bar coerces not only speech but also subsidy; "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhors is sinful and tyrannical." *Id.* (quoting Thomas Jefferson).

Because compelled association and subsidy represent such a substantial invasion

8

of a person's otherwise free choices, the government must establish "a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465 (*quoting Knox v. SEIU, Local 1000*, 567 U.S. 298, 310 (2012)). In *Janus*, *Knox*, and *Harris*, the Court characterized this as "exacting scrutiny." *Janus*, 138 S. Ct. at 2477, 2483; *Harris*, 573 U.S. at 651; *Knox*, 567 U. S. at 310.[10] Other times the Court uses the phrase "strict scrutiny" when describing the same elements. *See, e.g., McCullen v. Coakley*, 573 U.S. 464, 478 (2014) ("the Act must satisfy strict scrutiny—that is, it must be the least restrictive means of achieving a compelling state interest."). Whether the scrutiny is "strict" or "the most exacting," in either instance the government must still prove this is one of those rare times when a government mandate that "seriously impinges on First Amendment rights," *id.*, may nevertheless be permitted because a compelling state interest requires it and no less restrictive alternative is available. This it cannot do. Reviewing the Court's mandatory bar cases over time shows the narrowing of the Court's precedent to the law today, which demands this compelling interest and least restrictive means.

---

[10] *Accord, e.g. Williams-Yulee v. Fla. Bar,* 575 U.S. 433, 442 (2015) ("We have applied exacting scrutiny to laws restricting the solicitation of contributions to charity, upholding the speech limitations only if they are narrowly tailored to serve a compelling interest."); *McCutcheon v. FEC*, 572 U.S. 185, 197 (2014) ("Under exacting scrutiny, the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest."). Admittedly, "The Court's application of the phrase 'exacting scrutiny' has not always been exacting in its own right." *Wash. Post v. McManus*, 355 F. Supp. 3d 272, 289 n.14 (D. Md. 2019).

**B. Over time, the Supreme Court has narrowed its reading of how a mandatory bar may spend its compulsory dues funds.**

The Supreme Court heard its first mandatory bar association case in 1961, and the plurality explicitly avoided the First Amendment question of compelled speech. *Lathrop v. Donohue*, 367 U.S. 820, 845 (1961) ("We are persuaded that on this record we have no sound basis for deciding appellant's constitutional claim insofar as it rests on the assertion that his rights of free speech are violated by the use of his money for causes which he opposes."). By declining to decide that question, the Court permitted mandatory bar dues to be spent on a range of political and ideological activities.

Thirty years later, the Court narrowed the *Lathrop* plurality's permission slip in *Keller* by explicitly holding that dues could not be used for "activities having political or ideological coloration." 496 U.S. at 15. In order to prevent such illicit diversion, the Court said a mandatory bar could avoid the problem by following the same principles of agency-fees endorsed in *Chicago Teachers v. Hudson*, 475 U.S. 292 (1986). *Keller*, 496 U.S. at 15–17.

*Harris* came along fifteen years later and gave *Keller* an even narrower reading, reiterating twice that the state's compelling interest in a mandatory bar is the formal regulatory system for legal ethics. *Harris*, 573 U.S. at 655 (describing *Keller* as permitting mandatory bar dues "for activities connected with proposing ethical codes and disciplining bar members"); *id*. at 655–56 (the State has "a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices."). *Janus* followed shortly thereafter and winnowed *Keller's* holding still further, finding that the *Hudson* system endorsed in

10

*Keller* to segregate "activities having political or ideological coloration" does not work in practice. *Janus*, 138 S. Ct. at 2482.

This case asks this Court to recognize this evolution in the doctrine. Plaintiff suggests the best reading is to see the doctrinal unfolding from *Lathrop* to *Keller* to *Harris* to *Janus* as a narrowing over time. *Lathrop* said mandatory bar dues could be used for politics. *Keller* amended but didn't overrule *Lathrop* and said they could not. *Keller* permitted dues to go for ethics and other efforts to "improve the quality of legal services." 496 U.S. at 5. Though quoting this passage from *Keller*, *Harris* signaled a narrower interest by only emphasizing the ethics enforcement as a compelling state interest. 573 U.S. at 655–56.[11] *Janus* affirms *Harris'* narrow reading of *Keller* by saying that any other forced association that subsidizes speech on issues of public concern cannot stand. 138 S. Ct. at 2481.

This evolution over time is not a story of overt overrulings, but of increasingly narrow readings this Court is bound to respect. *See, e.g., Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 310–11 (7th Cir. 2018) (recognizing that "[i]n *PLIVA, Inc. v. Mensing*, [564 U.S. 604 (2011)] the Supreme Court narrowed the holding of *Wyeth [v. Levine*, 555 U.S. 555 (2009)].*"); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 376 (5th Cir. 2008) ("in its recent decision in [*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008)], the Supreme Court narrowed the holding of [*Massachusetts Mut. Life Ins. Co. v. Russell*,

---

[11] In the oral argument on *Janus v. AFSCME*, counsel for petition Janus identified this as the key distinction: "The state bar associations are justified by the state's compelling government interest in regulating the practice of law before its courts." *Janus v. AFSCME* oral argument transcript, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2017/16-1466_gebh.pdf, at 5.

473 U.S. 134 (1985)]." *See also Kingstad v. State Bar of Wis.*, 622 F.3d 708, 717–18 (7th Cir. 2010) (later "guidance" from U.S. Supreme Court in a similar but not directly-on-point case prompts panel to overrule an earlier holding of the 7th Circuit). Although the Supreme Court in *Lathrop* addressed the issue of the constitutionality of a mandatory bar, that decision has been amended by the Court several times since, including in *Keller*. Applying the compelling interest test set out in *Janus*, *Harris*, and *Knox*, the only possible state interest sufficiently compelling to justify requiring mandatory bar association membership and dues is the regulation of lawyers' ethical conduct. As explained next, that interest in not available in this case because the Wisconsin Bar has no role in regulating legal ethics.

### C. The only possible compelling interest is the regulation of lawyers' ethical conduct, but the Wisconsin State Bar has no role in regulating legal ethics.

When the Supreme Court first faced the question of the mandatory bar, the plurality opinion upheld it by finding a state interest in "elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State." *Lathrop*, 367 U.S. at 843. The Supreme Court reiterated that holding in *Keller*, formulating its decision by identifying two "legitimate interests" justifying the Bar's mandatory nature: "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13.

*Harris* narrowed *Keller* by focusing its characterization of the mandatory bar as the formal regulatory system for lawyers. In *Harris*, the Supreme Court confronted a challenge to *Abood* by home-care workers paid by a state program. The Court explained the tension between its holding and *Keller* by giving *Keller* a very narrow

12

reading: "members of this bar could not be required to pay the portion of bar dues used for political or ideological purposes but that they could be required to pay the portion of the dues used for activities connected with proposing ethical codes and disciplining bar members." *Harris*, 573 U.S. at 655. In the next paragraph, the Court continued, "States also have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices." *Id.* at 655–56. In this way, *Harris* draws on *Keller* itself, which makes clear that "petitioners have no valid constitutional objection to their compulsory dues being spent for activities connected with disciplining members of the bar or proposing ethical codes for the profession." 496 U.S. at 16. And *Janus* reaffirms this reading of *Harris*, because it strikes the dues-deduction system that segregated ideological activities from other activities. *See* 138 S. Ct. at 2481.

*Harris*, especially when read together with *Janus*, offers a clear, bright line that courts can easily apply to a state bar's activities: does it function as the state's formal regulatory process for lawyers? The State Bar of Wisconsin is not the formal ethics regulatory system for the state, and thus fails to meet the standard set by *Harris*.

What does the State Bar undertake as "activities connected with proposing ethical codes and disciplining bar members"? *Harris*, 573 U.S. at 655. As noted in the factual history above, the State Bar does offer amendments to the ethical code, but it is one of a number of organizations and parties to do so. In other words, even if the state has a compelling interest in ensuring its ethical codes are thorough and up-to-date, there are less restrictive means of achieving that goal than through a mandatory bar,

given the plethora of other actors bringing forward ethics amendments, including voluntary bars. Choosing these less restrictive means also avoids the problem of forcing lawyers to associate with ideologically and politically controversial ethics proposals.[12]

What does the State Bar do in terms of "disciplining bar members"? Nothing. These responsibilities lie with the Board of Bar Examiners (admissions; continuing legal education) and Office of Lawyer Regulation (misconduct and grievances). These alternative regulatory agencies reflect a conscious choice by the Wisconsin Supreme Court to "assure the public that lawyer discipline, bar admission, and regulating competence through continuing legal education would be conducted for the benefit of the public, independent of elected bar officials." *In re State Bar of Wis.*, 169 Wis. 2d 21, 35–36 (1992) (Abrahamson, J., dissenting).

The State Bar of Wisconsin is simply unlike other states where the bar serves as the primary regulatory agency authorized by the state's high court to admit, investigate, and discipline attorneys. This state has separate agencies for all of that. The State Bar of Wisconsin, as currently constituted, does not exercise the compelling interest discussed in *Harris*: functioning as the formal regulatory system for lawyers

---

[12] *See, e.g.,* David L. Hudson, Jr., "States split on new ABA Model Rule limiting harassing or discriminatory conduct," ABA J. (Oct. 1, 2017), http://www.abajournal.com/magazine/article/ethics_model_rule_harassing_conduct (reporting on religious liberty and First Amendment concerns that have prompted widespread opposition to ABA Model Rule 8.4(g)); Kim Colby, "Why D.C. Should Not Adopt ABA Model Rule 8.4(g)," The Federalist Society (March 12, 2019), https://fedsoc.org/commentary/blog-posts/why-d-c-should-not-adopt-aba-model-rule-8-4-g (reporting that 11 states have explicitly or practically rejected movements to adopt Model Rule 8.4(g)).

in a state. Moreover, neither the Defendants nor the District Court attempted to show this or any other government interested below. Because of this, this Court can simply stop its inquiry here. Without needing to recognize an implicit overruling of *Keller*, this Court can simply rely on *Harris* and *Janus* to find the need for a compelling government interest and the fact that the government lacks one here, and therefore grant reversal to the Plaintiff/Appellant.

### D. The State Bar coerces support and subsidy for speech on issues of great public concern in violation of the core holdings of *Janus*.

Defendants (and the District Court) failed to provide a compelling interest on which they rely and the only compelling interest on which they could have relied — the admission and discipline of attorneys — does not apply because, as explained, the State Bar of Wisconsin is not the formal regulatory system for the state. Therefore, this Court should reverse the District Court's opinion. But even if the State Bar could somehow assert a compelling interest, which it cannot, this Court should still reverse the decision below because the State Bar's activities are not narrowly tailored to serve that compelling interest because they encompass a wide range of controversial speech on issues of public concern. Rather than using its funds to regulate lawyers, the State Bar uses the dues it compels lawyers like Mr. File to pay to support a broad array of ideological and political speech. And this is exactly what the Court in *Janus* said a government may not do. Central to the Court's concern in *Janus* is the union's speech on issues of "great public importance" using compelled fees. 138 S. Ct. at 2475. *Janus* struck down agency fees because "this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of

substantial public concern." 138 S. Ct. at 2460.

The Court in the past recognized that it was unfair to force people to fund political activities with mandatory dollars, and in *Keller* the justices told mandatory bars to use the procedure set forth in *Abood* and *Hudson*, 496 U.S. at 17, though they acknowledged that the line between political and nonpolitical activities "will not always be easy to discern." *Id*. at 15. This Court knows well that the line on what activities are chargeable can be difficult to draw. *See Kingstad*, 622 F.3d at 724 (Sykes, J., dissenting from denial of rehearing en banc) ("the germaneness standard in this circuit is not merely generous, it is meaningless.").

*Janus* found *Keller's* prophecy fulfilled: "*Abood's* line between chargeable and non-chargeable union expenditures has proved to be impossible to draw with precision." *Janus*, 138 S. Ct. at 2481. This is not merely a problem for judges to solve in individual cases, but a fatal flaw that irredeemably undermined the entire project. In the context of a public-sector union engaged in collective bargaining, it is impossible to draw a line between speech on public affairs, which may be carved out from fee-funded activities, and everything else the union does. Speech on collective bargaining in the public sector is inherently speech on public affairs. *Id*. at 2474 (*quoting Harris*, 573 U.S. at 654: "It is impossible to argue that the level of . . . state spending for employee benefits . . . is not a matter of great public concern.").

*Keller* suffers the same fatal flaw. If the State Bar isn't using dues dollars for ethics enforcement, what is it spending them on? Simple: speech about the law. And the law is inherently, unavoidably, an issue of great public concern. From the most

16

high-brow discussion of the nature of the judicial role to the most specific discussion of a particular municipal code section, virtually everything the State Bar does takes a position on the law and therefore on matters of public concern. The recipients of its awards, the topics and authors it selects for books and articles, the topics and speakers it selects for continuing legal education seminars and conferences — everything about the State Bar requires it to take positions as it speaks and publishes about the law.

For instance, Justice Alito's majority opinion in *Janus* lists a number of topics about which unions speak: "controversial subjects such as climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions. These are sensitive political topics, and they are undoubtedly matters of profound value and concern to the public." *Id.* at 2476. The State Bar's educational and networking activities, separate from any direct lobbying, uses Plaintiff's dues to pay for speech on just such controversial topics. Consider:

Carl Sinderbrand of the Axley law firm in Madison is "passionate about environmental stewardship."[13] He is a former chairman of a public-interest organization that actively litigates environmental law issues. In 2010, he gave a presentation to the State Bar Annual Convention: "Climate Change: Challenges and Opportunities." The year previous, the State Bar's environmental law section cosponsored a symposium on "Global Climate Change and Sustainable Development: Challenges and

---

[13] "Carl A. Sinderbrand," Axley, https://www.axley.com/attorney/carl-sinderbrand/.

Opportunities for International Law."[14] The State Bar's website currently offers a "Climate Change" resources page that includes links to numerous advocacy organizations with specific viewpoints on climate change.[15]

The State Bar also speaks frequently about sexual orientation and gender identity. It published a book, "Sexual Orientation, Gender Identity, and the Law" (PINNACLE 2018).[16] The State Bar described the coauthors as "[Abby] Churchill, an attorney and longtime LGBTQ community advocate, and Nick Fairweather, a labor and employment attorney who works on transgender issues." The State Bar also produced a video series to accompany the book featuring the two attorneys. Later that same year, the State Bar gave Churchill its 2018 Legal Innovators Award for founding TransLaw Help Wisconsin.[17] More recently, in June of 2019, the State Bar invited "the 'grandmother' of the transgender civil rights movement" to deliver a keynote

---

[14] "International Law Journal Symposium to Focus on Global Climate Change," Univ. of Wis. Law School (Feb. 2, 2009), https://law.wisc.edu/newsletter/News/International_Law_Journal_Sympos_2009-02-10.

[15] "Climate Change Resources," State Bar of Wis., https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/article.aspx?Volume=82&Issue=3&ArticleID=1688.

[16] "Issues Facing Transgender Clients: Lawyers, Book Authors Provide Insight," State Bar of Wis. (Sep. 5, 2018), https://www.wisbar.org/NewsPublications/InsideTrack/Pages/article.aspx?Volume=10&Issue=15&ArticleID=26546.

[17] Ed Finkel, "Abby Churchill: Helping Transgender Clients," State Bar of Wis. (Nov. 7, 2018), https://www.wisbar.org/newspublications/wisconsinlawyer/pages/article.aspx?volume=91&issue=10&articleid=26663#2.

address that "sheds light on the decades-long struggle" before a State Bar conference.[18]

*Doe v. Elmbrook* was a controversial case that eventually went *en banc* before this Court. 687 F.3d 840 (7th Cir. 2012). The case pitted the rights of minority religious adherents against the preferences and convenience of a majority of their local community. The majority's opinion siding with the minority religion adherents drew separate, vigorous dissents from Judges Easterbrook, Posner, and Ripple. The State Bar published an extended article which praised the majority opinion for "d[oing] its best with a unique set of facts and an amorphous doctrine," saying "the decision stands as a rebuke to bringing school into church."[19]

In all these instances — climate change, sexual orientation and gender identity, minority religions, among many others — by the articles and books it publishes, the speakers it highlights, the awardees it honors, the State Bar speaks on controversial subjects. "To suggest that speech on such matters is not of great public concern — or that it is not directed at the 'public square' — is to deny reality." *Janus*, 138 S. Ct. at 2475 (internal quotation omitted).

The State Bar may object that it is not "speaking" when it publishes an article or hosts a presentation, that it is merely a neutral forum for the discussion of ideas, a

---

[18] Joe Forward, "Phyllis Frye: The Grandmother of the Transgender Rights Movement," State Bar of Wis. (July 17, 2019), https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=27122.

[19] Christopher P. Keleher, "Church & State: Blurring the Lines," Wis. Law. (Dec. 1, 2012), https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=10527#1.

nonpartisan facilitator of legal discourse. This conception of its activities fails on three counts. First, the State Bar's educational activities hardly meet the standard of "viewpoint neutrality" set for the use of mandatory fees in *Board of Regents v. Southworth*, 529 U.S. 217, 230 (2000). There is no "Climate Change Skeptics Resources" page on the State Bar's website, no award for the lawyers who carefully crafted the Wisconsin Marriage Amendment that won the approval of 59.4 percent of Wisconsin voters in 2006. Second, when the State Bar presents awards, it is definitely speaking — it is lifting up certain individuals or causes as worthy of emulation, honor, and praise. Third, when the State Bar hosts CLE presentations or sponsors books, it confers its powerful imprimatur onto them, especially when the bar positions a presentation or book as a definitive, authoritative statement of the law, much like a restatement. Yet just as the American Law Institute has come under criticism for bringing biased viewpoints to its principles and restatements[20], so too the State Bar's books can bring a bias to their project. You are going to get a different restatement on the law of sexual orientation and gender identity if it is written by the founder of TransLaw rather than the legal counsel for Wisconsin Family Action.

In short, the State Bar *does* speak, regularly, institutionally, about controversial subjects and issues of public concern. It cannot neatly segregate lobbying on the one

---

[20] *See, e.g.,* Jonathan R. Macey, *The Transformation of the American Law Institute,* 61 GEO. WASH. L. REV. 1212 (1993); Tiger Joyce, "Tort Lawyers Take Over the American Law Institute," Wall St. J. (June 29, 2017), https://www.wsj.com/articles/tort-lawyers-take-over-the-american-law-institute-1498776033; John Fund, "A Powerful Legal Group Changes the Law While Nobody's Looking," Nat. Rev. (May 13, 2018), https://www.nationalreview.com/2018/05/american-law-institute-restatements-politically-correct-agenda/.

side and everything else on the other, and provide a deduction just for its lobbying work. Its educational activities, its events, its awards, its magazine, virtually everything it does (except the lawyers-only cruises and the car-rental discount) addresses issues of substantial public concern. And Defendants' policies and practices force Plaintiff to associate with and subsidize all of it against his will.

### E. What is more, the *Keller/Hudson* dues deduction calculation method is condemned by *Janus*.

Even if a court could somehow draw a line between activities of the State Bar that subsidize speech on issues of a matter of public concern and those that don't — which it cannot — this Court should still reverse the District Court's decision because the Supreme Court in *Janus* discarded the process by which line-drawing could be achieved. There, the Supreme Court recognized that the process by which objectors (in this case, claimants to their *Keller* dues deduction) may challenge this line-drawing is fundamentally unfair. The Court said "[o]bjecting employees . . . face a daunting and expensive task if they wish to challenge union chargeability determinations." *Janus,* 138 S. Ct. at 2482. The information usually provided "do[es] not begin to permit a nonmember to make such a determination" as to whether the union has correctly calculated his fee. *Id*. A skeptical nonmember jealous of his dollars would need to "launch[] a legal challenge and retain[] the services of attorneys and accountants" in order to "determine whether these numbers are even close to the mark," and "even with such services, it would be a laborious and difficult task to check these figures." *Id*. Objectors must shoulder the costs "for the attorneys and experts needed to mount a serious challenge. And the attorney's fees incurred in such a proceeding can be

substantial." *Id*. All of this lead the Court to toss the whole scheme. This very scheme that the builders rejected is the cornerstone of the *Keller* dues deduction. 496 U.S. at 15–17.

### F.  The *Keller* dues-deduction opt-out framework is condemned by *Janus*.

Moreover, the entirety of the framework for an opt-out system of dues deductions rather than an opt-in system of affirmative consent is problematic after *Janus*. 138 S. Ct. at 2486 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met."). By assuming consent rather than offering an option to opt-in to pay for advocacy, the *Keller* dues deduction fails the *Janus* framework.

All of the foregoing shows the Defendants have not and cannot narrowly tailor their activities to a compelling interest in ethics regulation.

### II.    In the alternative, the Supreme Court's GVR in *Fleck v. Wetch* gives this Court permission to revisit *Keller* in light of *Janus*.

In the wake of *Janus*, the Supreme Court "GVRed" *Fleck v. Wetch*, a challenge to the mandatory bar in North Dakota, for reconsideration "in light of" *Janus*. 139 S. Ct. 590, \*1 (2018). The Supreme Court's decision to "grant, vacate, and remand" or GVR a case for reconsideration in light of another opinion is made when "intervening

developments, or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration . . ." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996). A GVR is the Supreme Court's way of saying that it finds its new opinion "sufficiently analogous and, perhaps, decisive to compel re-examination of the case." *Henry v. Rock Hill*, 376 U.S. 776, 777 (1964).

After the Supreme Court has "GVRed" a lower court's decision, the lower court is not bound to rule opposite to the decision that has been vacated, but rather should do exactly as the Supreme Court ordered, and reconsider the issue in light of the new precedent. *Klikno v. United States,* 928 F.3d 539, 544 (7th Cir. 2019). "The GVR order . . . is an efficient way for the Supreme Court to obtain the views of the lower courts on the effect of a new decision." *Id*. Though a GVR order is not a decision on the merits, any judge may take judicial notice of it and embrace the invitation to reconsider a previous rule in light of a new opinion. *See, e.g., Byars v. State,* 336 P.3d 939, 946 (Nev. 2014); *Amaral v. Ryan*, No. CV-16-00594-PHX-JAT (BSB), 2017 U.S. Dist. LEXIS 184976, at *6 (D. Ariz. Nov. 8, 2017). In this case, the Court should take the GVR in *Fleck* as "a clear statement from the Supreme Court that the [*Janus*] decision does apply to this situation." *Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 748 (W.D. Tex. 2007). Since *Janus* applies, this Court must decide in what way it applies in a fresh, clean light. Such consideration, given the points made above, would show the mandatory bar in Wisconsin cannot be reconciled with *Janus*.

**III.    In the further alternative, this Court should recognize that *Janus* implicitly overruled much of *Keller*.**

**A. The *Levine* analysis shows that much of *Keller* has been overruled.**

Only the U.S. Supreme Court may overrule its own precedents. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). But that does not end the inquiry, as the Supreme Court may overrule its prior precedents implicitly or by implication as well as by explicit command.[21] The Seventh Circuit explained the relevant analysis in a previous edition of the State Bar saga: "The Court, however, does not have to explicitly state that it is overruling a prior precedent in order to do so. Thus, if later Supreme Court decisions indicate to a high degree of probability that the Court would repudiate the prior ruling if given the opportunity, a lower court need not adhere to the precedent." *Levine v. Heffernan,* 864 F.2d 457, 461 (7th Cir. 1988). *See also Baskin v. Bogan*, 766 F.3d 648, 659–60 (7th Cir. 2014) (subsequent doctrinal developments permit a lower court to recognize implicit overruling of a summary disposition by the Supreme Court, even though it is a decision on the merits); *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 517 (7th Cir. 2018) (Manion, J., dissenting) (same).

*Levine* identifies three factors to consider whether a decision has been implicitly overruled: a Supreme Court justice questions its ongoing validity; lower courts

---

[21] *See, e.g., Fisher v. Univ. of Tex.*, 136 S. Ct. 2198, 2205 (2016); *Eldred v. Ashcroft*, 537 U.S. 186, 237–38 (2003) (Stevens, J., dissenting); *O'Sullivan v. Boerckel*, 526 U.S. 838, 853 (1999) (Stevens, J., dissenting); *Graham v. Collins*, 506 U.S. 461, 497 n.10 (1993) (Thomas, J., concurring); *Moskal v. United States*, 498 U.S. 103, 124 (1990) (Scalia, J., dissenting); *Okla. Tax Comm'n v. United States*, 319 U.S. 598, 604 (1943).

24

abandon the precedent; and the later-in-time decision from the Supreme Court is in an identical area of law. *Id*.

This Court should find the necessary support to reach that conclusion in this case. Numerous Supreme Court justices have questioned *Lathrop/Keller's* ongoing viability. In *Harris*, Justice Alito's majority opinion quotes approvingly from the *dissent* in *Lathrop*:

> [I]n his *Lathrop* dissent, Justice Douglas, the author of *Hanson*, came to the conclusion that the First Amendment did not permit compulsory membership in an integrated bar. *See* 367 U. S., at 878–880, 81 S. Ct. 1826, 6 L. Ed. 2d 1191. The analogy drawn in *Hanson*, he wrote, fails. "Once we approve this measure," he warned, "we sanction a device where men and women in almost any profession or calling can be at least partially regimented behind causes which they oppose."

*Harris*, 573 U.S. at 630. At the oral argument in the *Friedrichs* case (which anticipated *Janus* by one year, but left the question unresolved due to a 4–4 tie following Justice Scalia's passing), Justice Breyer said that overruling *Abood* "would require overruling a host of other cases, I think, at least two or three that I can find," specifying "[i]t would certainly affect the integrated bar."[22] Justice Ginsburg returned to her colleague's question, characterizing it by saying, "[I]f *Abood* falls, then so do our decisions in *Keller* on mandatory bar association, on student activities fees."[23] Justice Kagan continued, pushing back on counsel's suggestion that *Abood* was merely one citation among many, saying, "Those cases start with *Abood*, [counsel]. Those cases

---

[22] *Friedrichs v. Calif. Teachers Assoc.* oral argument transcript, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2015/14-915_e2p3.pdf, at 28.

[23] *Id*. at 35.

say *Abood* is the framework, and those cases decide the questions that they decided specifically within that framework." *Id.* Justice Sotomayor reiterated the point in the oral argument of *Janus*, saying a mandatory bar was "no different" than a union agency fee or a mandatory student life fee: "These are all forcing the subsidization of private interests for a government purpose."[24] More recently, Justice Thomas (joined by Justice Gorsuch) issued an opinion saying, "The opinion in *Keller* rests almost entirely on the framework of *Abood*. Now that *Abood* is no longer good law, there is effectively nothing left supporting our decision in *Keller*." *Jarchow v. State Bar*, 140 S. Ct. 1720, 1720 (2020) (Thomas, J., dissenting from denial of certiorari).[25] In other words, numerous justices have observed *Keller's* feebleness given the overruling of *Abood* by *Janus*.

Though no lower courts have abandoned *Keller* yet, a number of academic authorities recognize that its demise is compelled by *Janus*. William Baude & Eugene Volokh, *The Supreme Court 2017 Term: Comment: Compelled Subsidies and the First Amendment*, 132 HARV. L. REV. 171, 196–98 (2018). *Accord* James Coppess,

---

[24]   *Janus   v.   AFSCME*   oral   argument   transcript,   https://www.supremecourt.gov/oral_arguments/argument_transcripts/2017/16-1466_gebh.pdf, at 7.

[25] The Seventh Circuit's summary disposition in *Jarchow* should also not prevent plenary consideration of this case in this Court. No. 19–3444, 2019 U.S. App. LEXIS 39345 (7th Cir. Dec. 23, 2019). There, the Appellants themselves moved for summary affirmance in order to speed their way to the U.S. Supreme Court, and this Court granted their wish. Though such an order may be persuasive, it is not binding. *United States v. Henderson*, 536 F.3d 776, 778 (7th Cir. 2008) (*citing Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991)) ("Often a motions panel must decide on a scanty record, and its ruling is not entitled to the weight of a decision made after plenary submission.").

*Symposium: Four propositions that follow from* Janus, SCOTUSblog (Jun. 28, 2018, 2:36 PM).[26]

These authorities also recognize that the area of law is identical. *See Kingstad*, 622 F.3d 708 (relying on cases from mandatory union subsidies and mandatory agricultural marketing subsidies to decide a mandatory bar case). "Compulsory bar dues have long been treated the same as public employee union agency fees." Baude & Volokh, 132 HARV. L. REV. at 196. *Accord* Brief of 24 Past Presidents of the D.C. Bar in *Janus v. AFSCME*, 2018 U.S. S. Ct. Briefs LEXIS 224. In short, if this Court does not believe that the GVR order in *Fleck* frees it to reconsider *Keller* in light of *Janus*, then this Court should find that the *Levine* factors are sufficiently present such that it may conclude that *Janus* implicitly overruled *Keller's* holdings based on *Abood*.[27]

> ### B. *Price v. City of Chicago* is distinguishable because in *Janus* the Supreme Court overruled *Abood,* the foundation for *Keller.*

*Price v. City of Chicago,* 915 F.3d 1107 (7th Cir. 2019), relied on by the District Court, is distinguishable. *Contra* S.A. at 9–10. In that case, this Court recognized

---

[26] Available at https://www.scotusblog.com/2018/06/symposium-four-propositions-that-follow-from-janus/.

[27] If the Court disagrees that the GVR grants it permission to reconsider *Keller* in light of *Janus*, and if the Court further disagrees that the *Levine* factors showing implicit overruling are met in the alternative, then Plaintiff states his belief that *Keller* should be partially overruled. Plaintiff recognizes that this form of relief can only come from the U.S. Supreme Court, and here only preserves the argument in this alternative for his appeal.

Plaintiff only seeks *partial* overruling because he believes that *Keller* correctly concluded that the State Bar is more like a trade association than a government agency as currently constituted, and should be analyzed under the principles governing compelled association rather than taxation.

that the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), was "in tension with" *McCullen v. Coakley*, 573 U.S. 464 (2014), and "hard to reconcile" with *McCullen* and *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). *Price*, 915 F.3d at 1109. However, because neither *McCullen* nor *Reed* overruled *Hill*, the Court was bound to obey it. *Id.*

Fair enough. But this case presents a different scenario than *Price,* because the Supreme Court *did* overrule a case. True, it did not overrule *Keller*. But it did overrule *Abood*, on which *Keller* is based.

Take as a thought experiment the Supreme Court's recent decision in *Espinoza v. Montana*, No. 18–1195 (U.S. June 30, 2020), upholding Montana's tax credit scholarship program for K-12 students. The Chief Justice's majority opinion is based totally and entirely on the Court's prior recent decision in *Trinity Lutheran Church v. Comer*, 137 S. Ct. 2012 (2017), which permitted Missouri to pay for playground resurfacing at a church, citing that case 32 times in his 22-page opinion. Imagine that the Supreme Court later explicitly overruled *Trinity Lutheran*. If a case came before this Court challenging Illinois' tax credit scholarship program, would this Court be bound to follow *Espinoza* because it is directly on-point, even though the case on which it is entirely built had been overruled?

Or consider if the Supreme Court someday explicitly overruled *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). Then imagine that this Court confronted an Indiana regulation requiring admitting privileges for abortion clinic doctors. Would this Court be bound to follow *June Medical* and *Whole Women's Health,* both

of which reached their determinations that admitting privilege requirements were unconstitutional using *Casey's* undue burden standard? *See June Medical Services, LLC v. Gee*, 140 S. Ct. 2103 (2020); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).

If it is ever possible for a lower court to recognize overruling by implication of an on-point Supreme Court decision, then it must be when a Supreme Court decision overrules a prior decision upon which the case on point rests. *See Sanchez v. Sessions*, 894 F.3d 858, 862 n.3 (7th Cir. 2018); *Levine*, 864 F.2d at 461; *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986); *United States v. Burke*, 781 F.2d 1234, 1239 n.2 (7th Cir. 1985); *Richardson v. McCann*, 653 F. Supp. 2d 831, 845 (N.D. Ill. 2008). If so, the relevant question becomes whether the overruled case is the on-point case's whole foundation (as in the *Espinoza* / *Trinity Lutheran* or *Casey* / *June Medical* examples), or merely a cinderblock in the foundation of a case, one of several pillars, the rest of which can still support the weight of the holding.

Here, *Abood* is much more than a cinderblock upholding *Keller* — it is its very foundation. In *Keller*, the California Court of Appeals based its decision for the mandatory bar on *Abood* (mentioning the case 35 times). 496 U.S. at 6 (discussing 226 Cal. Rptr. 448 (1986)). The Supreme Court of California reversed, finding the state bar more like a government agency, but still citing *Abood* 34 times. *Id*. at 7 (discussing 47 Cal. 3d 1152 (1989)). The U.S. Supreme Court sided with California's intermediate appellate court, finding the mandatory bar fit comfortably within *Abood's* framework for compelled association, *id*. at 13–14, and that *Abood* was also the

29

framework for protecting compulsory dues-payers from subsidizing political speech, *id*. at 14–17. As Justice Thomas has observed, "The opinion in *Keller* rests almost entirely on the framework of *Abood*. Now that *Abood* is no longer good law, there is effectively nothing left supporting our decision in *Keller*." *Jarchow*, 140 S. Ct. at 1720 (Thomas, J., dissenting from denial of certiorari). Similarly, Justice Kagan recognized in an oral argument question: "Those cases say *Abood* is the framework, and those cases decide the questions that they decided specifically within that framework."[28] *Abood* was not a pillar of *Keller*; it was the whole foundation. In such a case, this Court may recognize its implicit overruling. That does not mean Plaintiff automatically wins, only that this Court must write on a fresh slate to show whether the mandatory bar meets the high standards of exacting scrutiny.

If the Court does not believe the high standard for implicit overruling has been met, but none the less agrees with Plaintiff that *Keller* is incompatible with current First Amendment doctrine because it is inconsistent with *Janus*, Plaintiff would appreciate an opinion saying so. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (a Supreme Court precedent had "been criticized by Members of this Court *and by lower court judges*," and thus "in granting certiorari, we directed the parties to address the question whether [it] should be overruled." (Emphasis added)). *See, e.g., Thompson v. Marietta Educ. Ass'n*, No. 19–4217, 2020 U.S. App. LEXIS 26989, at *2, 5, 7 (6th Cir.

---

[28] *Friedrichs v. Calif. Teachers Assoc.* oral argument transcript, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2015/14-915_e2p3.pdf, at 35.

Aug. 25, 2020) (criticizing the incompatibility of on-point precedent on exclusive representation in the public sector with *Janus*).

## CONCLUSION

*Janus* stands for a simple proposition: the government may not compel private citizens to join and give their money to an organization that will use it to frequently speak on controversial issues. Because Wisconsin's mandatory bar forces Plaintiff to join and subsidize an organization that uses his money not to ensure the ethical behavior of lawyers, but rather to speak constantly on issues of public concern, it is incompatible with *Janus's* core holdings.

The District Court's decision should be reversed.

Dated: September 8, 2020

/s/ Daniel R. Suhr
Daniel R. Suhr
Jeffrey M. Schwab
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
(312) 263-7668
dsuhr@libertyjusticecenter.org
jschwab@libertyjusticecenter.org
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7). The foregoing brief was prepared using Microsoft Word 2010 and contains 7,667 words in 12-point proportionately spaced Century Schoolbook font.

<u>/s/ Daniel R. Suhr</u>
Daniel R. Suhr
*Counsel of Record for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, I electronically filed the foregoing Appellants' Brief with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Daniel R. Suhr
Daniel R. Suhr
*Counsel of Record for Appellant*

# REQUIRED SHORT APPENDIX

## *Contents*

District Court Judgment in a Civil Case...................................................S.A. 1

District Court Decision & Order on Motion to Dismiss........................................S.A. 2

## *Certificate*

Pursuant to Circuit Rule 30(d), I hereby certify that this short appendix includes

all the materials required by Circuit Rules 30(a) and (b).


/s/ Daniel R. Suhr
Daniel R. Suhr
*Counsel of Record for Appellant*

AO 450 (Rev. 5/85) Judgment in a Civil Case ⊗

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

SCHUYLER FILE,
      Plaintiff

    v.                           CASE NUMBER: 19-C-1063

JILL M. KASTNER, et al.,
      Defendants

☐   **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

X   **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

    IT IS ORDERED AND ADJUDGED that the plaintiff shall take nothing by his complaint and judgment is entered in favor of the defendants on the merits.

| | |
|---|---|
|     6/29/20 | Gina M. Colletti |
| Date | Clerk |
| | |
| | s/ J. Dreckmann |
| | (By) Deputy Clerk |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SCHUYLER FILE,**
          **Plaintiff,**

          **v.**                                              **Case No. 19-C-1063**

**JILL M. KASTNER, et al.,**
          **Defendants.**

---

## DECISION AND ORDER

Plaintiff Schuyler File, an attorney admitted to practice in Wisconsin, brings this suit under 42 U.S.C. § 1983 against the president and executive director of the State Bar of Wisconsin and the chief justice and justices of the Wisconsin Supreme Court. He alleges that the state's requirement that he be a member of the State Bar of Wisconsin violates his rights under the Constitution's First Amendment. Before me now are the defendants' motions to dismiss the complaint for lack of standing and for failure to state a claim upon which relief may be granted.[1]

### I. BACKGROUND

The State Bar of Wisconsin is an organization created by Wisconsin law through rules promulgated by the Wisconsin Supreme Court. It is an "integrated bar," that is, it is an association of attorneys in which membership and dues are required as a condition of practicing law in the state. *Keller v. State Bar of Cal.*, 496 U.S. 1, 4–5 (1990). Integrated bars have been subject to numerous constitutional challenges over the course of the last

---

[1] The supreme court justices have also filed a motion to stay discovery pending a ruling on their motion to dismiss. Because I am deciding the motion to dismiss now, I will deny the motion to stay as moot.

sixty years. The attorneys who bring these challenges usually allege that the state's conditioning their ability to practice law on their joining and financially supporting an organization that espouses viewpoints with which they may disagree violates their rights to free speech and association under the First Amendment. In prior cases, the Supreme Court of the United States has held that an integrated bar does not violate an attorney's First Amendment rights so long as the bar uses the attorney's mandatory dues payment only for purposes that are germane to the goals of "regulating the legal profession and improving the quality of legal services." *Id.* at 13–14; *see also Lathrop v. Donohue*, 367 U.S. 820 (1961) (holding that Wisconsin's integrated bar did not violate the First Amendment). Under the holding of these cases, an integrated bar is permitted to engage in speech on topics that are not germane to one of these two goals. However, if it does so, it must rely on a source of funding other than mandatory dues payments. *See Keller*, 496 U.S. at 13–14. To implement the distinction between speech that is germane to the goals of regulating the legal profession and improving the quality of legal services and speech that is not germane to these goals, the State Bar of Wisconsin allows its members to take what it known as a "*Keller* dues reduction." If the member does not take this deduction, then the member is presumed to consent to the bar's using this part of his or her dues payment to fund speech that is not germane to regulating the legal profession or improving the quality of legal services.

The plaintiff is an attorney in private practice who moved to Wisconsin in 2017. He previously practiced in Indiana, which does not have an integrated bar. He does not wish to be a member of, or to pay dues to, the State Bar of Wisconsin, *see* Compl. 27, and he believes that conditioning his ability to practice law on bar membership violates his First

2

Amendment rights. The plaintiff recognizes that, in light of *Keller*, the State Bar of Wisconsin has generally been regarded as constitutional. *See, e.g., Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010). However, he contends that two cases decided by the Supreme Court of the United States in recent years have either narrowed or implicitly overruled *Keller*. *See Janus v. Am. Fed'n of State, County & Mun. Employees*, 138 S. Ct. 2448 (2018); *Harris v. Quinn*, 573 U.S. 616 (2014). The plaintiff contends that, under the reasoning of these cases, the State Bar of Wisconsin cannot constitutionally enforce its mandatory membership requirement. He thus commenced the present action under 42 U.S.C. § 1983 against the president and the executive director of the State Bar of Wisconsin (collectively, the "Bar defendants") and the chief justice and justices of the Wisconsin Supreme Court. He seeks a declaration that the Wisconsin Supreme Court's rule requiring him to belong to the bar is unconstitutional as well as an injunction that would prevent the Bar defendants and the justices from enforcing the mandatory membership rule or charging him mandatory dues payments.

The Bar defendants and the justices have each filed a motion to dismiss the complaint. All defendants argue that the complaint fails to state a claim because the rules of the State Bar comply with *Keller* and therefore must be regarded as constitutional unless the Supreme Court overrules *Keller*. In addition, the justices argue that the plaintiff does not have standing to seek relief against them and that they are immune from claims for the type of injunctive relief he seeks. I consider these matters below.

3

## II. DISCUSSION

### A.    Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The justices contend that the plaintiff cannot show that their conduct caused him to suffer an injury in fact. An injury in fact must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. However, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Put differently, "[a] plaintiff 'does not have to await the consummation of threatened injury to obtain preventive relief.'" *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). To satisfy the injury-in-fact requirement based on the likelihood of a future injury, the plaintiff must show only that he or she faces "a realistic danger of sustaining a direct injury as a result of the [law]'s operation or enforcement." *Id.*

In the present case, there is no dispute that the plaintiff has standing to seek declaratory and injunctive relief against the Bar defendants based on the likelihood that he would suffer a future injury. If the plaintiff stopped paying his mandatory bar dues, his membership in the State Bar would be automatically suspended. *See* Wis. Sup. Ct. R.

4

10.03(6) & Wis. State Bar Bylaws art. I, § 3.[2] During the suspension, the plaintiff would be forbidden from practicing law. Wis. Sup. Ct. R. 10.03(6). Obviously, losing the ability to lawfully practice one's profession is an injury in fact. Moreover, the plaintiff does not have to actually refuse to pay his mandatory dues and thus incur an automatic suspension before he is allowed to seek preventative relief. *See, e.g., Schirmer v. Nagode*, 621 F.3d 581, 586 (2010) ("A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment[.]"). Rather, he will have standing so long as it is substantially likely that if he stops paying his dues, he will suffer an injury. And here, because a suspension automatically follows nonpayment of dues, an injury to the plaintiff is not merely substantially likely, it is certain to occur. Thus, the plaintiff unquestionably has standing to seek an injunction preventing the Bar defendants from assessing and collecting mandatory dues payments.

The justices, however, contend that even if the plaintiff would suffer an injury if he stopped paying his bar dues, they would not be the ones to inflict it. They point out that the supreme court does not initiate disciplinary proceedings against attorneys; instead, such proceedings are commenced by an agency of the court—the Office of Lawyer Regulation ("OLR"). *See* Wis. Sup. Ct. R. 21.02(1). The only role the supreme court plays in lawyer discipline is to adjudicate misconduct complaints filed by OLR and to impose an appropriate sanction if misconduct is found. *See* Wis. Sup. Ct. R. 21.09(1). However, while it is true that the supreme court does not initiate misconduct proceedings, it does not follow that the plaintiff lacks standing to seek an injunction against the court's

---

[2] The State Bar Bylaws are codified as an appendix to Chapter 10 of the Rules of the Wisconsin Supreme Court.

disciplining him for failing to pay his bar dues. Consider what is likely to occur if the plaintiff stops paying his dues. Once they are overdue for more than 120 days, his license to practice law will automatically be suspended under Rule 10.03(6) and the State Bar Bylaws. If the plaintiff continues to practice law after his automatic suspension, he will be in violation of the supreme court's rules and will be subject to discipline for practicing while his license was suspended. *See, e.g., In re FitzGerald*, 304 Wis. 2d 592, 597–98 (2007) (disciplining lawyer for practicing during administrative suspension for failure to pay bar dues). Once OLR learns that the plaintiff is continuing to practice law, it will likely commence disciplinary proceedings against him. Without an injunction against enforcement of the mandatory bar requirement, the supreme court will find the plaintiff guilty of a rules violation and impose discipline, which could include revoking his law license and imposing a monetary penalty. *See* Wis. Sup. Ct. R. 21.16(1m). Any discipline the court imposes would be an injury in fact. Because this chain of events is substantially likely to occur if the plaintiff stops paying his bar dues yet continues to practice law in Wisconsin, the plaintiff has standing to obtain pre-enforcement relief. For again, a plaintiff does not have to risk arrest or incurring other forms of harm in order to have standing to obtain an injunction to prevent that harm from coming to pass. *Schirmer*, 621 F.3d at 586.

The justices point out that, in 1993, the Seventh Circuit determined that a lawyer lacked standing to pursue a claim for injunctive against the supreme court to prevent them from enforcing the mandatory dues requirement. *See Crosetto v. State Bar of Wis.*, 12 F.3d 1396, 1403 (7th Cir. 1993). In that case, however, the court focused on the lack of evidence suggesting that the supreme court was likely to discipline a lawyer for failing to pay bar dues. The court noted that the plaintiff "conceded that he was unaware of any

6

Wisconsin lawyer ever being disciplined by the Justices for that lawyer's failure to pay dues to the integrated bar." *Id.* Things have apparently changed since 1993. The plaintiff has cited at least two cases in which the Wisconsin Supreme Court disciplined attorneys for practicing law after failing to pay mandatory dues. *See In re Capistrant*, 364 Wis. 2d 530, 534 (2015); *In re FitzGerald*, 304 Wis. 2d at 597–98. Moreover, unless the supreme court decides to voluntarily abandon the mandatory dues requirement, it stands to reason that the court will discipline attorneys who practice law without paying their dues. Because the supreme court has not suggested that it intends to abandon its rule requiring bar membership for all attorneys, I conclude that the plaintiff has standing to seek declaratory and injunctive relief to prevent the supreme court from disciplining him for failing to pay his mandatory dues.

## B.    Immunity

The justices next contend that they are immune from the plaintiff's suit for injunctive relief. Here, the defendants rely on a Supreme Court decision holding that state supreme court justices are immune from suits for injunctive relief when they are sued in their legislative capacity, *i.e.*, as promulgators of the rules governing lawyers. *See Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980). However, the plaintiff here does not sue the justices in their capacities as rule makers—he does not seek an injunction requiring them to enact, amend, or repeal any rule. Rather, he sues the justices in their capacity as adjudicators of disciplinary matters—he seeks an injunction preventing them from disciplining him for practicing law while he is not a member of the bar. The Supreme Court has held that state judges in their judicial

7

capacities are not immune from suits for injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Accordingly, the justices are not immune from suit in this matter.

## C.     Merits

I now turn to the merits of the plaintiff's constitutional claim. The relevant facts are undisputed, and the plaintiff's claim presents a pure question of law. Therefore, his claim may be resolved on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Before moving on, I note that the plaintiff does not bring an as-applied challenge to the integrated bar in which he contends that the State Bar has used mandatory dues payments to fund speech or activities that are not germane to the goals of regulating the legal profession or improving the quality of legal services. *Cf. Kingstad*, 622 F.3d at 718– 21 (considering "germaneness" claim). Rather, the plaintiff brings a facial challenge to the mandatory dues requirement, contending that it is inconsistent with Supreme Court cases decided since *Keller*. For this reason, I do not address the Bar defendants' arguments relating to a possible as-applied challenge. *See* Br. in Supp. at 11–15. Moreover, although the plaintiff in his brief cites various State Bar activities and publications and contends that they may not constitutionally be funded with mandatory bar dues, I do not understand him to be claiming that the Bar funded these activities in violation of *Keller*. Instead, I understand him to be using these activities as examples to show that the State Bar's expression presents the same kinds of problems that concerned the Supreme Court in *Janus*.

The heart of the plaintiff's argument is that *Harris* and *Janus* call into question *Keller*'s holding that an integrated bar is constitutional so long as the bar uses mandatory dues payments only to fund matters that are germane to the goals of regulating the legal

8

profession and improving the quality of legal services. The plaintiff first contends that, in *Harris*, the Court narrowed *Keller* by suggesting that a bar cannot use mandatory dues payments to fund speech unless that speech is germane to the goal of regulating the legal profession. The plaintiff understands the *Harris* Court to have implied that a bar cannot use mandatory dues to fund speech that is germane to the goal of improving the quality of legal services. The plaintiff then contends that, by overruling *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Court in *Janus* undermined a key premise of *Keller*, which was that an enforceable line could be drawn between speech that is germane to a certain topic and speech that is not. The plaintiff contends that the combined effect of *Harris* and *Janus* should cause the Supreme Court to overrule *Keller* and hold that integrated bars such as Wisconsin's are unconstitutional.

Importantly, however, a lower court cannot overrule a Supreme Court case, even if later Supreme Court cases call the holding of the earlier case into question. *See, e.g., State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (reaffirming that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); *Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019) (quoting *Khan* and *Agostini*); *Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 567 F.3d 856, 857 (7th Cir. 2009), *overruled on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010); ("Repeatedly, in decisions that no one thinks fossilized, the Justices have directed trial and appellate judges to implement the Supreme Court's holdings even if the reasoning in

9

later opinions has undermined their rationale."). A lower court may not overrule a Supreme Court case even if later cases "have deeply shaken" the earlier case's foundation, *Price*, 915 F.3d at 1119, or "demolished" its "intellectual underpinning," *Nat'l Rifle Ass'n*, 567 F.3d at 858. Thus, if a Supreme Court case has direct application to a case, a lower court must follow it even if the court thinks it probable that the Supreme Court will overrule the case in the future.

Here, the plaintiff concedes that *Keller* has direct application to his claim. But for several reasons, he contends that I am still free to disregard it. First, he contends that *Harris* "narrowed" *Keller* by limiting the use of mandatory dues to activities "connected with proposing ethical codes and disciplining bar members." *Harris*, 573 U.S. at 655. But *Harris* did not involve mandatory state bar membership and did not purport to partially overrule *Keller* by holding that mandatory bar dues could not be used for all the purposes deemed acceptable in *Keller*. The passage from *Harris* that the plaintiff cites is merely a summary of *Keller*'s holding. Nothing in *Harris* implies that the summary was intended to narrow or otherwise disturb *Keller*. Indeed, in the paragraph following the sentence the plaintiff cites, the Court favorably describes *Keller*'s full holding: "The portion of the rule that we upheld [in *Keller*] served the 'State's interest in regulating the legal profession and improving the quality of legal services.'" *Id.* Thus, *Harris* cannot be understood as a narrowing of *Keller*.

Second, the plaintiff contends that because, in the wake of *Janus*, the Supreme Court entered a "grant, vacate, and remand order" in an Eighth Circuit case involving mandatory bar membership, *see Fleck v. Wetch*, 139 S. Ct. 590 (2018), lower courts are now free to "reconsider *Keller* in light of *Janus*," Br. in Opp. at 21. However, the Court's

10

entering a GVR order does not grant lower courts permission to overrule Supreme Court precedent. All a GVR order does is signal that the Supreme Court would like the lower court to reconsider its vacated decision in light of the new precedent. *See Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019). Even the lower court subject to the GVR order remains bound by Supreme Court cases that the Court has not yet overruled. *See Fleck v. Wetch*, 937 F.3d 1112, 1114–15 (8th Cir. 2019) (Eighth Circuit deems itself bound by *Keller* even after Court entered GVR order).

Third, the plaintiff contends that "*Janus* implicitly overruled *Keller.*" Br. in Opp. at 21. This argument relies on statements in cases acknowledging that the Supreme Court may overrule a case without explicitly saying so. *See Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988). However, before a lower court may conclude that the Supreme Court has implicitly overruled one of its precedents, the lower court must be "certain or almost certain that the decision or doctrine would be rejected by the higher court if a case presenting the issue came before it." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 741 (7th Cir. 1986). "This is a high standard and will rarely be met." *Id.* And it is not met here. *Janus* did not involve mandatory bar membership; it involved compelled subsidy of a public-sector labor union. Although the Court's reasoning in *Janus* might in some respects support the argument that mandatory bar membership is unconstitutional, the Court did not in any way suggest that it was overruling *Keller*. Moreover, it must be remembered that a lower court is not free to deem Supreme Court precedent defunct even if a later case demolishes the intellectual underpinnings of the earlier case. *Nat'l Rifle Ass'n*, 567 F.3d at 858. A lower court should not be able to evade this restriction by using the reasoning of a later case to deem the earlier case implicitly overruled.

11

In any event, any doubt about whether the Supreme Court implicitly overruled *Keller* in *Janus* is removed by considering the Court's latest action in this area. The premise of the doctrine of implicit overruling is that the Court has already overruled one of its precedents and is merely awaiting an opportunity to make the overruling explicit. *See Levine*, 864 F.2d at 461 (for implied overruling to apply, lower court must be almost certain that "the Court would repudiate the prior ruling if given the opportunity"); *Olson*, 806 F.2d at 741 ("The standard for declaring a decision or doctrine of a higher court defunct is . . . whether the lower court is certain or almost certain that the decision or doctrine would be rejected by the higher court *if a case presenting the issue came before it*." (emphasis added)). Recently, the Court was presented with an opportunity to overrule *Keller*. In *Jarchow v. State Bar of Wisconsin*, No. 19-C-266, 2019 WL 6728258 (W.D. Wis. Dec. 11, 2019), a Wisconsin attorney alleged that the State Bar of Wisconsin violates the First Amendment by charging mandatory dues. The plaintiff acknowledged that *Keller* was controlling but argued that *Janus* had eroded its foundations. The trial court deemed itself bound by *Keller* and noted that only the Supreme Court may overrule it. *Id.* at *1. After the Seventh Circuit likewise deemed itself bound by *Keller*, the plaintiffs filed a petition for certiorari with the Supreme Court, thus presenting the Court with the opportunity to make its alleged implicit overruling of *Keller* explicit. But the Supreme Court denied the petition for certiorari. *See* Sup. Ct. Docket No. 19-831, 2020 WL 2814314 (June 1, 2020). Because the Supreme Court passed up this opportunity to explicitly overrule *Keller*, it is impossible for a lower court to now conclude that the Supreme Court has already implicitly overruled it. Indeed, although two Justices dissented from the denial of certiorari in *Jarchow*, not even they suggested that the Court had already implicitly

12

overruled *Keller*. To the contrary, they allowed that, although *Janus* called the reasoning in *Keller* into question, its holding could survive "on the basis of new reasoning that is consistent with *Janus*." *Id.* at *1 (Thomas, J., dissenting). They also emphasized that, "[s]hort of a constitutional amendment, only [the Court] can rectify [its] own erroneous constitutional decisions." *Id.* at 2. Thus, the dissenters must have been of the view that the Court did not already implicitly overrule *Keller* in *Janus*.

Accordingly, I conclude that the plaintiff's claim is foreclosed by *Keller*, which only the Supreme Court may overrule. The defendants' motions to dismiss the claim under Rule 12(b)(6) will be granted.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motions to dismiss the complaint for failure to state a claim (ECF Nos. 14 & 19) are **GRANTED**. The motions are denied to the extent they seek dismissal for lack of standing or on immunity grounds.

**IT IS FURTHER ORDERED** that the supreme court justices' motion to stay (ECF No. 16) is **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2020.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

13