CASE NO. 20-2387

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

SCHUYLER FILE,

Plaintiff-Appellant

vs.

KATHLEEN BROST, in her official
capacity as President of the State Bar of Wisconsin,
LARRY MARTIN, in his official capacity as
Director of the State Bar of Wisconsin, and Chief
Justice PATIENCE ROGGENSACK and Justices
ANN WALSH BRADLEY, ANNETTE ZIEGLER,
REBECCA BRADLEY, REBECCA DALLET,
BRIAN HAGEDORN, and JILL KAROFSKY in
their official capacities as members of the
Wisconsin Supreme Court,

Defendants-Appellees.

Appeal From a Judgment of the United States District Court
For the Eastern District of Wisconsin
Case No. 2:19-cv-01063-LA
Honorable Lynn Adelman

**BRIEF OF APPELLEES KATHLEEN BROST AND LARRY MARTIN**

ROBERTA F. HOWELL,
ANDREW C. GRESIK,
*Counsel for Appellees Kathleen Brost*
*and Larry Martin*

FOLEY & LARDNER LLP
Suite 5000
150 East Gilman Street
Madison, WI 53703-1482
Post Office Box 1497
Madison, WI 53701-1497
608.257.5035

4842-0269-4604.7

DISCLOSURE STATEMENT

1. The full name of every party that the undersigned attorneys represent in the case: Appellees Kathleen Brost and Larry Martin.

2. The name of all law firms whose partners or associates have appeared on behalf of the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this Court: Foley & Lardner LLP.

3. If the party or amicus is a corporation: not applicable.

*/s/ Roberta F. Howell*

Foley & Lardner LLP
150 East Gilman Street
Madison, WI 53703-1482
Voice:  608.257.5035
Facsimile:  608.258.4258

*Counsel for Appellees Kathleen Brost and Larry Martin*

## TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................................. i

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

JURISDICTIONAL SUMMARY ....................................................................... 1

STATEMENT OF THE ISSUE........................................................................... 2

STATEMENT OF THE CASE............................................................................ 3

I.      The State Bar of Wisconsin ................................................................. 3

II.     Proceedings Below............................................................................... 7

SUMMARY OF ARGUMENT .......................................................................... 8

ARGUMENT ................................................................................................... 10

I.      Recent Decisions Have Only Reinforced *Keller*. ............................. 10

II.     *Keller* and *Lathrop* Remain Good Law. ........................................... 13

        A.      *Janus* Did Not Implicitly Overrule *Keller*. .......................... 13

        B.      The Eighth Circuit Has Already Responded to the *Fleck* GVR. .......................... 14

        C.      *Lathrop* and *Keller* Remain Consistent With Supreme Court Precedent. ........... 15

                1.      *Janus* did not undermine *Keller* and *Lathrop*. ......................................... 15

                2.      The Supreme Court Has Distinguished Integrated Bars from Mandatory Subsidies. ............................................................. 18

                3.      "Membership" in the State Bar Does Not Implicate First Amendment Rights. .......................................................... 19

                4.      The State Bar's Operations Are Materially Distinguishable from the Union Activities in *Janus* ................................................... 21

CONCLUSION................................................................................................. 23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ....................... 25

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abood v. Detroit Board of Education*,
  431 U.S. 209 (1977)..................................................................9, 10, 16, 17, 18

*In re Amend. of State Bar Rules: SCR 10.03(5)*,
  slip op. (Wis. Jan. 21, 1986) ........................................................................7

*In re Amend. of Sup. Ct. Rules: 10.03(5)(b) – State Bar Membership Dues Reduction*,
  174 Wis. 2d xiii (1993) ................................................................................7

*State ex rel. Armstrong v. Board of Governors*,
  273 N.W.2d 356 (Wis. 1979).........................................................................7

*Crosetto v. State Bar of Wis.*,
  12 F.3d 1396 (1993).......................................................................................7

*Crowe v. Oregon State Bar*,
  No. 3:18-cv-2139-JR (D. Or. Apr. 1, 2019)...............................................12

*In re Discontinuation of the State Bar of Wis. as an Integrated Bar*,
  286 N.W.2d 601 (Wis. 1980).........................................................................7

*File v. Kastner*,
  No. 2:19-cv-01063-LA, Dkt. 20-1 (E.D. Wis. Nov. 22, 2019)...................5

*Fleck v. Wetch*,
  868 F.3d 652 (8th Cir. 2017) .......................................................................11

*Fleck v. Wetch*,
  139 S. Ct. 590 (Mem.) (2018).........................................................11, 14, 22

*Fleck v. Wetch*,
  937 F.3d 1112 (8th Cir. 2019) .....................................................................11

*Fleck v. Wetch*,
  No. 19-670 (May 4, 2020) ...........................................................................11

*Glickman v. Wileman Bros. & Elliott, Inc.*,
  521 U.S. 457 (1997)......................................................................................19

*Gruber v. Oregon State Bar*,
  No. 3:18-cv-1591-JR (D. Or. Apr. 1, 2019)...............................................12

iii

*Harris v. Quinn*,
  573 U.S. 616 (2014) ..................................................................................10, 16, 17, 18

*In re Integration of the Bar*,
  25 N.W.2d 500 (Wis. 1946) .........................................................................................7

*In re Integration of the Bar*,
  77 N.W.2d 602 (Wis. 1956) .........................................................................................7

*In re Integration of the Bar*,
  93 N.W.2d 601 (Wis. 1958) .........................................................................................7

*Integration of Bar Case*,
  11 N.W.2d 604 *(Wis. 1943)* ......................................................................................7

*Janus v. AFSCME*,
  138 S. Ct. 2448 (2018) ...................................................................................... *passim*

*Jarchow v. State Bar of Wis.*,
  140 S. Ct. 1720 (Jun. 1, 2020) ..............................................................................11, 14

*Jarchow v. State Bar of Wis.*,
  No. 19-3444, 2019 WL 8953257 (7th Cir. Dec. 23, 2019) ....................................7, 10, 11, 14

*Jarchow v. State Bar of Wis.*,
  No. 19-831 (Dec. 31, 2019) .......................................................................................11

*Keller v. State Bar of California*,
  496 U.S. 1 (1990) ............................................................................................ *passim*

*Kingstad v. State Bar of Wisconsin*,
  622 F.3d 708 (7th Cir. 2010) .................................................................................4, 7

*Klikno v. United States*,
  928 F.3d 539 (7th Cir. 2019) .......................................................................................9

*Lathrop v. Donohue*,
  102 N.W.2d 404 (Wis. 1960) .......................................................................................7

*Lathrop v. Donohue*,
  367 U.S. 820 (1961) ........................................................................................ *passim*

*Levine v. Heffernan*,
  864 F.2d 457 (7th Cir. 1988) ...........................................................................7, 13, 14, 17

*McDonald v. Sorrels*,
  No. 1:19-cv-00219-LY (W.D. Tex. May 29, 2020) .................................................................12

iv

*In re Petition for a Voluntary Bar*,
No. 11-01 (Wis. July 6, 2011)..................................................................................7

*In re Petition to Amend SCR 10.03(5)(b)1*,
No. 09-08 (Wis. Nov. 17, 2010) ............................................................................7

*In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e)
and Amend SCR 10.03(6)*,
No. 17-04, slip op. (Wis. Apr. 12, 2018) .............................................................7

*In re Petition to Review Change in State Bar Bylaws*,
No. 11-05, slip op. (Wis. Oct. 7, 2011)..................................................................7

*In re Petition to Review State Bar Bylaw Amends.*,
407 N.W.2d 923 (Wis. 1987) .................................................................................7

*In re Reg. of the Bar of Wis.*,
81 Wis. 2d xxxv (1978) ..........................................................................................7

*Schell v. Gurich*,
No. 5:19-cv-00281-HE (W.D. Okla. Sept. 18, 2019) .........................................12

*In re State Bar of Wisconsin: Membership*,
485 N.W.2d 225 (Wis. 1992)..............................................................................4, 7

*Taylor v. Barnes*,
Case No. 1:19-cv-00670-RJJ-PJG (W.D. Mich. Sept. 8, 2020) ........................12

*Thiel v. State Bar of Wis.*,
94 F.3d 399 (7th Cir. 1996) ...................................................................................7

*United States v. United Foods,* 533 U.S. 405 (2001)...........................................18, 19

**Other Authorities**

IN ST ADMIS AND DISC Rule 2(b)....................................................................... 20

Memorandum of Court Commissioner, Rule Petition 11-04, Petition for
Voluntary Bar (Oct. 25, 2011) https://www.wicourts.gov/supreme/docs
/1104commissionermemo.pd ..................................................................................4

Pa. B.A.R., Rule 232 20

*Report of Comm. to Review the State Bar*, 334 N.W.2d 544 (Wis. 1983)........................................7

Response to NSBA Report, Petition for a Rule Change to Create a Voluntary
State Bar of Nebraska, No. S-36-120001 (Neb. 2013)
https://cdn.ymaws.com/www.nebar.com/resource/resmgr/NSBA_Litigation/
Lautenbaugh_ Response_NSBAReport.pdf ..........................................................23

State Bar of Wisconsin, *Maintaining Your Membership* (2019),
    https://www.wisbar.org/formembers/membershipandbenefits/Pages/Maintaini
    ng-Your-Membership.aspx#keller ..........................................................................5

Virginia Bylaws of the State Bar and Council Pt. 1, Art. 1 ......................................... 20

Wisconsin Supreme Court Rule 10.01 .................................................................... 3, 4

Wisconsin Supreme Court Rule 10.02 ................................................................. 3, 4, 5

Wisconsin Supreme Court Rule 10.03 ............................................................. 3, 4, 5, 6

Wisconsin Supreme Court Rule Ch. 10, App'x, State Bar Bylaws, art. I, § 5 ...........5, 6

Wisconsin Supreme Court Rule 20:1.2(b) ................................................................. 20

Wisconsin Supreme Court Rule 21.03 ........................................................................ 4

Wisconsin Supreme Court Rule 21.06 ........................................................................ 4

Wisconsin Supreme Court Rule 21.08 ........................................................................ 4

Wisconsin Supreme Court Rule 22.10 ........................................................................ 4

Wisconsin Supreme Court Rule 22.23 ........................................................................ 4

Wisconsin Supreme Court Rule 22.30 ........................................................................ 4

4842-0269-4604.7

## JURISDICTIONAL SUMMARY

Appellant's Jurisdictional Statement is complete and correct.

STATEMENT OF THE ISSUE

Do *Lathrop v. Donohue*, 367 U.S. 820 (1961), and *Keller v. State Bar of California*, 496 U.S. 1 (1990), upholding the constitutionality of integrated bars like Wisconsin's, remain good law?

4842-0269-4604.7

STATEMENT OF THE CASE

I.    The State Bar of Wisconsin

The State Bar of Wisconsin is an "association" "of persons licensed to practice law in [Wisconsin]." Supreme Court Rule ("SCR") 10.01(1). The State Bar was created by the Wisconsin Supreme Court as an "exercise of the court's inherent authority over members of the legal profession as officers of the court." SCR 10.02(1). This exercise is, as the U.S. Supreme Court has recognized, an "exertion[ ] of the State's law-making power." *Lathrop v. Donohue*, 367 U.S. 820, 824–25 (1961). The Wisconsin Supreme Court created the State Bar to "promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice." SCR 10.01(2). To further those purposes, the State Bar is charged by the Wisconsin Supreme Court to:

> Aid the courts in carrying on and improving the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service and high standards of conduct; to safeguard the proper professional interests of the members of the bar; to encourage the formation and activities of local bar associations; to conduct a program of continuing legal education; to assist or support legal education programs at the preadmission level; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform and the relations of the bar to the public and to publish information relating thereto; to carry on a continuing program of legal research in the technical fields of substantive law, practice and procedure and make reports and recommendations thereon within legal permissible limits; to promote innovation, development and improvement of means to deliver legal services to the people of Wisconsin; to the end that the public responsibility of the legal profession may be more effectively discharged.

*Lathrop*, 367 U.S. at 828-29 (citation omitted). To advance these purposes, the Supreme Court Rules permit the State Bar to "engage in and fund any activity that is reasonably intended" to further the State Bar's purposes." SCR 10.03(5)(b)1.

3

"[M]embership" in the State Bar is "a condition precedent to the right to practice law in Wisconsin." SCR 10.01(1). Therefore, under SCR 10.03, the Wisconsin Supreme Court requires "[e]very person who becomes licensed to practice law in [Wisconsin]" to "enroll in the state bar by registering." SCR 10.03(2). All active State Bar members—that is, those members authorized to practice law in Wisconsin, SCR 10.03(5)—must pay "annual membership dues," which in turn fund, among other things, essential functions of the State Bar, including its numerous functions in support of the state's attorney regulatory system. *See*, *e.g.,* SCR 21.03, 21.06, 21.08, 22.10, 22.23, 22.30; *see also In re State Bar of Wisconsin: Membership*, 485 N.W.2d 225, 228 (Wis. 1992) (Bablitch, J., concurring); Memorandum of Court Commissioner, Rule Petition 11-04, Petition for Voluntary Bar at 22 (Oct. 25, 2011) https://www.wicourts.gov/supreme/docs /1104commissionermemo.pdf. Failure to pay required dues can result in a member being "suspended" from the practice of law. SCR 10.03(6). A state bar association like Wisconsin's, in which "membership and dues are required as a condition of practicing law," is referred to as an "integrated bar." *Keller*, 496 U.S. at 5; *see also Kingstad v. State Bar of Wisconsin*, 622 F.3d 708, 713 n.3 (7th Cir. 2010) ("integrated," "mandatory," or "unified" bar).

While, as noted above, the Wisconsin Supreme Court has generally provided that the State Bar may "engage in and fund any activity that is reasonably intended for the purposes of the association" as defined in SCR 10.02(2), it has also clearly stated that "[t]he State Bar may *not* use the compulsory dues of any member who objects . . . for activities that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services." SCR 10.03(5)(b)(1) (emphasis added). This is consistent with the standard set by the Supreme Court in *Keller*. 496 U.S. at 14 ("The State Bar may therefore constitutionally fund activities germane to [regulating the legal profession and improving the quality of legal services]

4

out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity."); *see also id.* (quoting *Lathrop*, 367 U.S. at 843) ("[T]he guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'"). Those activities, according to the Wisconsin Supreme Court, may be funded only with voluntary dues, user fees or other sources of revenue. SCR 10.02(5)(b)1.

The State Bar has gone one step further than required by SCR 10.03 and *Keller*, however, and includes in the category of activities that may not be funded by mandatory dues "*all* direct lobbying activity on policy matters before the Wisconsin State Legislature or the United States Congress …, even lobbying activity deemed germane to regulating the legal profession and improving the quality of legal services." State Bar of Wisconsin, *Maintaining Your Membership* (2019), https://www.wisbar.org/formembers/membershipandbenefits/Pages/Maintaining-Your-Membership.aspx#keller.

To effectuate the standard set by the Supreme Court in *Keller* and incorporated in SCR 10.03, each year, along with an annual dues statement, the State Bar sends to each member a "written notice of the activities that can be supported by compulsory dues and the activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2; *see generally* SCR Ch. 10, App'x, State Bar Bylaws, art. I, § 5. This notice is often referred to as the "*Keller* Dues Reduction Notice." This notice is sent "[p]rior to the beginning of each fiscal year" (SCR 10.03(5)(b)2) and is based on data from the most recent fiscal year for which there is an audit report available (*see, e.g.*, Brief in Support of Motion to Dismiss, Exhibit A, *File v. Kastner*, No. 2:19-cv-01063-LA, Dkt. 20-1 (E.D. Wis. Nov. 22, 2019); *Keller*, 496 U.S. at 16–17). The notice "indicate[s] the cost of each

activity, including all appropriate indirect expense[s], and the amount of dues to be devoted to each activity" (SCR 10.03(5)(b)2). The State Bar then voluntarily rounds up from a "strict calculation" (*e.g.* Fiscal Year 2020 *Keller* Dues Reduction Notice). The Notice provides each member the opportunity to "withhold" from their "annual dues statement" "the pro rata portion of dues budgeted for [the] activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2. The pro rata dues reduction is often referred to as the "*Keller* Dues Reduction."

The Wisconsin Supreme Court's Rules also provide a procedure for a member who "contends that the state bar incorrectly set the amount of dues that can be withheld" to challenge the amount of the *Keller* Dues Reduction through a timely demand for arbitration. SCR 10.03(5)(b)3. The State Bar must then "promptly submit the matter to arbitration before an impartial arbitrator." SCR 10.03(5)(b)4. If the arbitrator concludes that an increased pro rata dues reduction is required, "the state bar shall offer such increased pro rata reduction to members first admitted to the state bar during that fiscal year and after the date of the arbitrator's decision." SCR 10.03(5)(b)5. "The cost of the arbitration shall be paid by the state bar." SCR 10.03(5)(b)4. During the pendency of the challenge, the objecting member(s) pay no dues to the State Bar. SCR 10, App'x, Bylaws art. I, § 5(B) ("A member demanding arbitration is required to pay his or her dues by October 31 or 15 days following the arbitrator's decision, whichever is later.")

The constitutionality of the State Bar's integrated structure has been affirmed by this Court,[1] the U.S. Supreme Court,[2] and the Wisconsin Supreme Court[3] against numerous challenges over the past 75 years.

## II.     Proceedings Below

Appellant, a licensed Wisconsin attorney and member of the State Bar, initiated this action against officers of the State Bar and the justices of the Supreme Court of Wisconsin on July 25, 2019. *See* Complaint, ECF No. 1 ("Compl."), ¶¶ 6–8.

The Complaint identified three activities of the State Bar which Appellant alleged involve "direct lobbying" or are "ideologically charged." Compl. ¶¶ 17–18. Appellant alleged that these activities "illustrate the simple reality that virtually everything the State Bar does takes a position on the law and matters of public concern." Compl. ¶ 21. He asserted that these activities are akin to the public-sector collective bargaining which the U.S. Supreme Court in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), held cannot be funded by compulsory agency fees. Count I of the Complaint

---

[1] *Jarchow v. State Bar of Wis.*, No. 19-3444, 2019 WL 8953257 (7th Cir. Dec. 23, 2019); *Kingstad v. State Bar of Wis.*, 622 F.3d 708 (2010); *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996); *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (1993); *Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988).

[2] *Lathrop v. Donohue*, 367 U.S. 820 (1961).

[3] *Integration of Bar Case*, 11 N.W.2d 604 (Wis. 1943); *In re Integration of the Bar*, 25 N.W.2d 500 (Wis. 1946); *In re Integration of the Bar*, 77 N.W.2d 602 (Wis. 1956); *In re Integration of the Bar*, 93 N.W.2d 601 (Wis. 1958); *Lathrop v. Donohue*, 102 N.W.2d 404 (Wis. 1960); *In re Reg. of the Bar of Wis.*, 81 Wis. 2d xxxv (1978); *State ex rel. Armstrong v. Board of Governors*, 273 N.W.2d 356 (Wis. 1979); *In re Discontinuance of the State Bar of Wis. as an Integrated Bar*, 286 N.W.2d 601 (Wis. 1980); *Report of Comm. to Review the State Bar*, 334 N.W.2d 544 (Wis. 1983); *In re Amend. of State Bar Rules: SCR 10.03(5)*, slip op. (Wis. Jan. 21, 1986); *In re Petition to Review State Bar Bylaw Amends.*, 407 N.W.2d 923 (Wis. 1987); *In re State Bar of Wisc.: Membership*, 485 N.W.2d 225 (Wis. 1992); *In re Amend. of Sup. Ct. Rules: 10.03(5)(b) – State Bar Membership Dues Reduction*, 174 Wis. 2d xiii (1993); *In re Petition to Amend SCR 10.03(5)(b)1*, No. 09-08 (Wis. Nov. 17, 2010); *In re Petition for a Voluntary Bar*, No. 11-01 (Wis. July 6, 2011); *In re Petition to Review Change in State Bar Bylaws*, No. 11-05, slip op. (Wis. Oct. 7, 2011); *In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e) and Amend SCR 10.03(6)*, No. 17-04, slip op. (Wis. Apr. 12, 2018).

4842-0269-4604.7

alleged that "[t]he actions of the Defendants" in compelling Plaintiff to pay dues to the State Bar "constitute[s] a violation of Mr. File's First Amendment rights to free speech and freedom of association to not join or subsidize an organization without his affirmative consent" because "Defendants lack a compelling state interest to justify their action" and "Defendants' actions are not narrowly tailored to the means least restrictive of Mr. File's freedoms." Compl. ¶¶ 28–30. Appellant sought declaratory and injunctive relief declaring that "the Wisconsin Supreme Court's rules requiring Mr. File to belong to the State Bar of Wisconsin are unconstitutional" and enjoining Defendants from enforcing the Supreme Court Rules relating to State Bar membership against him. Compl. p. 9.

On November 22, 2019, Appellees moved to dismiss Appellant's claims on various grounds, including that those claims are foreclosed by *Keller*. Brief in Support of Motion to Dismiss by Jill Kastner, Larry Martin, ECF No. 20. The District Court granted Appellees' motion, holding that Appellant's claims are foreclosed by *Keller*, and that *Janus* did not implicitly overturn the holding in *Keller*. Order, ECF No. 37.

## SUMMARY OF ARGUMENT

The State Bar of Wisconsin ("State Bar") is a state-created, mandatory association of all lawyers licensed to practice law in Wisconsin, funded largely by membership dues. Such arrangements are generally referred to as "integrated bars." For almost 75 years, the State Bar has been central to Wisconsin's framework for regulating the practice of law. Over the years, the State Bar and Wisconsin Supreme Court, which established the State Bar and its governing structure, have developed and refined mechanisms for assessing mandatory and voluntary dues while also protecting members' First Amendment rights. The Wisconsin Supreme Court and State Bar have relied on the Supreme Court's decisions in *Lathrop v. Donohue* and *Keller v. State Bar of*

*California* for guidance in crafting these mechanisms. The resulting regime has been refined over the years and withstood a multitude of challenges in both state and federal courts.

Despite this Court's and the Eighth Circuit's pronouncements to the contrary, decisions the Supreme Court has not felt the need to consider (much less correct), Appellant asserts that by overturning *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Supreme Court's recent decision in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), fatally undermined the reasoning in *Lathrop* and *Keller* that justified requiring lawyers to join and fund integrated bars. In light of *Janus*, Appellant claims that the State Bar and other integrated bars cannot distinguish between "chargeable" and "non-chargeable" activities sufficiently to prevent members' mandatory dues from being used to fund bar activities to which he objects. Appellant further asserts that mandatory membership in an integrated bar is itself a violation of his First Amendment rights.

Appellant's argument runs contrary to the holdings of every federal court to consider the constitutionality of integrated bars since the Supreme Court decided *Janus*. Indeed, less than a year ago this Court held in *Jarchow v. State Bar of Wisconsin* that *Lathrop* and *Keller* still control on the constitutionality of integrated bars, even in the wake of *Janus*. The Eighth Circuit, in response to a direct grant, vacate, and remand ("GVR")[4] order from the Supreme Court to reconsider the ongoing validity of *Lathrop* and *Keller* in light of *Janus,* similarly held that *Lathrop* and *Keller* still control. Numerous district courts, including the court below, have followed suit. In light of this unanimity in the jurisprudence concerning integrated bars, Appellant's pursuit of appellate review of the same constitutional question concerning the same integrated bar association this Court considered, and the Supreme Court refused to take up less, in *Jarchow* borders on the absurd.

---

[4] A GVR order "is an efficient way for the Supreme Court to obtain the views of the lower courts on the effect of a new decision, whatever those views might be." *Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019). It does not carry a "presumption that the result should change." *Id.*

In deciding whether public unions can require dues from non-members, *Janus* did not also casually eviscerate decades-old opinions on a wholly different issue: whether states may choose to regulate the legal profession by creating an integrated bar association, a model that has existed in this country for over a century.

This Court should affirm the District Court's dismissal of Appellant's claims. *Lathrop* and *Keller* remain in line with the Supreme Court's First Amendment precedents, and *Janus* did not alter their vitality. *Lathrop* and *Keller* are well-established decisions and, as recently as 2014, the Supreme Court reaffirmed the core holdings of those decisions in *Harris v. Quinn*, 573 U.S. 616 (2014), plainly stating that *Lathrop* and *Keller* retain validity independent of *Abood*. The precedents Appellant cites to support his alleged First Amendment claims are readily distinguishable when applied to integrated bars generally and the State Bar in particular. Accordingly, this Court should follow its own precedent directly on point on this subject and reject Appellant's arguments.

## ARGUMENT

### I.    Recent Decisions Have Only Reinforced *Keller*.

Contrary to Appellant's assertions, recent decisions considering the validity of *Keller* have confirmed its continuing validity. Less than a year ago, a panel of this Court summarily affirmed the dismissal of a facial challenge to the constitutionality of Wisconsin's integrated bar. *Jarchow*, 2019 WL 8953257. The panel held that the plaintiffs' claims that Wisconsin's integrated bar violated their First Amendment rights were foreclosed by *Keller*, noting that "'[s]ummary disposition is appropriate 'when the position of one party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists.'"" *Id* (quoting *Williams v. Chrans*, 42 F.3d 1137, 1139 (7th Cir. 1995)).

10

Since this Court issued its decision in *Jarchow*, court decisions considering *Keller* have only reinforced this holding. On December 3, 2018, the Supreme Court issued a GVR order for the Eighth Circuit to reconsider its decision in *Fleck v. Wetch* in light of the holding in *Janus*. *Fleck v. Wetch*, 139 S. Ct. 590 (Mem.) (2018). The Eighth Circuit had previously upheld the district court's dismissal of a constitutional challenge to North Dakota's integrated bar. *Fleck v. Wetch*, 868 F.3d 652 (8th Cir. 2017) (vacated and remanded *Fleck v. Wetch*, 139 S. Ct. 590 (Mem.) (2018)). On rehearing, the Eighth Circuit again held that *Janus* did not overrule *Keller* and reaffirmed its earlier decision upholding the constitutionality of North Dakota's integrated bar. *Fleck v. Wetch*, 937 F.3d 1112, 1118 (8th Cir. 2019) ("Therefore, as *Janus* did not overrule *Keller* and did not question use of the *Hudson* procedures *when it is appropriate to do so*, we conclude after further consideration that *Janus* does not alter our prior decision explaining why the district court did not err in granting summary judgment dismissing Fleck's second claim.") (emphasis in original). The Supreme Court denied Fleck's petition for writ of certiorari and denied rehearing of his petition, declining to consider the question "[a]re laws mandating membership in a state bar association subject to the same 'exacting' First Amendment scrutiny that the Court prescribed for mandatory public-sector union fees in *Janus*?" Petition for Writ of Certiorari, *Fleck v. Wetch*, No. 19-670 (May 4, 2020).

Also in December 2019, the *Jarchow* plaintiffs, like Appellant here, argued in their petition for writ of certiorari to the Supreme Court that *Janus* undermined *Keller* to the extent that *Keller* should no longer control. *See* Petition for Writ of Certiorari, *Jarchow v. State Bar of Wis.*, No. 19-831 (Dec. 31, 2019). As in *Fleck*, the Supreme Court denied the petition, declining the opportunity to overturn *Keller*. *See Jarchow v. State Bar of Wis.*, 140 S. Ct. 1720 (Mem.) (Jun. 1, 2020).

Multiple district courts have also upheld *Keller* in the wake of *Janus*. *Taylor v. Barnes*, Case No. 1:19-cv-00670-RJJ-PJG (W.D. Mich. Sept. 8, 2020) (challenging Michigan bar: "Plaintiff accepts that *Lathrop* and *Keller* rejected the claims she is making here, but urges this Court to revisit them in light of a line of Supreme Court authority culminating in *Janus* that, according to Plaintiff, calls into question the continuing validity of the holdings. This Court has no power to do that."); *McDonald v. Sorrels*, No. 1:19-cv-00219-LY (W.D. Tex. May 29, 2020) (challenging the Texas bar: "[T]he court finds no basis for holding that *Janus* overrules *Keller*."); *Schell v. Gurich*, No. 5:19-cv-00281-HE (W.D. Okla. Sept. 18, 2019) (challenging the Oklahoma bar: "While there are some parallels between *Janus* and the circumstances here, there are also differences. There is also no suggestion in *Janus* that either *Lathrop* or *Keller* were overruled or otherwise called into question."); Findings & Recommendation, *Gruber v. Oregon State Bar*, No. 3:18-cv-1591-JR, *Crowe v. Oregon State Bar*, No. 3:18-cv-2139-JR (D. Or. Apr. 1, 2019) ("Accordingly, this court should decline to apply *Janus* and must apply *Keller* to the cases at bar.").

In fact, no court to consider a constitutional challenge to an integrated bar since *Janus* has held that *Janus* overrules *Lathrop* or *Keller*, either explicitly or implicitly. Federal courts at all levels, including the Supreme Court, have had the opportunity to hold, as Appellant urges, that *Janus* undermined or implicitly overruled *Keller* and *Lathrop* such that integrated bars like Wisconsin's can no longer pass constitutional muster. Without exception, District Courts continue to dismiss or grant summary judgment against constitutional challenges to integrated bars as precluded by *Keller* and *Lathrop*. Courts of Appeals, including this Court, have uniformly affirmed these judgments. On two occasions, the Supreme Court has been directly presented with the question of whether *Janus* undermined or overruled *Keller* and *Lathrop*, and has declined to rule on the issue. Appellant cannot point to a single subsequent decision or holding to support his claim

12

that *Janus* sounded a death knell for *Keller* and *Lathrop*. To the contrary, *Keller* and *Lathrop* remain vital, controlling precedents, and the court below correctly held that those cases bar Appellant's claims.

II.     *Keller* and *Lathrop* Remain Good Law.

A.     *Janus* Did Not Implicitly Overrule *Keller*.

Appellant misapplies this Court's precedents in arguing that *Janus* implicitly overruled *Keller* and *Lathrop*. To conclude that a controlling Supreme Court precedent has been implicitly overruled, the Court "must be satisfied that 'this is one of those rare cases where circumstances 'have created a near certainty that only the occasion is needed for the pronouncement [by the Supreme Court] of the doom' of an obsolete doctrine.'" *Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988) (quoting *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986)). To reach this conclusion, courts look to whether any Supreme Court justice has ever questioned the validity of the precedent, whether lower courts have followed the precedent, and whether subsequent Supreme Court cases in an identical area of law undermine the precedent. *Id.* However, "a lower court decision that employs analogy to conclude that a higher court precedent has been implicitly overruled, however, significantly undermines the doctrine of *stare decisis*." *Id.*

Appellant's argument that these *Levine* factors are met here is not credible. As set out in Part I, *supra*, no court since *Janus* was decided has abandoned *Keller* or *Lathrop*. To the contrary, every court presented with the issue since *Janus*, including this Court, continue to hold that *Keller* and *Lathrop* preclude claims challenging the constitutionality of integrated bars. Appellant concedes as much. (Appellant's Br. at 26.) Appellant's reliance on analogies to cases and academic analysis considering union agency fees runs contrary to the *Levine* court's admonition that the doctrine of *stare decisis* is significantly undermined by arguments that rely on analogy to implicitly undermine Supreme Court precedent. *See Levine*, 864 F.2d at 461. Moreover, there have been no

13

Supreme Court decisions since *Keller* specifically addressing the law on integrated bars. The only post-*Janus* evidence Appellant can summon to satisfy a *Levine* factor is Justice Thomas' and Justice Gorsuch's dissent to the Supreme Court's denial of the petition for writ of certiorari in *Jarchow v. State Bar of Wisconsin*. *See Jarchow*, 140 S. Ct. 1720 (Mem.). The statements of two of nine Supreme Court justices dissenting to the refusal to consider the issue (not even dissents rejecting a challenge), standing alone, hardly amounts to "'a near certainty that only the occasion is needed for the pronouncement [by the Supreme Court] of the doom' of an obsolete doctrine.'" *Levine*, 864 F.2d at 461 (quoting *Olson*, 806 F.2d at 734). To the contrary, the Supreme Court has now rejected just such an opportunity twice, in *Fleck* and *Jarchow*.

      B.      The Eighth Circuit Has Already Responded to the *Fleck* GVR.

      Appellant's call for this Court to reconsider *Lathrop* and *Keller* in light of the Supreme Court's GVR order in *Fleck* overlooks the fact that both this Court and the Eighth Circuit have decided integrated bar cases since the *Fleck* GVR. As detailed above, the Eighth Circuit, following the Supreme Court's GVR order to reconsider its decision affirming *Keller* in light of *Janus*, reaffirmed *Keller* as controlling law and upheld the constitutionality of North Dakota's integrated bar. *See* Part I, *supra*. The Supreme Court refused to take up *Fleck* again after its GVR order, leaving little doubt that the Eighth Circuit responded to the GVR order appropriately. *Id.* Moreover, *this* Court summarily affirmed the District Court's dismissal of the claims in *Jarchow* and upheld *Keller* and *Lathrop* after the *Fleck* GVR order was issued. *Id.* To the extent the Supreme Court's GVR order was a call to reconsider the status of *Lathrop* and *Keller* in light of the holding in *Janus*, both this Court and the Eighth Circuit have already answered. There is no need for this Court to reexamine the validity of *Lathrop* and *Keller* again, especially such a short time after its decision in *Jarchow*.

4842-0269-4604.7

C.     *Lathrop* and *Keller* Remain Consistent With Supreme Court Precedent.

    1.     *Janus* did not undermine *Keller* and *Lathrop*.

*Lathrop* and *Keller* remain fully in line with the Supreme Court's First Amendment precedents. *Lathrop* involved a First Amendment challenge to the State Bar of Wisconsin, brought shortly after the State Bar was integrated. The Court rejected that challenge. Although no one opinion commanded a majority, a plurality of the Court concluded that Wisconsin law imposed no cognizable burden on attorneys beyond the obligation to pay mandatory annual dues, implicitly rejecting the view that merely calling attorneys "members" of the State Bar imposed some First Amendment injury. 367 U.S. at 827–28, 842–43 (plurality opinion). The plurality declined to decide whether an attorney might have a First Amendment claim if required dues were used to pay for political speech with which the attorney disagreed, holding that the factual record was insufficient to address that claim—because, among other things, it lacked facts showing "the way in which and the degree to which funds compulsorily exacted from [bar] members are used to support . . . political activities," "how political expenditures are financed and how much has been expended for political causes to which appellant objects," and "what portions of the expenditure of funds to propagate the State Bar's views may be properly apportioned to [the plaintiff's] dues payments." *Id.* at 846.[5]

In *Keller*, the Court again considered whether an integrated bar association could use a member's dues to finance political activities over the member's objection. The Court unanimously held that while "lawyers admitted to practice in the State may be required to join and pay dues to the State Bar," the bar could not use a member's dues for ideological or political speech. 496 U.S.

---

[5] Three Justices thought the factual record was adequate to decide these issues, and would have found no First Amendment violation. *See id.* at 848–65 (Harland, J., joined by Frankfurter, J., concurring in the judgment); *id.* at 865 (Whitaker, J., concurrening in the judgment).

at 4. In reaching that holding, the Court made clear that the First Amendment did not prohibit states from using mandatory dues to fund activities germane to the bar's legitimate goals of "regulating the legal profession and improving the quality of legal services." *Id.* at 13.

Appellant's argument to overturn *Lathrop* and *Keller* hinges on the notion that the holdings in both cases are fatally undermined by *Janus*. That notion is incorrect. *Janus* said nothing whatsoever about *Lathrop*, *Keller*, or whether attorneys could be required to join and pay dues to an integrated bar. Instead, *Janus* addressed a wholly different issue: whether the First Amendment permits a public union (i.e., one representing public-sector workers) to charge mandatory dues to non-members. 138 S. Ct. at 2459–60. The Court held that such arrangements violate the First Amendment, overturning *Abood v. Detroit Board of Education*. Naturally, the *Janus* Court explained at length why *Abood* was incorrect, and why *stare decisis* did not warrant keeping it. *See id.* at 2463–86. Nothing in *Janus*, however, addressed whether those same arguments would have any application in the integrated bar context, especially given the unique state interest in regulating the legal profession (and imposing the costs of that regulation on practicing attorneys themselves) and the longstanding history of the integrated bar as a means of carrying out that regulation. Put simply, *Janus* overruled *Abood*, not *Lathrop* and *Keller*.

The lack of any reference to *Lathrop* or *Keller* is unsurprising, as the Supreme Court had reaffirmed *Keller* and its underlying reasoning just four years earlier in *Harris v. Quinn* at the same time it questioned the soundness of *Abood*. 573 U.S. 616, 655–56 (2014). In *Harris*, the Supreme Court refused to extend *Abood* to home care personal assistants, holding that the personal assistants who did not join a public-sector union could not be compelled to pay agency fees. *Id.* at 645–47. The Supreme Court held that *Abood* did not apply, in part, because the compelling state interests that *Abood* found supported compulsory agency fees did not apply to the personal assistants, who

16

were not full-fledged state employees. *Id.* at 645–46. Respondents in that case argued that refusal to extend *Abood* to require agency fees from the personal assistants would call into question the holding in *Keller*. *Id.* at 655. The Supreme Court rejected that argument, stating that Respondents were "mistaken" because "[*Keller*] fits comfortably within the framework applied in the present case." *Id.* Further, the Supreme Court affirmed the validity of the "State's interest in regulating the legal profession and improving the quality of legal services," the state interests that *Keller* found justify the integrated bar.[6] *Id.* (citation omitted.) "States also have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices. Thus, our decision in [*Harris*] is wholly consistent with our holding in *Keller*." *Id.* at 655–56. The dissent, too, agreed that the holding in *Harris* "reaffirmed [*Keller*] as good law." 573 U.S. at 670 (Kagan, J., dissenting). Thus, in *Harris*, the Supreme Court unanimously confirmed the continuing validity of *Keller*.

The Supreme Court's statements in *Harris* were not questioned by the holding in *Janus*. On the contrary, *Janus* itself relied extensively on *Harris* in overruling *Abood*. *See* 138 S. Ct. at 2463, 2465–66, 2468, 2471–72, 2474, 2477, 2479–80. If, as Appellant asserts, *Keller* has increasingly become an anomalous outlier in the Supreme Court's First Amendment jurisprudence, then the Court would not have so clearly reaffirmed *Keller's* essential holding as recently as 2014 in the same opinion that criticized *Abood*. Rather, the very different treatment of *Keller* and *Abood* in *Harris* illustrates that *Keller* and the compelling state interests it recognized not only differ

---

[6] Plaintiffs argue that a narrow role in the state's disciplinary system and continuing legal education are the only justifications for a mandatory bar and that the State Bar does not serve those roles. This argument is the same argument raised by the plaintiff, and rejected by this Court, in *Levine.* 864 F.2d at 462 ("the diminution in the bar association's role in the areas of attorney discipline and continuing legal education" did not diminish the state's legitimate interest in requiring membership in an integrated bar.). The argument should fare no better here.

significantly from the public union question, but remain in line with the modern understanding of the First Amendment. Indeed, *Harris'* reaffirmation of *Keller* contradicts Appellant's argument that *Keller's* holding is dependent on *Abood*, because *Harris* reaffirmed the core holdings of *Keller* after criticizing *Abood* and deciding that it did not apply there. Thus, *Harris* confirms that *Keller* stands independent from *Abood*, and *Janus* did not mention, much less question, that conclusion.

Because *Janus* did not undermine *Lathrop* or *Keller*, Appellant's straw man "thought experiments" (Appellant's Br. at 27–31) are irrelevant to the question before this Court.

2.     The Supreme Court Has Distinguished Integrated Bars from Mandatory Subsidies.

*Keller*'s continued vitality post-*Janus* is reinforced by the fact that the Supreme Court has previously distinguished integrated bars from mandatory subsidies that implicate First Amendment rights. In *United States v. United Foods*, the federal Mushroom Promotion, Research, and Consumer Information Act imposed mandatory assessments upon handlers of fresh mushrooms to pay for advertising about mushrooms. 533 U.S. 405 (2001). A mushroom seller refused to pay the assessment, arguing that the law compelled it to fund speech with which it disagreed, violating its First Amendment rights. Applying "First Amendment scrutiny," the Supreme Court held that the Constitution did not permit the government to compel speech that was not "ancillary to a more comprehensive program restricting marketing autonomy." *Id.* at 411; *see also Janus*, 138 S. Ct. at 2465 (stating that *United Foods* "applied what we characterized as 'exacting' scrutiny").

The Supreme Court went on to distinguish *Keller* and integrated bars from the unconstitutional compelled marketing assessments. Unlike the mushroom sellers, who paid the marketing assessment solely for advertising purposes, bar members "who were required to pay a subsidy for the speech of the association already were required to associate for other purposes, making the compelled contribution of moneys to pay for expressive activities a necessary incident

18

of a larger expenditure for an otherwise proper goal requiring the cooperative activity." *United Foods*, 533 U.S. at 414. Accordingly, "[l]awyers could be required to pay moneys in support of activities that were germane to the reason justifying the compelled association in the first place, for example, expenditures (including expenditures for speech) that related to 'activities connected with disciplining members of the Bar or proposing ethical codes for the profession." *Id.* (quoting *Keller*, 496 U.S. at 16).

Moreover, while speech by a state-created integrated bar has not been thought of as full-blown government speech, *see Keller*, 496 U.S. at 10–13, it is "part of a broader collective enterprise in which [one's] freedom to act independently is already constrained by the regulatory scheme," the statewide regulation of the legal profession. *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 469 (1997); *see also United Foods*, 533 U.S. at 414–15. The Supreme Court has found that compelled contributions to entities that are part of a broader regulatory scheme do not violate the First Amendment. *Id.* Integrated bars, as the chosen vehicle for the statewide regulation of the legal profession in states like Wisconsin, fall squarely within a category of entities for which compelled funding is generally permissible.

3.    "Membership" in the State Bar Does Not Implicate First Amendment Rights.

Appellant's argument that Wisconsin's integrated bar violates his First Amendment associational rights is also unavailing. First, *Janus* does not alter the law regarding associational rights because the issue did not even arise there, as the plaintiffs were non-members, challenging the requirement that they pay dues to the union. Thus, the question of membership was not at issue.

Regardless, Appellant has not shown that there is a cognizable First Amendment injury merely because the State describes all lawyers admitted to practice in Wisconsin as "members" of the State Bar. "Member of the bar" is an historical term of art which in this context simply means

that a lawyer is licensed to practice in Wisconsin, as opposed to identification as a member of a political party or interest group which implies that a person agrees with the group's views. If the Wisconsin Supreme Court chose to refer to such individuals only as "licensed attorneys," and call State Bar membership dues "license fees," there would clearly be no argument as to the constitutionality of such designations. In fact, multiple states with voluntary bar associations refer to their licensed attorneys as "members of the bar." *See* IN ST ADMIS AND DISC Rule 2(b) ("each attorney who is a member of the bar of this Court . . . shall, so long as the attorney is a member of the Bar of this Court, pay a registration fee . . ."); Pa. B.A.R., Rule 232 ("Members of the bar of this Commonwealth . . . shall be entitled to practice law before every court and district justice of this Commonwealth . . ."); Virginia Bylaws of the State Bar and Council Pt. 1, Art. 1 (Article I, entitled "Members," states "[t]he Virginia State Bar is comprised of all attorneys licensed to practice law in Virginia."). Appellant cannot conjure a constitutional injury from a mere choice of long-accepted terminology.

Wisconsin lawyers are familiar with the idea that affiliation does not imply endorsement, as the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys plainly state that "[a] lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities." SCR 20:1.2(b). Just as association with a client does not imply a lawyer's identification with the client's views, association with the State Bar does not imply identification with the State Bar's positions. *See Lathrop*, 367 U.S. at 859 (1961) (Harlan, J., concurring in the judgment) ("[E]veryone understands or should understand that the view expressed [by the State Bar] are those of the State Bar as an entity separate and distinct from each individual." (citation and quotation marks omitted).) Because all practicing lawyers in the State must become members of the State

Bar, the only common thread between them, and the only reasonable implication from their association with the State Bar, is their authorization to practice their shared profession.

The alternative, finding a First Amendment injury in being identified as a member of *any* expressive organization with which a person might disagree on some issues, would mean that every integrated bar since the first integrated bar in the United States, created over a century ago, has been unconstitutional. Undoubtedly, any professional association will have at least one member who disagrees with a position the association takes. Nonetheless, the Supreme Court unanimously held in *Keller* that attorneys can be compelled to join an integrated bar. *Keller*, 496 U.S. at 4 ("We agree that [the State] lawyers admitted to practice in the State may be required to *join* and pay dues to the State Bar.") (emphasis added).

4. The State Bar's Operations Are Materially Distinguishable from the Union Activities in *Janus*.

The State Bar's operations are materially distinguishable from the public-sector union activities the Supreme Court disapproved of in *Janus*. First, the State Bar is not the exclusive representative of Wisconsin lawyers under any circumstances. In *Janus*, by contrast, the union was the exclusive bargaining representative of government employees within the bargaining unit, whether or not they were union members. *Janus*, 138 S. Ct. at 2467–68. As a result, compelled funding of union speech limited government employees' ability to speak in a concrete way. This is hardly the case with the State Bar and other integrated bars. The State Bar does not purport to speak directly for Wisconsin lawyers on any particular issue. State Bar members are free to espouse their own views on any issue on which the State Bar speaks, even where the two views are directly contradictory. Moreover, State Bar members are uniquely positioned to appreciate First Amendment values and exercise their rights to avoid dues that are directed to chargeable activities to which they object.

Second, the State Bar's *Keller* Dues Reduction process is comprehensive and differs notably from the agency fee procedures in *Janus* to which Appellant seeks to compare them. In *Janus*, the agency fees were automatically deducted from the wages of public employees without their consent. *Janus*, 138 S. Ct. at 2461. Only after the amount of the agency fee was set for the year did employees receive a notice detailing the union activities to which their agency fees were applied. *Id.* This meant that employees could only challenge the amount of the agency fee after the State had already begun to deduct it from their paychecks. *Id.* Thus, the state employees in *Janus* had no choice as to which union activities they funded.

By contrast, State Bar members voluntarily opt-in to funding the State Bar's non-chargeable activities. When State Bar members pay their dues each year, they are given the option of paying only those dues which support the State Bar's chargeable activities, or paying additional dues to fund the State Bar's non-chargeable activities. *See supra* pp. 5–6. To make this decision, members can refer to the *Keller* Dues Reduction Notice, which spells out which activities are chargeable and which are not, based on the most recent financial data available. *Id.* Only if members affirmatively choose to pay the additional amounts do they fund the State Bar's non-chargeable activities. Alternatively, if they choose to challenge the dues reduction, they pay no bar dues at all until the challenge has been heard by an impartial arbitrator.

The Eighth Circuit in *Fleck*, reviewing the State Bar Association of North Dakota's ("SBAND") similar *Keller* procedures, held that by allowing members to deduct amounts for non-chargeable activities from their dues in advance, SBAND had created an opt-in procedure easily distinguishable from the opt-out procedure overturned in *Janus*. *Fleck*, 937 F.3d at 1117–18 ("SBAND's revised fee statement and procedures clearly do not force members to pay non-chargeable dues over their objection.").

> The member's right to pay or refuse to pay dues to subsidize non-chargeable expenses is clearly explained on the fee statement and accompanying instructions, *in advance of the member consenting to pay by delivering a check to SBAND*. Doing nothing may violate a member's obligations to pay dues, but it does not result in the member paying dues that he or she has not affirmatively consented to pay.

*Id.* at 1118. As with SBAND, the State Bar's *Keller* procedures ensure that members fully consent when they choose to pay dues to fund non-chargeable activities. Additionally, because the State Bar has a policy of being over-inclusive in calculating the annual *Keller* Dues Reduction, there is little risk that members unknowingly pay for non-chargeable activities even when they take the *Keller* Dues Reduction.[7]

## CONCLUSION

For the reasons stated above, the judgment of the District Court should be affirmed.

---

[7] In fact, at least one challenge to an integrated bar in another state has expressly recommended Wisconsin's procedures as a model to be followed to ensure protection of members' constitutional rights. *See* Response to NSBA Report, Petition for a Rule Change to Create a Voluntary State Bar of Nebraska, No. S-36-120001 (Neb. 2013) https://cdn.ymaws.com/www.nebar.com/resource/resmgr/NSBA_Litigation/Lautenbaugh_Response_NSBAReport.pdf.

Roberta F. Howell,
Andrew C. Gresik,


/s/ Roberta F. Howell
Roberta F. Howell
*Counsel for Appellees Kathleen Brost
and Larry Martin*

Foley & Lardner LLP
Suite 5000
150 East Gilman Street
Madison, WI 53703-1482
Post Office Box 1497
Madison, WI 53701-1497
Voice:  608.257.5035
Facsimile:  608.258.4258

24

4842-0269-4604.7

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   _X_   This brief contains 6,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   ___   This brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   _X_  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 12 point Times New Roman, or

   ___this brief has been prepared in a monospaced typeface using Microsoft Word 2010 with [state number of characters per inch and name of type style].

   */s/ Roberta F. Howell*
   ROBERTA F. HOWELL