No. 20-2387

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

SCHUYLER FILE,

      Plaintiff-Appellant,

  v.

KATHLEEN BROST, *et al.*,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
THE HONORABLE LYNN ADELMAN, PRESIDING

**BRIEF OF DEFENDANTS-APPELLEES CHIEF JUSTICE
PATIENCE D. ROGGENSACK, AND JUSTICES ANN
WALSH BRADLEY, ANNETTE KINGSLAND ZIEGLER,
REBECCA GRASSL BRADLEY, REBECCA FRANK DALLET,
BRIAN HAGEDORN, AND JILL J. KAROFSKY**

<div align="right">

JOSHUA L. KAUL
Attorney General of Wisconsin

CLAYTON P. KAWSKI*
Assistant Attorney General
WI State Bar #1066228

S. MICHAEL MURPHY
Assistant Attorney General
WI State Bar #1078149

Attorneys for Defendants-Appellees
Chief Justice Patience D. Roggensack,
and Justices Ann Walsh Bradley,
Annette Kingsland Ziegler, Rebecca
Grassl Bradley, Rebecca Frank Dallet,
Brian Hagedorn, and Jill J. Karofsky

</div>

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8549 (Kawski)
(608) 266-5457 (Murphy)
(608) 294-2907 (Fax)
kawskicp@doj.state.wi.us
murphysm@doj.state.wi.us

*Counsel of Record*

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ....................................................1

    I.    Information required by Seventh Circuit Rule 28(a)(1) ................1

    II.    Information required by Seventh Circuit Rule 28(a)(2) ................1

    III.    Information required by Seventh Circuit Rule 28(a)(3) ................2

INTRODUCTION ...........................................................................2

STATEMENT OF THE ISSUE ........................................................3

STATEMENT OF THE CASE ........................................................3

    I.    Background regarding Wisconsin's integrated bar, mandatory membership and dues, and the lawyer-regulation system.................................................................4

    II.    File's challenge to Wisconsin's integrated bar ................................7

    III.    Procedural history ...........................................................9

SUMMARY OF THE ARGUMENT ................................................. 10

ARGUMENT ................................................................................ 13

    I.    This challenge to Wisconsin's integrated bar, like many prior cases, fails because *Keller* and related cases foreclose File's claims, and *Janus* is inapposite. .......................................... 13

        A.    Applying de novo review, affirming dismissal is proper when File can plead no facts that would entitle him to relief. ............................................ 13

        B.    Wisconsin's integrated bar has been upheld in many cases.......................................................................... 14

        C.    *Keller* and related cases control, meaning File cannot prevail as a matter of law..................................... 15

        D.    *Janus* does not control and did not overrule *Keller*. .......... 18

*Page*

II.    File's counterarguments are unpersuasive. ................................ 22

    A.    File's arguments regarding the level of First Amendment scrutiny are misplaced. .................................. 23

    B.    Neither *Harris* nor *Janus* overruled or limited the State's interests recognized as sufficient in *Keller*. ........... 25

        1.    *Harris* did not limit the State's interests in a mandatory bar association to only the regulation of legal ethics. ......................................... 25

        2.    *Janus* did not "implicitly overrule" *Keller*. ............... 28

            a.    The *Levine* analysis does not show that *Keller* was "implicitly overruled." .................. 29

            b.    The district court appropriately relied upon *Price*. ......................................... 32

            c.    The *Fleck* GVR does not give this Court "permission" to revisit *Keller* ............................ 34

    C.    File's arguments regarding the State Bar of Wisconsin speaking on "issues of great public concern," the *Keller* dues-deduction calculation, and the "opt-out framework" are unpersuasive. ....................... 35

III.    In the alternative, File lacks Article III standing to assert his claims against the Justices; further, the Justices are immune from suit. ........................................................ 38

    A.    File lacks Article III standing. ............................................. 38

    B.    The Justices are immune from suit. .................................... 40

CONCLUSION ................................................................. 42

*Page*

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977) ................................................................ 11, 19

*Agostini v. Felton*,
  521 U.S. 203 (1997) ............................................................... 21

*Alarm Detection Sys., Inc. v. Vill. of Schaumburg*,
  930 F.3d 812 (7th Cir. 2019) ............................................... 13

*Bauer v. Shepard*,
  620 F.3d 704 (7th Cir. 2010) ............................................... 40

*Boudreaux v. La. State Bar Ass'n*,
  433 F. Supp. 3d 942 (E.D. La. 2020) .................................. 30

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................. 36

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ......................................... 38, 39

*Crosetto v. State Bar of Wis.*,
  12 F.3d 1396 (7th Cir. 1993) ......................... 14, 18, 39, 40

*Enger v. Chi. Carriage Cab Corp.*,
  812 F.3d 565 (7th Cir. 2016) ......................................... 13, 14

*Fleck v. Wetch*,
  139 S. Ct. 590 (2018) ................................... 30, 34, 35, 37

*Fleck v. Wetch*, 937 F.3d 1112 (8th Cir. 2019) ............... 12, 30, 34, 35

*Gruber v. Or. State Bar*,
  No. 18-CV-1591-JR, 2019 WL 2251826 (D. Or. April 1, 2019) ............. 30–31

*Gruber v. Or. State Bar*,
  No. 18-CV-1591-JR, 2019 WL 2251282 (D. Or. May 24, 2019).............. 30–31

*Harris v. Quinn*,
  573 U.S. 616 (2014) ....................................... 11, 20, 31

*Hill v. Colorado*,
  530 U.S. 703 (2000) ................................................... 33

Page

*Hill v. Trs. of Ind. Univ.*,
   537 F.2d 248 (7th Cir. 1976) ........................................................ 36

*In re Disciplinary Proceedings Against Amoun Vang Sayaovong*,
   2015 WI 100, 365 Wis. 2d 200, 871 N.W.2d 271 ............................ 6

*In re Disciplinary Proceedings Against FitzGerald*,
   2007 WI 11, 304 Wis. 2d 592, 735 N.W.2d 913 ............................ 7

*In re Integration of the Bar*,
   5 Wis. 2d 618, 93 N.W.2d 601 (Wis. 1958) .................................. 14

*In re Integration of the Bar*,
   249 Wis. 523, 25 N.W.2d 500 (Wis. 1946) .................................. 14

*In the Matter of the Integration of the Bar*,
   273 Wis. 281, 77 N.W.2d 602 (Wis. 1956) .................................. 14

*Integration of Bar Case*,
   244 Wis. 8, 11 N.W.2d 604 (Wis. 1943) ...................................... 14

*Janus v. Am. Fed'n of State, County, & Mun. Emp.'s, Council 31*,
   585 U.S. ___, 138 S. Ct. 2448 (2018) ................................... 2, *passim*

*Jarchow v. State Bar of Wis.*,
   140 S. Ct. 1720 (2020) ............................................. 11, 21, 22, 30

*Keller v. State Bar of Cal.*,
   496 U.S. 1 (1990) ....................................................... 2, *passim*

*Kingstad v. State Bar of Wis.*,
   622 F.3d 708 (7th Cir. 2010) ....................................... 14, *passim*

*Knox v. Serv. Emps.' Int'l Union, Local 1000*,
   567 U.S. 298 (2012) ..................................................... 23

*Korte v. Sebelius*,
   735 F.3d 654 (7th Cir. 2013) ........................................... 40

*Lathrop v. Donohue*,
   10 Wis. 2d 230, 102 N.W.2d 404 (Wis. 1960) .............................. 14

*Lathrop v. Donohue*,
   367 U.S. 820 (1961) ............................................. 10, 14, 16, 18

*Levine v. Heffernan*,
   864 F.2d 457 (7th Cir. 1988) ..................................... 14, 18, 29, 31

*Page*

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................. 38

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,*
    935 F.3d 573 (7th Cir. 2019) .................................................... 39

*McDonald v. Sorrels,*
    No. 19-CV-219-LY, 2020 WL 3261061 (W.D. Tex. May 29, 2020) .............. 30

*McMullen v. Coakley,*
    573 U.S. 464 (2014) ................................................................. 33

*Planned Parenthood of Se. Pa. v. Casey,*
    505 U.S. 833 (1992) ................................................................. 32

*Price v. City of Chicago,*
    915 F.3d 1107 (7th Cir. 2019) ............................................ 21, 28, 33, 34

*Reed v. Town of Gilbert,*
    --- U.S. ----, 135 S. Ct. 2218, 192 L.Ed.2d 236 (2015) ................... 33

*Reeder v. Madigan,*
    780 F.3d 799 (7th Cir. 2015) .................................................... 41

*Reger Dev., LLC v. Nat'l City Bank,*
    592 F.3d 759 (7th Cir. 2010) .................................................... 13

*Schell v. Gurich,*
    409 F. Supp. 3d 1290 (W.D. Okla. 2019) ........................................ 31

*Shalala v. Ill. Council on Long Term Care, Inc.,*
    529 U.S. 1 (2000) ............................................................... 27–28

*State ex rel. Armstrong v. Bd. of Governors of State Bar,*
    86 Wis. 2d 746, 273 N.W.2d 356 (Wis. 1979) .................................... 14

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997) ............................................................... 22, 31

*Supreme Court of Va. v. Consumers Union of U.S., Inc.,*
    446 U.S. 719 (1980) ........................................................... 40, 41

*Thiel v. State Bar of Wis.,*
    94 F.3d 399 (7th Cir. 1996) ................................................... 14, 17

*Thomason v. Nachtrieb,*
    888 F.2d 1202 (7th Cir. 1989) .................................................. 36

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  137 S. Ct. 2012 (2017) ........................................................ 32

*United States v. Feinberg*,
  89 F.3d 333 (7th Cir. 1996) ................................................. 28

*United States v. United Foods, Inc.*,
  533 U.S. 405 (2001) ............................................................. 17

*Wis. Right to Life State Political Action Comm. v. Barland*,
  664 F.3d 139 (7th Cir. 2011) ............................................... 40

**Statutes**
28 U.S.C. § 1291 ................................................................... 1, 2

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1343(a)(3) .......................................................... 1

42 U.S.C. § 1983 ...................................................................... 1

28 U.S.C. § 2107(a) ................................................................. 2

Wis. Stat. § 757.30 .................................................................. 7

**Constitutional Provisions**
U.S. Const. art. III, § 2 ....................................................... 38

**Other Authorities**
7th Cir. R. 28(a)(1) ................................................................ 1

7th Cir. R. 28(a)(2) ................................................................ 1

7th Cir. R. 28(a)(2)(i) ............................................................ 1

7th Cir. R. 28(a)(2)(ii) ........................................................... 1

7th Cir. R. 28(a)(2)(iii) .......................................................... 1

7th Cir. R. 28(a)(2)(v) ............................................................ 2

7th Cir. R. 28(a)(3) ................................................................ 2

7th Cir. R. 28(a)(3)(i) ............................................................ 2

7th Cir. R. 28(a)(3)(ii) ........................................................... 2

7th Cir. R. 28(a)(3)(iii) .......................................................... 2

*Page*

7th Cir. R. 28(a)(3)(iv) ................................................................ 2

7th Cir. R. 28(b) ........................................................................ 1

Fed. R. App. P. 4(a)(1)(A) .......................................................... 2

Fed. R. Civ. P. 12(b)(1) ........................................................ 38, 39

*In the Matter of Petition to Amend Supreme Court Rule 10.03(5)(b)1*
No. 09-08A (Wis. Nov. 11, 2011) ........................................ 17–18

SCR 10.01(1) ............................................................................ 4

SCR 10.02(2) ............................................................................ 4

SCR 10.03(1) ............................................................................ 4

SCR 10.03(5) ............................................................................ 4

SCR 10.03(5)(b)1. ................................................................. 4–5

SCR 10.03(5)(b)2. .................................................................... 5

SCR 10.03(5)(b)3. .................................................................... 5

SCR 10.03(5)(b)4 ..................................................................... 5

SCR 10.03(5)(b)5. .................................................................... 5

SCR 10.03(6) ............................................................................ 5

SCR 22.02(2) ............................................................................ 6

SCR 22.11(1) ....................................................................... 6, 41

SCR 21 ..................................................................................... 5

SCR 21.01 ................................................................................ 6

SCR 21.02(1) ...................................................................... 6, 38

SCR 21.02(2) ...................................................................... 6, 41

SCR 22.11(1) .......................................................................... 41

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Schuyler File's jurisdictional summary is not complete and correct. *See* 7th Cir. R. 28(b). A complete and correct statement follows.

## I.     Information required by Seventh Circuit Rule 28(a)(1)

The district court had jurisdiction over federal-law claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights). *See* 7th Cir. R. 28(a)(1). File filed a complaint alleging 42 U.S.C. § 1983 claims under the First and Fourteenth Amendments to the U.S. Constitution. (Dkt. 1.) The defendants filed dismissal motions under Rule 12(b)(6). (Dkt. 14; 19.)

On June 29, 2020, the district court entered a decision and order dismissing the complaint. (Dkt. 37.) The court entered judgment in favor of the defendants the same day. (Dkt. 38.)

## II.     Information required by Seventh Circuit Rule 28(a)(2)

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over the district court's June 29, 2020, decision and order and judgment. (Dkt. 37; 38); *see* 7th Cir. R. 28(a)(2)(i). File did not file a motion for a new trial or alteration of the judgment or any other motion to toll the time within which to appeal. *See* 7th Cir. R. 28(a)(2)(ii), (iii).

On July 28, 2020, File timely filed a notice of appeal regarding the district court's decision and order and judgment. (Dkt. 39); *see* 7th Cir. R. 28(a)(2)(iv);

28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). These cases are not direct appeals of a magistrate judge's decision. *See* 7th Cir. R. 28(a)(2)(v).

## III.    Information required by Seventh Circuit Rule 28(a)(3)

There are no claims that remain for disposition in the district court. *See* 7th Cir. R. 28(a)(3)(i). The district court's June 29, 2020, decision and order and judgment are final and appealable. *See* 28 U.S.C. § 1291.

The basis for appellate jurisdiction is not the "collateral order doctrine." *See* 7th Cir. R. 28(a)(3)(ii). The decision and order and judgment sought to be reviewed did not remand a case to a bankruptcy judge or administrative agency. *See* 7th Cir. 28(a)(3)(iii). No issues remain in district court. *See* 7th Cir. R. 28(a)(3)(iv).

## INTRODUCTION

Schuyler File sued two leaders of the State Bar of Wisconsin and the Justices of the Wisconsin Supreme Court, in their official capacities, challenging the requirements of state-bar membership and dues to practice law in Wisconsin. The district court correctly granted judgment to the defendants because File's First Amendment claims are foreclosed by U.S. Supreme Court precedent.

File's claims are squarely foreclosed by *Keller v. State Bar of California*, 496 U.S. 1 (1990), and related cases. Contrary to File's arguments, *Janus v. American Federation of State, County, & Municipal Employees, Council 31*,

2

585 U.S. ___, 138 S. Ct. 2448 (2018), did not overrule *Keller*. Nor is *Janus* on point or controlling. File failed to state a claim upon which relief can be granted, and his arguments on appeal for why *Keller* does not control are unpersuasive.

In the alternative, File does not have Article III standing to pursue his claims against the Justices because they do not initiate or prosecute proceedings for the non-payment of bar dues, and File can show no injury that satisfies Article III's case or controversy requirement. In addition, the Justices are immune from suit: the cases recognize immunity for a court's rulemaking function where, as here, the court does not initiate disciplinary proceedings.

This Court should affirm the district court's judgment.

## STATEMENT OF THE ISSUE

Did the district court properly dismiss File's First Amendment claims challenging Wisconsin's mandatory bar association and dues for attorneys because his claims are foreclosed by *Keller*?

This Court should answer yes and affirm.

## STATEMENT OF THE CASE

Wisconsin has a mandatory bar association for attorneys that aids the courts in the administration of justice, maintains high ideals of integrity and standards of conduct in the practice of law, offers continuing legal education, and improves the quality of legal services available to Wisconsinites. File

challenges the requirement that an attorney must be a member of the State Bar and pay dues to practice law. It is not the first such challenge to these requirements—far from it. Controlling Supreme Court precedent establishes that the Bar is proper, and nothing File argues overcomes that precedent.

## I.    Background regarding Wisconsin's integrated bar, mandatory membership and dues, and the lawyer-regulation system.

Membership in the State Bar of Wisconsin is a "condition precedent to the right to practice law in Wisconsin." Supreme Court Rule 10.01(1) (*hereinafter* "SCR ___"). All persons licensed to practice law in the state are organized as an association: the "state bar of Wisconsin." SCR 10.02(1); *see also* SCR 10.03(1).

The purposes of the association include to aid the courts in carrying on and improving administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence, and public service and high standards of conduct; to conduct a program of continuing legal education; and to promote the innovation, development, and improvement of means to deliver legal services to the people of Wisconsin. SCR 10.02(2).

State bar members must pay annual membership dues. SCR 10.03(5). "The State Bar may engage in and fund any activity that is reasonably intended for the purposes of the association set forth in SCR 10.02(2)." SCR 10.03(5)(b)1.

"The State Bar may not use the compulsory dues of any member who objects . . . for activities that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services." *Id.* "Expenditures that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services may be funded only with voluntary dues, user fees or other sources of revenue." *Id.*

Yearly, the State Bar must publish written notice of the activities that can be supported by compulsory dues and those that cannot. SCR 10.03(5)(b)2. The notice must be sent to every Bar member with an annual dues statement. *Id.* A member may withhold the pro rata portion of dues budgeted for activities that cannot be supported by compulsory dues. *Id.* A member may challenge the Bar's calculation of these amounts by arbitration. SCR 10.03(5)(b)3., 4., 5.

A member who does not pay annual dues may have his membership suspended in the manner specified in the State Bar's bylaws. SCR 10.03(6). No person whose membership is suspended for nonpayment of dues may practice law during the period of suspension. *Id.*

SCR 21 establishes the lawyer regulation system "to carry out the supreme court's constitutional responsibility to supervise the practice of law and protect the public from misconduct by persons practicing law in Wisconsin." SCR 21 Preamble. The system is made up of the Office of Lawyer Regulation (OLR),

district committees, a preliminary review committee, referees, a board of administrative oversight, and the supreme court. SCR 21.01.

The OLR "receives and responds to inquiries and grievances relating to attorneys licensed to practice law or practicing law in Wisconsin and, when appropriate, investigates allegations of attorney misconduct or medical incapacity." SCR 21.02(1). "The office is responsible for the prosecution of disciplinary proceedings alleging attorney misconduct and proceedings alleging attorney medical incapacity and the investigation of license reinstatement petitions." *Id.* "The office has discretion whether to investigate and to prosecute de minimus violations." *Id.* "Discretion permits the office to prioritize resources on matters where there is harm and to complete them more promptly." *Id.*

The OLR functions pursuant to the procedures in SCR 22. SCR 21.02(2). The director of the OLR initiates "a proceeding alleging [attorney] misconduct by filing a complaint and an order to answer with the supreme court and serving a copy of each on the" attorney. SCR 22.11(1).

It is professional misconduct for a Wisconsin lawyer to violate a supreme court rule. SCR 20:8.4(f). The OLR has pursued disciplinary proceedings in the Wisconsin Supreme Court involving violations of SCR 10.03(6) when members failed to pay their dues, were suspended, and continued to practice law. *See In re Disciplinary Proceedings Against Amoun Vang Sayaovong*, 2015 WI 100,

6

¶ 16, 365 Wis. 2d 200, 871 N.W.2d 271; *In re Disciplinary Proceedings Against FitzGerald*, 2007 WI 11, ¶ 6, 304 Wis. 2d 592, 735 N.W.2d 913.

## II.    File's challenge to Wisconsin's integrated bar

Filed alleged that the defendants are violating his First Amendment rights to free speech and association by "continuing to mandate his [State Bar] membership and charge him dues." (Dkt. 1:8.) In his complaint, he alleged that the Justices "have adopted a requirement of mandatory membership [in the State Bar] and dues for all attorneys licensed in Wisconsin." (Dkt. 1:8 ¶ 24.) These rules are found in SCRs 10.01(1), 10.03(1), 10.03(4)(a), and 10.03(5)(a). (Dkt. 1:4 ¶¶ 11–12.) File alleged that if he practices law in Wisconsin and fails to maintain State Bar membership and pay dues, "he could be sent to jail for a year and fined $500 or both for engaging in the unauthorized practice of law. Wis. Stat. § 757.30." (Dkt. 1:4 ¶ 13.)

The association of the State Bar allegedly "forces Mr. File to be associated with and support speech with which he may not agree." (Dkt. 1:8 ¶ 26.) The defendants' actions allegedly constitute a violation of File's rights "to not join or subsidize an organization without his affirmative consent." (Dkt. 1:9 ¶ 28.)

File alleged that the State Bar "does not serve as a formal regulatory system for legal ethics in Wisconsin." (Dkt. 1:5 ¶ 15.) Instead, he alleged the Board of Bar Examiners, OLR, Judicial Education Committee, and Judicial Commission serve various legal-ethics regulatory functions. (Dkt. 1:5 ¶ 15.)

His core complaint is that the State Bar's lobbying and other public-facing activities violate his First Amendment free speech and association rights. (Dkt. 1:5–7.) He alleged that the State Bar spent over $520,000 last legislative term lobbying the Wisconsin State Legislature and that the State Bar engages in legislative advocacy activities with Congress and through the American Bar Association. (Dkt. 1:5–6 ¶ 17.) The State Bar allegedly also "engages in a wide variety of ideologically charged activities that fall outside the formal confines of 'lobbying.'" (Dkt. 1:6 ¶ 18.)

File highlighted activities the State Bar allegedly engaged in: (1) naming as a 2018 "Legal Innovator" the founder of TransLaw Help Wisconsin, who also co-authored a book published by the State Bar in 2018 titled *Sexual Orientation, Gender Identity, and the Law* (Dkt. 1:6 ¶ 19); and (2) including as a speaker at its 2018 annual meeting Richard Painter, a vocal critic of President Donald Trump "who served in the White House of [President] George W. Bush but became a Democrat and was at the time of his speech a Democratic candidate for U.S. Senate." (Dkt. 1:6 ¶ 20.) These examples allegedly "illustrate the simple reality that virtually everything the State Bar does takes a position on the law and matters of public concern." (Dkt. 1:7 ¶ 21.)

File requested declaratory and injunctive relief against all Defendants. He requested: (1) a declaration that the SCRs requiring him to belong to the State Bar are unconstitutional; (2) an order enjoining the Justices from "enforcing

8

their rules requiring State Bar membership through the attorney disciplinary process"; (3) an order enjoining Kastner and Martin from enforcing the mandatory membership rule or charging mandatory dues to File; (4) attorney fees and costs; and (5) any further relief to which he is entitled. (Dkt. 1:9–10.)

## III.    Procedural history

File filed his complaint on July 25, 2019. (Dkt. 1.) The defendants responded by filing motions to dismiss and supporting memoranda of law. (Dkt. 14; 15; 19; 20.) File responded and also filed a motion to disqualify the district court judge, and the defendants filed replies. (Dkt. 23–25; 27; 29–30-1.)

On June 29, 2020, the district court entered a decision and order granting the defendants' motions to dismiss. (Dkt. 37.) The court reasoned that although the Supreme Court's decision in "*Janus* might in some respects support the argument that mandatory bar membership is unconstitutional, the Court did not in any way suggest that it was overruling *Keller*." (Dkt. 37:11.) The court "conclude[d] that the plaintiff's claim is foreclosed by *Keller*, which only the Supreme Court may overrule." (Dkt. 37:13.) The court entered judgment in the defendants' favor the same day, and it also denied File's disqualification motion. (Dkt. 36; 38.)

File filed a notice of appeal on July 28, 2020. (Dkt. 39.)

## SUMMARY OF THE ARGUMENT

The district court granted Rule 12(b)(6) motions, correctly holding that *Keller* is directly on point and forecloses File's First Amendment claims. This Court should affirm that judgment.

Wisconsin's mandatory bar has been upheld many times after *Keller*. In *Keller*, the Supreme Court held that a mandatory bar association is "justified by the State's interest in regulating the legal profession and improving the quality of legal services." 496 U.S. at 14. A mandatory bar association may "constitutionally fund activities germane to those goals out of the mandatory dues of all members." *Id.* "It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity." *Id.* "[T]he guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *Id.* (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)). This standard applies and, under it, Wisconsin's integrated bar passes muster.

*Janus* does not control. *Janus* was about labor-union "agency fees," not mandatory bar membership and dues for attorneys. If the Supreme Court intended to overrule *Keller* in *Janus*, it would have made such a significant holding clear, rather than doing so without even mentioning *Keller*. Indeed, in a recent case almost identical to this one, this Court summarily affirmed in

favor of the State Bar of Wisconsin, and the Supreme Court declined to take that case, supporting that *Keller* is still good law even after *Janus*. *See Jarchow v. State Bar of Wis.*, 140 S. Ct. 1720 (2020).

File argues several theories for why *Keller* does not control, but none is persuasive. He first argues that "exacting" or "strict" scrutiny applies to his First Amendment claims, but *Keller* and this Court's mandatory-bar precedents apply rational-basis review. Wisconsin's integrated bar passes rational-basis review because it is rationally related to the State's legitimate interest in improving the quality of legal services.

File also argues that *Harris v. Quinn*, 573 U.S. 616 (2014), limited the state interests in a mandatory bar association to a single interest: ethical regulation of attorneys. But he misreads *Harris*, which described two distinct government interests for a mandatory bar: "regulating the legal profession and improving the quality of legal services." *Id.* at 655 (quoting *Keller*, 496 U.S. at 14).

File also makes a series of arguments that *Janus* "implicitly overruled" *Keller*. He argues that the *Janus* Court eroded or undermined *Keller* when it overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), a case upon which the *Keller* Court relied. File is incorrect because *Janus* did not overrule—let alone *mention*—*Keller*, and it remains good law. No lower court reviewing a First Amendment challenge to a mandatory bar association has held that *Janus* overruled *Keller*, despite the fact that *Abood* is no longer good

11

law. For similar reasons, File's reliance upon the grant-vacate-and-remand order that the Supreme Court entered in *Fleck v. Wetch*, an Eighth Circuit case, is misplaced. That GVR was not an "invitation" for this Court to conclude that *Janus* overruled *Keller*. The Supreme Court has done no such thing.

File also unpersuasively argues that the State Bar of Wisconsin unlawfully engages in speech on "controversial" topics that he should not be required to "subsidize" with his bar dues after *Janus*. But *Janus* did not disturb the procedure that *Keller* endorsed for objectors to challenge dues expenditures that are not germane to the Bar's legitimate purposes. In summary, *Keller* bars File's claims, even after *Janus*.

In the alternative, File does not have Article III standing to sue the Justices. The Justices do not initiate attorney-disciplinary complaints against attorneys; another agency has that job in Wisconsin. Thus, their alleged conduct does not threaten File with any injury. Additionally, the Justices are immune from suit because their role is legislative, in that they promulgated the Wisconsin Supreme Court Rules governing attorneys that File is challenging in this case.

This Court should affirm the district court's judgment.

12

## ARGUMENT

File's entire case is premised on a legal conclusion that is simply wrong: that the Supreme Court has overruled *Keller* without saying so. It has not. This Court should affirm the district court's judgment dismissing File's complaint because *Keller* and related cases squarely foreclose his claims.

**I.  This challenge to Wisconsin's integrated bar, like many prior cases, fails because *Keller* and related cases foreclose File's claims, and *Janus* is inapposite.**

**A.  Applying de novo review, affirming dismissal is proper when File can plead no facts that would entitle him to relief.**

This Court reviews a district court's dismissal under Rule 12(b)(6) de novo, construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

Under Rule 12(b)(6), the defense of "failure to state a claim upon which relief can be granted" may be asserted by motion. When evaluating the sufficiency of a complaint under Rule 12(b)(6), a court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). "Legal conclusions [in a complaint] do not get the same benefit; those [a court] may disregard." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

13

"Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger*, 812 F.3d at 568 (citation omitted).

## B. Wisconsin's integrated bar has been upheld in many cases.

This Court has referred to the many challenges to Wisconsin's integrated bar as "the Wisconsin bar saga." *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 717 (7th Cir. 2010). This case is the latest "chapter." *Id.*

It is not necessary to describe in detail each prior challenge. The Bar's integrated structure has been consistently upheld by the U.S. Supreme Court, this Court, and the Wisconsin Supreme Court. *See Lathrop v. Donohue*, 367 U.S. 820 (1961); *Kingstad*, 622 F.3d at 712–13; *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996), *overruled in part by Kingstad*, 622 F.3d at 718; *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (7th Cir. 1993); *Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988); *State ex rel. Armstrong v. Bd. of Governors of State Bar*, 86 Wis. 2d 746, 273 N.W.2d 356 (Wis. 1979); *Lathrop v. Donohue*, 10 Wis. 2d 230, 102 N.W.2d 404 (Wis. 1960), *affirmed by Lathrop v. Donohue*, 367 U.S. 820 (1961); *In re Integration of the Bar*, 5 Wis. 2d 618, 93 N.W.2d 601 (Wis. 1958); *In the Matter of the Integration of the Bar*, 273 Wis. 281, 77 N.W.2d 602 (Wis. 1956); *In re Integration of the Bar*, 249 Wis. 523, 25 N.W.2d 500 (Wis. 1946); *Integration of Bar Case*, 244 Wis. 8, 11 N.W.2d 604 (Wis. 1943).

14

### C. *Keller* and related cases control, meaning File cannot prevail as a matter of law.

*Keller* and related cases foreclose File's First Amendment claims. In *Keller*, a unanimous Supreme Court upheld California's "integrated bar," described as "an association of attorneys in which membership and dues are required as a condition of practicing law in a State." 496 U.S. at 5. Members of the State Bar of California sued the Bar claiming that "use of their membership dues to finance certain ideological or political activities to which they were opposed violated their rights under the First Amendment." *Id.* at 4. The Supreme Court upheld mandatory bar membership and dues under the First Amendment but circumscribed what Bar activities may be financed by dues. *Id.* at 4, 14–15.

Specifically, the Supreme Court held that "lawyers admitted to practice in the State [of California] may be required to join and pay dues to the State Bar." *Id.* at 4. "[T]he compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services." *Id.* at 14. The Bar "may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members." *Id.* "It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity." *Id.* "[T]he guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the

quality of the legal service available to the people of the State.'" *Id.* (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)).

*Keller* built upon the Court's decision upholding Wisconsin's integrated bar in *Lathrop v. Donohue*, 367 U.S. 820 (1961). Writing for a plurality of four, Justice Brennan concluded Wisconsin's integrated bar did not infringe upon First Amendment association rights. *Id.* at 842–44. The plurality held that the State Bar served the legitimate ends of "elevating the educational and ethical standards of the Bar" and "improving the quality of the legal service available to the people of the State." *Id.* at 843. The fact that the State Bar "engages in some legislative activity" and collects mandatory dues did not, on its face, violate the First Amendment right of association. *Id.* The plurality declined to address the First Amendment free-speech claim presented, which was resolved in *Keller*. *See id.* at 844–48; *Keller*, 496 U.S. at 14–15.

After *Keller*, this Court addressed Wisconsin's Bar in *Kingstad v. State Bar of Wisconsin*. There, this Court held that "Wisconsin's mandatory State Bar is constitutional." *Kingstad*, 622 F.3d at 714. This Court held "that to withstand scrutiny under the First Amendment, State Bar expenditures funded by mandatory dues must be germane to the legitimate purposes of the State Bar," and that Wisconsin's bar association satisfied that requirement. *Id.* at 709.

Specifically, in *Kingstad*, the plaintiffs argued a 2007 State Bar "public image campaign" meant to "improv[e] the public's perception of Wisconsin

lawyers" was not a use of bar dues consistent with the First Amendment. *Id.* This Court disagreed and concluded the campaign was "germane to the Bar's constitutionally legitimate purpose of improving the quality of legal services available to the Wisconsin public." *Id.* at 721. This Court applied *Keller*, *Lathrop*, and *United States v. United Foods, Inc.*, 533 U.S. 405 (2001), which held that "Objecting members [are] not required to give speech subsidies for matters not germane to the larger regulatory purpose which justifie[s] the required association." *Kingstad*, 622 F.3d at 716 (alteration in original) (quoting *United Foods*, 533 U.S. at 413–14); *see id.* at 713–15 (applying *Keller* and *Lathrop*).

This holding overruled one of the alternative holdings of *Thiel*, a prior case that upheld Wisconsin's integrated bar in the face of a First Amendment challenge. *Id.* The court overruled *Thiel*'s alternative holding that "the First Amendment does not prohibit the Bar from funding non-ideological, non-germane activities with compelled dues." *Id.* at 717 (quoting *Thiel*, 94 F.3d at 405); *see id.* at 718. This holding "effectively f[ound]" the second sentence of then-existing SCR 10.03(5)(b)1. was "too narrow because it authorize[d] objections to the use of mandatory dues only for political and ideological activities that are not reasonably related to the constitutional purposes of regulating the legal profession and improving the quality of legal services." *Id.* at 718. In response, the Wisconsin Supreme Court amended that rule. *See In*

17

*the Matter of Petition to Amend Supreme Court Rule 10.03(5)(b)1*, No. 09-08A (Wis. Nov. 11, 2011), https://www.wicourts.gov/sc/rulhear/DisplayDocument. pdf?content=pdf&seqNo=73817.

In addition to *Kingstad* and *Thiel*, this Court upheld Wisconsin's integrated bar in the face of First Amendment challenges in *Crosetto*, 12 F.3d at 1404–05, and *Levine*, 864 F.2d at 458.

In short, *Keller* squarely forecloses File's claims. File is making the same First Amendment arguments the Supreme Court has rejected. *Keller*, 496 U.S. at 1, 4–5; *Lathrop*, 367 U.S. at 842–44 (plurality opinion); (*see* Dkt. 1:8–9). And this Court has repeatedly upheld Wisconsin's integrated bar, as described above. This Court should apply *Keller*, *Lathrop*, *Kingstad*, *Thiel*, *Crosetto*, and *Levine* and affirm the judgment dismissing the case.

### D.  *Janus* does not control and did not overrule *Keller*.

File ultimately does not, and cannot, take issue with what is summarized above. Rather, he relies on *Janus* having implicitly overruled *Keller*. However, *Janus* is not on point and did not overrule *Keller*. As only the Supreme Court can overrule *Keller*, File's claims fail as a matter of binding Supreme Court precedent.

In *Janus*, the Supreme Court considered whether requiring nonconsenting nonmembers of public-sector unions to pay an "agency fee"—a percentage of full union dues—violates the First Amendment. 138 S. Ct. at 2460.

Nonmembers had to pay the fee even if they "strongly object to the positions the union takes in collective bargaining and related activities." *Id.* The Court concluded that "[t]his arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.*

The Court overruled *Abood*'s rule that nonmembers of a public-sector union could be "charged for the portion of union dues attributable to activities that are 'germane to [the union's] duties as collective-bargaining representative,' but nonmembers may not be required to fund the union's political and ideological projects." *Id.* at 2460–61 (alteration in original) (quoting *Abood*, 431 U.S. at 235). *Abood* was "inconsistent with other First Amendment cases and has been undermined by more recent decisions." *Id.* at 2460.

In contrast, *Keller* addressed bar associations, not labor unions. *See Keller*, 496 U.S. at 9–17. And the *Janus* Court did not address *Keller* whatsoever, much less overrule it. *Janus*, 138 S. Ct. at 2459–86. To the contrary, Justice Kagan's dissent noted that the Court has relied upon *Abood* "when deciding cases involving compelled speech subsidies outside the labor sphere—*cases today's decision does not question. See*, *e.g., Keller v. State Bar of Cal.*, 496 U.S. 1, 9–17, 110 S. Ct. 2228, 110 L.Ed.2d 1 (1990) (state bar fees)." *Id.* at 2498 (Kagan, J. dissenting) (emphasis added). Justice Kagan noted the Court has "blessed the constitutionality of compelled speech subsidies in a variety of

cases beyond *Abood*, involving a variety of contexts beyond labor relations. The list includes mandatory fees imposed on state bar members (for professional expression) . . . See *Keller v. State Bar of Cal.*, 496 U.S. 1, 14, 110 S. Ct. 2228, 110 L.Ed.2d 1 (1990)." *Id.* at 2495 n.3 (Kagan, J., dissenting). The *Janus* Court did not respond to Justice Kagan's references to *Keller*, yet it responded to many of her other points. *See id.* at 2465, 2467 n.4, 2476, 2477 n.23, 2481 n.25, 2482 n.26, 2485 n.27, 2486 n.28.

That *Keller* remains good law is also confirmed by *Harris v. Quinn*, 573 U.S. 616 (2014), a predecessor to *Janus*. The *Harris* Court refused to extend *Abood* to cover union agency fees paid by certain "personal assistants" who provide homecare services to Illinois Medicaid recipients. *See id.* at 620, 645–46. Refusing to extend *Abood* to cover those public employees did not "call into question" *Keller*. *Id.* at 655. "[*Keller*] fits comfortably within the framework applied in [*Harris*]." *Id.* The Court distinguished *Keller* from its public-sector agency-fee cases based on the "State's interest in regulating the legal profession and improving the quality of legal services" and "allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices." *Id.* at 655–56 (citation omitted). Justice Kagan's dissent in *Harris* notes that the Court "reaffirm[ed] as good law" several decisions, including *Keller*. *Id.* at 670 (Kagan, J., dissenting).

*Janus* did not overrule *Keller*, and the agency-fee issue it addressed is distinct from the integrated-bar and mandatory-bar-dues issues here. *Keller* remains valid and binding on all lower courts, despite the fact *Janus* overruled *Abood*. In any event, as this Court recently reiterated, "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case [that] directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019) (second alteration in original) (quoting *Agostini v. Felton*, 521 U.S. 203, 237–38 (1997)). *Keller* and the related cases require the dismissal of File's claims.

Finally, the fact that the Supreme Court has not overruled *Keller* is confirmed by more recent statements from additional Justices. Specifically, this Court recently summarily affirmed the dismissal of a nearly identical claim in *Adam Jarchow v. State Bar of Wisconsin*, No. 19-3444 (7th Cir.). (Dkt. 28-1.) After the district court dismissed Jarchow's First Amendment challenge to Wisconsin's integrated bar, he filed a motion in this Court for summary affirmance. (Dkt. 28-1.) Jarchow then filed a petition for a certiorari, which was denied over a dissent on June 1, 2020. *Jarchow*, 140 S. Ct. at 1720.

In dissenting from the denial of certiorari, Justice Thomas, joined by Justice Gorsuch, stated that "[s]hort of a constitutional amendment, only we can rectify our own erroneous constitutional decisions. We have admitted that *Abood* was erroneous, and *Abood* provided the foundation for *Keller*. In light of these developments, *we should reexamine* whether *Keller* is sound precedent." *Id.* at 1721 (emphasis added).

Justice Thomas's dissent exemplifies that *Keller* has not been overruled. And if File's aim is to see *Keller* overruled, he cannot achieve that goal in this Court. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents.").

## II.    File's counterarguments are unpersuasive.

File's arguments against applying *Keller* are unpersuasive. He argues for heightened constitutional scrutiny, which is inconsistent with *Keller*'s rational-basis inquiry. He misconstrues *Harris* and *Janus*, which do not limit the government's legitimate interest in improving the quality of legal services that a mandatory bar furthers. His reliance upon the *Fleck* GVR is misplaced, and he does not present convincing arguments why *Janus* "implicitly overruled" *Keller*. File provides no basis for reversal.

### A.    File's arguments regarding the level of First Amendment scrutiny are misplaced.

File first addresses the level of First Amendment scrutiny. His heightened-scrutiny argument is inconsistent with *Keller*'s rational-basis review and so is unavailable here.

File argues that mandatory bar-association membership and dues "can only persist if justified by a compelling interest and only if achieved by the least restrictive means (termed exacting scrutiny often, but elements of a test describe elsewhere as strict scrutiny)." (File's Br. 6–7.) He acknowledges that *Keller* and *Lathrop* applied "something approximating rational-basis scrutiny." (*Id.* at 7.) Nonetheless, he argues that *Janus*, *Harris*, and *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298 (2012), and other Supreme Court decisions, applied "exacting" or "strict" scrutiny to First Amendment claims. (File's Br. 9.) As for his claims, he states that "an association that executes on a state's compelling interest must be narrowly tailored to that purpose" and that the State Bar of Wisconsin "unlike the bar in other states, fails that test because it performs no formal regulatory functions—it is purely a trade association or guild for lawyers" that "cannot survive exacting scrutiny." (*Id.* at 8.)

File is wrong for two independent reasons.

23

First, the overriding issue in this case is whether the district court correctly held that *Keller* forecloses File's claims. The district court's decision did not apply rational-basis, exacting, or strict scrutiny in analyzing the merits; it simply held that *Keller* forecloses File's claims. (Dkt. 37:8–13.) Under that analysis, the level of constitutional scrutiny is not the question. The question is whether *Keller* is on all fours with File's claims, which it is.

Second, exacting scrutiny is not the legal standard under *Keller*, which quoted *Lathrop* for the proposition that Wisconsin "might reasonably believe" that the activities of its integrated bar association "elevat[ed] the educational and ethical standards of the Bar to the end of improving the quality of legal service to the people of the State," which is a "legitimate end of state policy." *Keller*, 496 U.S. at 8 (quoting *Lathrop*, 367 U.S. at 843).

The standard under *Keller* is rational basis, and the State Bar of Wisconsin meets that standard for the reasons explained in *Lathrop*, *Keller*, *Kingstad*, *Thiel*, *Crosetto*, and *Levine*. This Court summed it up in *Kingstad*: "Wisconsin's mandatory State Bar is constitutional, and the Objectors may be compelled to pay their share of direct and indirect expenses that are reasonably incurred by the State Bar to serve its dual constitutional purposes of regulating the legal profession and improving the quality of legal services." 622 F.3d at 714. Since File's "is a facial attack on the State Bar as currently constituted" (Dkt. 24:4), his claims fail under controlling precedent.

**B.    Neither *Harris* nor *Janus* overruled or limited the State's interests recognized as sufficient in *Keller*.**

    **1.    *Harris* did not limit the State's interests in a mandatory bar association to only the regulation of legal ethics.**

Relying upon *Harris*, File incorrectly argues that the Supreme Court has limited the State's interests that could support a mandatory bar association and compulsory bar dues to regulating legal ethics. (File's Br. 7, 10–14.)

As File acknowledges, the *Keller* Court found two legitimate state interests in a mandatory bar: "regulating the legal profession and improving the quality of legal services." (*Id.* at 12 (quoting *Keller*, 496 U.S. at 13); *see also id.* at 7 (acknowledging that the Supreme Court took "an admittedly broader view of the government's interests in a mandatory bar" in *Keller* and *Lathrop*).)

However, having acknowledged that, File then incorrectly argues that "*Harris* narrowed *Keller* by focusing its characterization of the mandatory bar as the formal regulatory system for lawyers." (*Id.* at 12.) He argues that "[o]ver time, the Supreme Court has narrowed its reading of how a mandatory bar may spend its compulsory dues funds." (File's Br. 10.) Specifically, he argues that the state interest in a mandatory bar is limited to a single interest— regulating the legal profession—because *Harris* "gave *Keller* an even narrower reading, reiterating twice that the state's compelling interest in a mandatory bar is the formal regulatory system for legal ethics." (*Id.*) According to File,

"the only possible state interest sufficiently compelling to justify requiring mandatory bar association membership is the regulation of lawyers' ethical conduct." (*Id.* at 11; *see also id.* at 12.)

While File correctly observes that the State Bar of Wisconsin is not the formal ethics regulatory system for attorneys (*see id.* at 13–14), he misreads *Harris*. The only way to reach File's conclusion about *Harris* narrowing the State's interests is to completely ignore language in *Harris* that reiterated *Keller*'s holding that there are *two* sufficient state interests for a mandatory bar:

> [The *Keller* decision] fits comfortably within the framework applied in the present case. Licensed attorneys are subject to detailed ethics rules, and the bar rule requiring the payment of dues was part of this regulatory scheme. The portion of the rule that we upheld *served the "State's interest in regulating the legal profession and improving the quality of legal services." Ibid.* States also have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices. Thus, our decision in this case is wholly consistent with our holding in *Keller*.

573 U.S. at 655–56 (emphasis added). Thus, instead of narrowing *Keller*, the *Harris* Court reaffirmed the two legally sufficient bases for a mandatory bar: regulating the legal profession and improving the quality of legal services. Consistent with that, Justice Kagan's *Harris* dissent notes that the Court "reaffirm[ed] as good law" several decisions, including *Keller*. *Id.* at 670 (Kagan, J., dissenting).

File similarly argues that "*Harris*, especially when read together with *Janus*, offers a clear, bright line that courts can easily apply to a state bar's activities: does it function as the state's formal regulatory process for lawyers?" (File's Br. 13.) Because the Bar "is not the formal ethics regularly system for the state," File argues that it "fails to meet the standard set by *Harris*." (*Id.*)

While it is true that the State Bar of Wisconsin does not "admit, investigate, and discipline attorneys" (*id.* at 14), and that Wisconsin "has separate agencies for all of that" (*id.*), those facts are beside the point. *Harris*, regardless of whether it is "read together" with *Janus*, simply did not hold as File argues, namely, that only a mandatory bar association that functions as a state's formal regulatory process for lawyers passes First Amendment scrutiny. (*See id.* at 13–14.) Wisconsin has a valid and independently sufficient interest in "improving the quality of legal services," *Keller*, 496 U.S. at 13, even after *Harris*.

Beyond that, and as already discussed, the *Janus* Court did not mention *Keller*, let alone overrule it. *Janus*, 138 S. Ct. at 2459–86. It is simply implausible, and legally insufficient, to assume the Court chose to implicitly overrule *Keller* without even a citation to it. (*See* File's Br. 24–27.) The fallibility of that view is plain given the impact such a holding would have. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) (The Court "does not normally overturn, or so dramatically limit, earlier authority

*sub silentio*."); *Price*, 915 F.3d at 1118 (explaining that even where subsequent decisions arguably "have deeply shaken [a Supreme Court case's] foundation," the case retains "controlling force"). And Justice Kagan's dissent recognizes that the *Janus* majority was not disturbing *Keller*, with no rejoinder from the majority. *See id.* at 2498, 2495 n.3 (Kagan, J., dissenting).

The bottom line is that *Harris* did not narrow or limit the State's legitimate interest in a mandatory bar association and compulsory bar dues, as File argues. In other words, Wisconsin still has a legally sufficient interest in "improving the quality of legal services," which is fostered by a mandatory bar and dues. *Keller*, 496 U.S. at 13; *Kingstad*, 622 F.3d at 714.

Finally, because of his misreading of *Harris*, File has not argued in his brief that a mandatory bar association is not rationally related to the State's legitimate interest in improving the quality of legal services. He has thus forfeited any argument that this specific state interest is insufficient to justify a mandatory bar. *See United States v. Feinberg*, 89 F.3d 333, 340 (7th Cir. 1996) ("Any issues or arguments of which the appellate may wish to avail himself are forfeited unless proffered in the appellate brief.").

## 2.     *Janus* did not "implicitly overrule" *Keller.*

Contrary to File's arguments based upon *Levine*, *Janus* did not "implicitly overrule" *Keller*. (*See* File's Br. 24–30.) And the district court did not err when it relied upon *Price*, a case that highlights why this Court is bound by *Keller*.

### a. The *Levine* analysis does not show that *Keller* was "implicitly overruled."

File argues that this Court "should conclude that *Janus* implicitly overruled much of *Keller* using the principles in *Levine*." (File's Br. 7; *see also id.* at 24–27.) He is wrong because the *Levine* analysis does not show that *Keller* has been implicitly overruled.

In *Levine*, this Court explained that the Supreme Court "does not have to explicitly state that it is overruling a prior precedent in order to do so." 864 F.2d at 461. "[I]f later Supreme Court decisions indicate to a high degree of probability that the Court would repudiate the prior ruling if given the opportunity, a lower court need not adhere to the precedent." *Id.* But out of "respect for the great doctrine of *stare decisis*," lower courts are "ordinarily reluctant to conclude that a higher court precedent has been overruled by implication." *Id.*

This Court described three "circumstances" to determine whether a Supreme Court precedent has been implicitly overruled: (1) whether a "Supreme Court justice has ever questioned the validity of" the precedent; (2) whether lower courts have "followed" the precedent; and (3) whether the later-in-time decision that arguably implicitly overrules the Supreme Court precedent is in an "identical area of the law." *Id.*

Considering these factors, *Janus* did not implicitly overrule *Keller*.

First, no Supreme Court Justice has questioned *Keller*'s validity. *See id.* As argued above, the *Janus* Court did not mention *Keller*, and the *Harris* Court expressly reaffirmed *Keller*. Notwithstanding some Justices' ruminations at oral arguments and Justice Alito's reference to the *Lathrop* dissent (*see* File's Br. 25), no Justice has taken a written position that undermines *Keller* as precedent. To the contrary, while Justices Thomas and Gorsuch apparently think that *Keller* should be reexamined, they did not question whether it is still valid but rather noted that "*we should reexamine* whether *Keller* is sound precedent." *Jarchow,* 140 S. Ct. at 1721 (Thomas, J., dissenting) (emphasis added). The remainder of the Court declined to do so.

Second, File concedes that "no lower courts have abandoned *Keller* yet." (File's Br. 26); *see Keller*, 864 F.2d at 461. There are numerous examples of lower courts faithfully applying *Keller*. That includes the Eighth Circuit rejecting First Amendment challenges to the State Bar of North Dakota's mandatory membership and dues requirements in *Fleck*. 937 F.3d at 1117–19.

District courts have reached the same conclusion, namely, that *Janus* did not disturb the holdings of *Lathrop* and *Keller* as to the constitutionality of integrated bars. *See Boudreaux v. La. State Bar Ass'n*, 433 F. Supp. 3d 942, 976–77 (E.D. La. 2020), *appeal docketed*, No. 20-30086 (5th Cir. Feb. 11, 2020); *McDonald v. Sorrels*, No. 19-CV-219-LY, 2020 WL 3261061, at *5 (W.D. Tex. May 29, 2020), *appeal docketed*, No. 20-50448 (5th Cir. June 4, 2020); *Gruber*

*v. Or. State Bar*, No. 18-CV-1591-JR, 2019 WL 2251826, at *9 (D. Or. April 1, 2019), *report and recommendation adopted in Gruber v. Or. State Bar*, No. 18-CV-1591-JR, 2019 WL 2251282 (D. Or. May 24, 2019), *appeals docketed*, Nos. 19-35463 (9th Cir. May 29, 2019), 19-35470 (9th Cir. May 31, 2019); *Schell v. Gurich*, 409 F. Supp. 3d 1290, 1298–99 (W.D. Okla. 2019), *appeal docketed*, No. 20-6044 (10th Cir. April 2, 2020).

Third, *Janus* and *Harris* are not "later Supreme Court decision[s] in the identical area of the law." *Levine*, 864 F.2d at 461. They involved the constitutionality of public-sector union agency fees. While there may be some doctrinal overlap between that issue and the constitutionality of a mandatory bar, the "area of the law" is not "identical." *Id.* If it were, there would have been no reason for the Court to reaffirm *Keller*'s validity in *Harris*—the Court would have instead explained why *Keller* was being overruled. *See Harris*, 573 U.S. at 655–56. Likewise, the *Janus* Court said nothing of *Keller*.

Finally, File recognizes that if this Court does not agree with his alternative argument that *Janus* implicitly overruled *Keller*, he "belie[ves] that *Keller* should be partially overruled" and that "this form of relief can only come from the U.S. Supreme Court." (File's Br. 27 n.27); *see State Oil Co.*, 522 U.S. at 20. That is correct as to his entire argument—his proposals are misdirected here.

**b.     The district court appropriately relied upon**
        ***Price.***

File also argues that the district court erred when it relied upon *Price* to conclude that it was bound by *Keller*. (*See* File's Br. 27–30; Dkt. 37:9–10.) He argues that his "case presents a different scenario than *Price*, because [unlike in *Price*] the Supreme Court *did* overrule a case." (File's Br. 28.) However, File concedes that the Supreme Court "did not overrule *Keller*" but argues something more tangential: that "it overruled *Abood*, on which *Keller* is based." (*Id.*) He argues that "*Abood* is much more than a cinderblock upholding *Keller*—it is its very foundation," and he notes that Justices Thomas and Kagan have made observations about *Keller*'s vitality. (*Id.* at 29, 30.)

To the contrary, *Price* further illustrates why *Keller* controls the outcome. The doctrinal situation in *Price* is comparable to the one presented in this case.

The key is that *Keller* has not been overruled. (*Id.* at 28 ("True, [the Supreme Court] did not overrule *Keller*.").) File's "thought experiments" regarding what this Court might do if a particular Supreme Court precedent that supports a subsequent Supreme Court precedent is later overruled are irrelevant. (*See id.* at 28–29 (addressing the hypothetical overruling of *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), and *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)).) That is not the

situation here, and this Court should not engage in speculative daydreaming about what the Supreme Court might do in the future.

In *Price*, this Court reviewed a claim challenging the constitutionality of Chicago's "bubble zone" ordinance, which barred pro-life "sidewalk counselors" "from approaching within eight feet of a person in the vicinity of an abortion clinic if their purpose is to engage in counseling, education, leafletting, handbilling, or protest." 915 F.3d at 1109. The district court dismissed the claim by applying *Hill v. Colorado*, 530 U.S. 703 (2000), "which upheld a nearly identical Colorado law against a similar First Amendment challenge." *Id.* This Court found that "*Hill*'s content-neutrality holding is hard to reconcile with both *McMullen* [*v. Coakley*, 573 U.S. 464 (2014)] and *Reed v. Town of Gilbert*, --- U.S. ----, 135 S. Ct. 2218, 192 L.Ed.2d 236 (2015), and its narrow-tailoring is in tension with *McMullen*." But that doctrinal situation did not result in reversal of the district court because, "[s]till, neither *McMullen* nor *Reed* overruled *Hill*, so it remains binding on us." *Id.*

The same is true here because the Supreme Court "did not overrule *Keller*." (File's Br. 28.) While File may believe there is tension between *Janus* and *Keller* due to *Janus*'s overruling *Abood*, the Supreme Court simply did not overrule *Keller*. *See Price*, 915 F.3d at 1109. Thus, *Keller* "remains on the books and directly controls here." *Id.* at 1119. In other words, the fact that *Janus* overruled *Abood* while saying nothing about *Keller* does not undermine *Keller*'s

33

viability as precedent. *Keller* is binding, just as this Court found *Hill* was binding in *Price*. *Id.* at 1109, 1119.

Thus, File does not meaningfully distinguish *Price* or undermine the district court's reliance upon it.

### c.     The *Fleck* GVR does not give this Court "permission" to revisit *Keller.*

Relatedly, File argues that "the Supreme Court's GVR in *Fleck v. Wetch* gives this Court permission to revisit *Keller* in light of *Janus*." (File's Br. 22; *see also id.* at 7.) He argues that the *Fleck* GVR should be taken "as 'a clear statement from the Supreme Court that the [*Janus*] decision does apply to this situation.'" (*Id.* at 23 (citation omitted).)

The *Fleck* GVR provides no basis to conclude that *Janus* overruled *Keller*, as the Eighth Circuit's decision on remand confirms for two reasons. First, the GVR did nothing more than require the Eighth Circuit to consider its decision further in light of *Janus*. *See Fleck v. Wetch*, 139 S. Ct. 590, 590 (2018). There is no statement in the GVR that *Janus* even applies to the mandatory-bar issue. It does not apply because *Keller* has not been overruled and still controls.

Second, on remand the Eighth Circuit concluded that the record was "inadequate" to take up Fleck's First Amendment mandatory-association claim because he forfeited the issue in the district court and on appeal. *Fleck v. Wetch*, 937 F.3d 1112, 1117 (8th Cir. 2019), *cert. denied* 140 S. Ct. 1294 (2020),

*pet. for rehearing denied* 2020 WL 2105677 (U.S. May 4, 2020). Nonetheless, in affirming dismissal of Fleck's "opt-out procedure" claim, the Eighth Circuit correctly held that "*Janus* did not overrule *Keller*." *Fleck*, 937 F.3d at 1118. Accordingly, neither the GVR nor the decision on remand in *Fleck* supports File's theory that *Janus* overruled *Keller*.

### C. File's arguments regarding the State Bar of Wisconsin speaking on "issues of great public concern," the *Keller* dues-deduction calculation, and the "opt-out framework" are unpersuasive.

File argues that "[t]he State Bar coerces support and subsidy for speech on issues of great public concern in violation of the core holdings of *Janus*." (File's Br. 15.) He argues that, even if there is a compelling interest for a mandatory bar, "the State Bar's activities are not narrowly tailored to serve that compelling interest because they encompass a wide range of controversial speech on issues of public concern." (*Id.*) Relying upon some factual material that is not in his complaint, File describes examples of the State Bar speaking on "controversial" topics of public concern, such as "climate change, sexual orientation and gender identity, and minority religions, among many others." (*Id.* at 19; *see also id.* 17–20 (discussing some unpled examples of the State Bar's speech).) He objects to this speech because "Defendants' policies and practices force [him] to associate with and subsidize all of it against his will." (*Id.* at 21.) These assertions are off point for multiple reasons.

First, "[c]ourts are restricted to an analysis of the complaint when evaluating a motion to dismiss." *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("consideration of a motion to dismiss is limited to the pleadings."). And "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985). This Court should disregard the factual material File relies upon that is not in his complaint.

Second, the State Bar of Wisconsin engages in speech on a variety of topics, some of which might be viewed as controversial. But *Keller* offers a solution for those who object to speech that is not germane to the Bar's legitimate purposes, as this Court explained in *Kingstad*: the fees used for lobbying and other political activities are segregated, and bar members can request a deduction in dues for speech that is not germane to the Bar's legitimate purposes. *See Kingstad*, 622 F.3d at 710 (describing how then-existing SCR 10.03(5)(b)2. functioned). In other words, they can "opt out" of paying dues for such speech. *See id.*

Notably, File does not ask this Court to overrule *Kingstad*. Adopting File's position regarding the State Bar's "controversial" speech would require this Court to repudiate *Kingstad*, which held "that to withstand scrutiny under the

First Amendment, State Bar expenditures funded by mandatory dues must be germane to the legitimate purpose of the State Bar." 622 F.3d at 709. This Court determined "that the State Bar [of Wisconsin] may use the mandatory dues of objecting members to fund only those activities that are reasonably related to the State Bar's dual purposes of regulating the profession and improving the quality of legal services, whether or not those same expenditures are also non-ideological and non-political." 622 F.3d at 718.

Nonetheless, File argues that the "*Keller/Hudson* dues deduction calculation" and the "*Keller* dues-deduction opt-out framework" are both "condemned" by *Janus*. (File's Br. 21, 22.)

Not true. While the *Janus* Court rejected the notice procedure to challenge a union's agency fees, *see* 138 S. Ct. at 2482–83, the Court said nothing about the similar procedures endorsed in *Keller*, dues-deduction calculations for a mandatory bar, nor the *Keller* dues-deduction opt-out framework. *Janus* simply does not address these topics in the context of *Keller* and mandatory bar dues, so it is incorrect to say that the *Janus* Court "condemned" those procedures in the mandatory-bar context. (File's Br. 21, 22); *see Fleck*, 937 F.3d at 1117–18 (summarizing various differences between the *Janus* context and the mandatory-bar context). The practice of "opting out" of paying for State Bar speech that is not germane to the Bar's legitimate purpose of improving the quality of legal services is alive and well after *Janus*.

### III.  In the alternative, File lacks Article III standing to assert his claims against the Justices; further, the Justices are immune from suit.

Even if this case were not squarely foreclosed by *Keller*, the claims against the Justices still be would subject to dismissal because File lacks standing to sue the Justices, and the Justices enjoy immunity.

### A.  File lacks Article III standing.

The Justices do not threaten File with a redressable injury. OLR, not the Justices, has discretion to decide whether to pursue a violation of the SCRs, including the rules File challenged: SCRs 10.01(1), 10.03(1), 10.03(4)(a), and 10.03(5). *See* SCR 21.02(1) ("Discretion permits the office to prioritize resources on matters where there is harm and to complete them more promptly.").

Under Federal Rule of Civil Procedure 12(b)(1), the defense of "lack of subject-matter jurisdiction" may be asserted by motion. Article III of the Constitution limits a federal court's authority to the resolution of "Cases" or "Controversies." U.S. Const. art. III, § 2. "The elements of standing are well settled: the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.*

"If a complaint fails to include enough allegations to support Article III standing for the plaintiffs, the court has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019).

Here, OLR's pursuit of a disciplinary proceeding is entirely hypothetical, but even in the hypothetical scenario, the Justices would not initiate such proceedings. They accordingly do not cause File to suffer an actual injury that this Court can redress. *See Casillas*, 926 F.3d at 333; Fed. R. Civ. P. 12(b)(1).

That is consistent with this Court's affirmance of a dismissal of the Justices in a previous challenge to Wisconsin's mandatory bar. *Crosetto*, 12 F.3d at 1403. In *Crosetto*, the plaintiffs argued "that because the Justices might someday enforce the Bar's rules, Plaintiffs ha[d] a ripe claim [against them]." *Id.* This Court disagreed that the plaintiffs' request for injunctive relief against the Justices presented an Article III case or controversy—the case was unripe because the plaintiffs could not demonstrate a real threat of harm resulting from noncompliance with the mandatory-dues requirement. *Id.*

Likewise, here File identifies no redressable injury attributable to the Justices. Their alleged involvement in a hypothetical action by OLR for a potential SCR violation File might commit is too attenuated and speculative to confer standing to sue.

It is true that, since *Crosetto*, this Court has considered Article III standing in "pre-enforcement" First Amendment challenges, which can satisfy Article III in certain circumstances. *See Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 147 (7th Cir. 2011); *see also Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013); *Bauer v. Shepard,* 620 F.3d 704, 708 (7th Cir. 2010) (the "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper [under Article III], because a probability of future injury counts as 'injury' for purposes of standing."). But File's case against the Justices is not a pre-enforcement challenge like those permitted in *Barland*, *Korte*, or *Bauer*. The Justices do not initiate enforcement of the SCRs. The Justices' "enforcement"—if it ever happens—must be triggered by *the OLR's* independent actions of investigation and pursuing a disciplinary proceeding by filing a complaint.

### B.    The Justices are immune from suit.

For similar reasons, where, as here, the Justices do not initiate disciplinary actions, immunity would apply. The U.S. Supreme Court has explained that, when acting purely in its rulemaking capacity in "the issuance of, or failure to amend, the challenged [attorney disciplinary] rules," a state supreme court and its members "are immune from suit." *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980). That immunity applies here because the Justices are being sued in that rulemaking capacity. (Dkt. 1:3 ¶ 8

40

("Defendants Chief Justice Patience Roggensack and the justices of the Wisconsin Supreme Court are responsible for promulgating the Supreme Court Rules (SCR).").)

The exception to that immunity rule is for courts that initiate claims, acting like prosecutors. But the exception is inapplicable here. Specifically, as the U.S. Supreme Court has stated, a court that "shares direct enforcement authority with the State Bar and hence is subject to prospective judgments just as other enforcement officials are," where the courts have the power to *initiate* the proceeding. *Supreme Court of Va.*, 446 U.S. at 730; *see also id.* at 736 (noting that the "Virginia Court [had] independent authority of its own to initiate proceedings against attorneys"). Consistent with that, this Court has discussed that prospective claims are allowed where a supreme court has authority to "*initiate* disciplinary proceedings." *Reeder v. Madigan*, 780 F.3d 799, 805 (7th Cir. 2015) (emphasis added) (discussing *Supreme Court of Va.*).

However, that exception to immunity does not apply to Wisconsin's Justices. They do not initiate actions, like prosecutors, but rather OLR exercises that discretion and authority. SCR 21.01(2); SCR 22.11(1). Accordingly, the Justices retain their immunity.

Thus, in addition to failing on the merits under *Keller*, File's claims against the Justices would properly be dismissed for lack of standing and due to the Justices' immunity.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated this 6th day of November 2020.

<div style="margin-left:40%">

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Clayton P. Kawski
CLAYTON P. KAWSKI*
Assistant Attorney General
WI State Bar #1066228

S. MICHAEL MURPHY
Assistant Attorney General
WI State Bar #1078149

Attorneys for Defendants-Appellees
Chief Justice Patience D. Roggensack,
and Justices Ann Walsh Bradley,
Annette Kingsland Ziegler, Rebecca
Grassl Bradley, Rebecca Frank Dallet,
Brian Hagedorn, and Jill J. Karofsky

</div>

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8549 (Kawski)
(608) 266-5457 (Murphy)
(608) 294-2907 (Fax)
kawskicp@doj.state.wi.us
murphysm@doj.state.wi.us

*Counsel of Record

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c), typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 9703 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13-point Century Schoolbook.

Dated this 6th day of November 2020.

s/ Clayton P. Kawski
CLAYTON P. KAWSKI
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on November 6, 2020, I electronically filed the foregoing *Brief of Defendants-Appellees Chief Justice Patience D. Roggensack, and Justices Ann Walsh Bradley, Annette Kingsland Ziegler, Rebecca Grassl Bradley, Rebecca Frank Dallet, Brian Hagedorn, and Jill J. Karofsky* with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 6th day of November 2020.

s/ Clayton P. Kawski
CLAYTON P. KAWSKI
Assistant Attorney General