Case: 20-2387     Document: 28     Filed: 11/30/2020     Pages: 20

No. 20–2387

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

SCHUYLER FILE,

Plaintiff-Appellant,

v.

KATHLEEN BROST, in her official capacity as President of the State Bar of Wisconsin, LARRY MARTIN, in his official capacity as Director of the State Bar of Wisconsin, and Chief Justice PATIENCE ROGGENSACK and Justices ANN WALSH BRADLEY, ANNETTE ZIEGLER, REBECCA BRADLEY, REBECCA DALLET, BRIAN HAGEDORN, and JILL KAROFSKY in their official capacities as members of the Wisconsin Supreme Court,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:19-cv-01063-LA
Honorable Lynn Adelman

## APPELLANT'S REPLY BRIEF

Daniel R. Suhr
   *Counsel of Record*
Jeffrey M. Schwab
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
dsuhr@libertyjusticecenter.org

*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 1

    I.    *Keller* still cannot be reconciled with *Janus*. ........................................ 1

    II.   *Keller* has been overruled by *Janus*. ..................................................... 6

    III.  Plaintiff has standing, and the justices are not immune from suit. ................................................................................. 8

        A. Plaintiff has Article III standing. ..................................................... 8

        B. The justices are not immune from this suit. ................................... 12

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) .................................................. 2
*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ........................................................ 11
*Adkins v. VIM Recycling, Inc.*, 644 F.3d 483 (7th Cir. 2011) ..................................... 2
*Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (7th Cir. 1993) ................................ 11, 12
*Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) ................... 11
*Fleck v. Wetch*, 937 F.3d 1112 (8th Cir. 2019) ........................................................ 7, 8
*GE Betz, Inc. v. Zee Co.*, 718 F.3d 615 (7th Cir. 2013) ......................................... 3, 4, 5
*Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997) ............................... 4
*Harris v. Quinn*, 573 U.S. 616 (2014) ......................................................................... 2
*In re Amoun Vang Sayaovong*, 2015 WI 100 ........................................................... 12
*In re Burton*, 2019 WI 30 .......................................................................................... 12
*In re Capistrant*, 2015 WI 88 .................................................................................... 12
*In re Eichhorn-Hicks*, 2019 WI 91 ............................................................................ 12
*In re Fischer*, 2019 WI 36 ......................................................................................... 12
*In re FitzGerald*, 2007 WI 111 .................................................................................. 12
*In re Grass*, 2019 WI 35 ............................................................................................ 12
*In re Netzer*, 2014 WI 7 ............................................................................................. 10
*In re Perez*, 2019 WI 99 ............................................................................................ 12
*In re Rajek*, 2017 WI 85 ............................................................................................ 10
*In re White*, 2019 WI 95 ............................................................................................ 12
*Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) .................................... 2, 4, 5, 6
*Keller v. State Bar of Cal.*, 496 U.S. 1 (1990) ..................................................... 1, 3, 4
*Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) ......................................................... 2
*Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141 (2d Cir. 2012) ............................ 7
*LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005) ........................................................ 13
*Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988) ..................................................... 7
*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011) ........................................... 8
*Reeder v. Madigan,* 780 F.3d 799 (7th Cir. 2015) .................................................... 14
*Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005) ................................................ 11
*State ex rel. Moran v. Dep't of Admin.*, 103 Wis. 2d 311 (1981) .............................. 13
*Supreme Court of Va. v. Consumers Union of U.S.*, 446 U.S. 719 (1980) ............ 13, 14
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ..................................... 9, 13

**State Constitutional Provisions**

Wis. Const. Art. VII, Sec. 3 ........................................................................................ 13

**Rules**

S. Ct. R. 10.03 .............................................................................................................. 9
S. Ct. R. 21.02 ............................................................................................................ 10
S. Ct. R. 21.09 ............................................................................................................ 11
S. Ct. R. 21.13 ............................................................................................................ 10
S. Ct. R. 21.16 ......................................................................................................... 9, 14
S. Ct. R. Ch. 10 Appx., Art. I, Sec. 3 .......................................................................... 10

**INTRODUCTION**

The paradox of this case is that Plaintiff and his counsel are helping pay the bills for the other side. Unless the Bar Defendants' attorneys are doing this case *pro bono*, they are charging the State Bar to defend the rules it administers making membership mandatory. Those fees are paid out of the Bar's budget, and would not fall in the traditional categories covered by *Keller v. State Bar of Cal.,* 496 U.S. 1 (1990), so they are being paid for, in some small part, by Plaintiff and his attorney.

Whether or not state bar membership should be coerced is just the sort of highly ideological, controversial question that the Supreme Court said was a problem in *Janus*. And Plaintiff is partially footing the bill for the lawyers seeking to keep him trapped associating with and subsidizing an organization with which he frequently and fervently disagrees. The irony proves Plaintiff's point: his rights against compelled speech and compelled subsidy are being violated by this the Defendants.

**ARGUMENT**

**I.    *Keller* still cannot be reconciled with *Janus*.**

Neither set of Defendants in their briefs set out in a serious way to distinguish *Keller* and *Janus*. In fact, the State Defendants admit their incompatibility in one major respect, acknowledging that *Keller* used a "rational basis" test and asserting that the State Bar meets that standard. State Def. Br. at 24. In fact, the standard of review just highlights how *Keller* is a substantial outlier compared to current Supreme Court doctrine on compelled speech and association, which clearly mandates *at least* exacting scrutiny for such claims. *Janus v. AFSCME, Council 31*, 138 S. Ct.

2448, 2483 (2018); *Harris v. Quinn*, 573 U.S. 616, 651 (2014); *Knox v. SEIU, Local 1000*, 567 U.S. 298, 299 (2012). In fact, one of the reasons *Janus* gives for overturning *Abood* is that *Abood* was "an anomaly in our First Amendment jurisprudence" precisely *because* it used less than exacting scrutiny to decide a question of compelled speech. *Janus*, 138 S. Ct. at 2483 (*citing Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 259-60 & n.14 (1977) (Powell, J., dissenting)). *Keller's* use of rational basis undermines the Defendants' case, rather than boosts it.

Neither the State Defendants nor the Bar Defendants question Plaintiff's assertion in his complaint that the State Bar engages in highly ideological, non-lobbying activity using compelled, non-deductible dues money. *See* Compl. ¶¶ 18-21. The State Defendants complain that not all of the examples provided in the Plaintiff's opening brief were contained in the original complaint, but courts may appropriately "take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011) (*citing General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997)). Certainly all of the items mentioned are in the public record: they are books, magazine articles, and web posts from the State Bar itself. Appellant's Principal Br. at 17-19. Regardless, these examples just add to those instances mentioned in the Complaint in support of its fundamental contention: "virtually everything the State Bar does takes a position on the law and matters of public concern." Compl. ¶ 21. At this pleadings stage, Plaintiff need not provide every example of ideological activity to prove this point, and the Plaintiff's additional

examples mentioned in briefing just illustrate the uncontested point. And the *Keller* deduction is no solution for this, because it only applies to a small slice of lobbying-related activity and misses everything else that is ideological and controversial, from the awards to the books to the magazine articles to the amicus briefs.

The Bar Defendants are quite right that the mandatory state bar involves a question of membership versus the fee-payer in *Janus*. Bar Def. Br. at 19.[1] But this distinction cuts in favor of Plaintiff, not Defendants, because the situation in this context is *worse* than in *Janus*. There, it was clear that the plaintiff was a non-member who was only being forced to subsidize the union's activities related to collective bargaining. Here, the plaintiff is forced to be a full member who is given the option of taking a partial deduction off his membership dues. In other words, the First Amendment rights of the plaintiff in *Janus* were violated because he was forced to subsidize the union's political activity. Here, the First Amendment rights of Plaintiff are violated because he is forced to both subsidize the Bar's political activity *and* to associate with the Bar as a member. Bar Defendants' "two wrongs make a right" argument is not convincing. Moreover, the State Bar is not so reticent about saying it speaks for all of its members on its website: "When the State Bar lobbies on 'general policy items of importance to the legal profession,' it does so 'on behalf of the entire membership.'"[2]

---

[1] To the extent this is a separate argument ("'Membership' in the State Bar Does Not Implicate First Amendment Rights"), it is also a new argument that was not raised or briefed below and should be considered waived. *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 636 (7th Cir. 2013).

[2] Compl. ¶ 17, quoting State Bar of Wisconsin Website, "Government Relations," at https://www.wisbar.org/aboutUs/GovernmentRelations/Pages/governmentrelations.aspx#/.

3

Additionally, nothing in this argument over forced affiliation, even if true, solves the additional problem of forced subsidy via mandatory dues.

The government speech cases like *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997), are no help to the Defendants.[3] *Keller* squarely and correctly holds that bar association membership is not government speech, 496 U.S. at 11-12, and Plaintiff has not sought the overruling of this holding, and the Bar Defendants have not argued that it should be overruled. *See* Appellant's Principal Br. at 27, n. 27 ("Plaintiff only seeks partial overruling because he believes that *Keller* correctly concluded that the State Bar is more like a trade association than a government agency as currently constituted, and should be analyzed under the principles governing compelled association rather than taxation.").

The Bar Defendants' also fail in their effort to distinguish *Janus* based on the concept of exclusive representation in labor law.[4] The problem in *Janus* was never specifically exclusive representation; indeed, *Janus* said it "substantially restricts the rights of individual employees" yet did not strike it down. *Janus*, 138 S. Ct. at 2460. The problem in *Janus* was any compelled association and any compelled subsidy. Mark Janus was just as free to speak out personally against the labor union's views

---

[3] To the extent this is a separate argument ("The Supreme Court Has Distinguished Integrated Bars from Mandatory Subsidies."), it is also a new argument that was not raised or briefed below and should be considered waived. *GE Betz, Inc.*, 718 F.3d at 636.

[4] To the extent this is a separate argument ("The State Bar's Operations Are Materially Distinguishable from the Union Activities in Janus"), it is yet another new argument that was not raised or briefed below and should be considered waived. *GE Betz, Inc.*, 718 F.3d at 636.

as the Plaintiff is to speak in the public square against the State Bar's views.

If anything, the Bar Defendants' briefing highlights the constitutional violation: "State Bar members are free to espouse their own views on any issue on which the State Bar speaks, even where the two views are directly contradictory." Bar Def. Br. at 21. In other words, you can totally disagree with us, and say you disagree with us, but we can still take your money and use it to say that which you disagree with even more loudly and to a bigger audience. And the *Keller* deduction "to avoid dues that are directed to chargeable activities to which they object," *id.*, is no solution to all of the ideological activity that isn't covered by the deduction. *See* Compl. ¶¶ 18-21.

Bar Defendants' final effort to distinguish *Janus* based on the opt-out and arbitration procedure also fails.[5] The Supreme Court in *Janus* critiqued the mechanism for opt-out and arbitration set forth in *Hudson*. *Janus*, 138 S. at 2482. The Bar Defendants' *Keller* notice is no more detailed in its accounting than the AFSCME notice quoted in *Janus*, compare *id.* with "NOTICE CONCERNING STATE BAR DUES REDUCTION AND ARBITRATION PROCESS."[6] The Bar may allow an objector seeking arbitration to retain his funds until the process has played out, but it is still on the objector to "pay for the attorneys and experts needed to mount a serious challenge." *Janus*, 138 S. Ct. at 2482. The Bar continues to use the *Hudson* procedures baptized

---

[5] Once again, to the extent this is a separate argument ("The State Bar's Operations Are Materially Distinguishable from the Union Activities in Janus"), it is also a new argument that was not raised or briefed below and should be considered waived. *GE Betz, Inc.*, 718 F.3d at 636.
[6] Available at https://www.wisbar.org/aboutus/membership/documents/keller-dues.pdf.

5

 by *Keller*, but these are the very procedures faulted in *Janus* as insufficiently informative and unfairly burdensome.

## II. *Keller* has been overruled by *Janus.*

*Hudson* also provides a good launching point to reach the heart of the debate over vertical stare decisis. *Janus* explicitly overruled *Abood*. 138 S. Ct. at 2460 ("*Abood* is therefore overruled.").[7] *Janus,* however, does not chant any magic words or utter any shibboleth regarding *Hudson*. Yet *Hudson* makes absolutely zero sense in a world without *Abood*; it only works within the framework laid down around it by its predecessor decision. Should lower courts, in the exercise of their professional legal judgment, be free to recognize that fact? Or must the Supreme Court make a footnote with a laundry list of all the decisions that are based on a single seminal decision each time it overrules a foundational opinion?

The State Defendants assert, "It is simply implausible, and legally insufficient, to assume the Court chose to implicitly overrule *Keller* without even a citation to it." State Def. Br. at 27. This goes directly to the question: is it possible for a lower court to ever recognize an overruling by implication or *sub silentio*? Plaintiff certainly grants that "[t]here is a presumption that the Supreme Court does not overrule itself *sub silentio*." *Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141, 149 (2d Cir. 2012).

---

[7] The Bar Defendants argue, "The alternative, finding a First Amendment injury in being identified as a member of any expressive organization with which a person might disagree on some issues, would mean that every integrated bar since the first integrated bar in the United States, created over a century ago, has been unconstitutional." Bar Def. Br. at 21. Is that not precisely the conclusion that *Janus* reached, that every mandatory agency fee has been unconstitutional, even if for a time the Supreme Court wrongly permitted it?

6

Phrased another way, the question is whether it is *per se* impossible for a party to ever rebut that presumption.

*Levine* holds the answer is yes, a party may show an overruling by implication, and sets out the circumstances when that test is met. *Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988). State Defendants and Bar Defendants themselves assume the ongoing validity of *Levine* and adopt Plaintiff's description of its test; neither of them asks this Court to discard or explicitly overrule that precedent in light of *Price* or any other case. Plaintiff has already explained the application of the *Levine* factors to this case, and will not repeat that analysis here. Appellant's Principal Br. at 24-27. Nor is it necessary to explain again why *Price* is different from the present case. Appellant's Principal Br. at 27-31.

The Eighth Circuit's decision on remand in *Fleck v. Wetch* should not influence this Court's resolution of this case. That decision focused its discussion of the mandatory-association claim on the procedural posture and lack of an evidentiary record. The opinion stated that Fleck "misrepresented his position before our court" in his cert. petition, "falsely asserted" that he made certain arguments below, and then actually made those arguments for the first time on remand. 937 F.3d 1112, 1116 (8th Cir. 2019). The court began its substantive discussion by restating its "general rule [that] we will not consider arguments raised for the first time on appeal as a basis for reversal." *Id.* After briefly stating Fleck's arguments as to the effect of *Janus* on *Keller*, the court continued,

7

> We decline to consider these issues because, whatever level of scrutiny is appropriate, the claim must still be decided on an evidentiary record. Based on prior Supreme Court precedent, we conclude the record is inadequate as the result of Fleck forfeiting the issue in the district court and on appeal. Accordingly, we decline to invoke our discretion to take up this claim for the first time on remand.

*Id*. at 1117. Thus, the Eighth Circuit's decision in *Fleck* can hardly be considered a thorough and thoughtful consideration of the substantive issues. In fact, the court declined to consider and rule on the issues brought before this Court.

Finally, this Court's previous summary disposition of *Jarchow* does not control the outcome in this case, for the reasons identified by Plaintiff in his opening brief. Appellant's Principal Br. at 26, n. 25. Additionally, the plaintiffs in *Jarchow* did not raise the arguments based on *Harris*, the *Fleck* GVR, and *Levine* raised in this case, each of which deserves this Court's consideration.

### III. Plaintiff has standing, and the justices are not immune from suit.

### A. Plaintiff has Article III standing.

This District Court correctly concluded that it had subject matter jurisdiction over this case because Plaintiff has all of the prerequisites of Article III standing: he has "been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). S.A. at 4-7.

8

This is a preenforcement challenge against the justices of the Wisconsin Supreme Court as the authority that imposes civil penalties for noncompliance with the Supreme Court's rules. (Wis.) S. Ct. R. 21.16 (1m) & (2m). *See Levine*, 864 F.2d at 458 (in a previous edition of the State Bar saga, case brought against all the justices of the court). In order to establish standing for a preenforcement challenge, Plaintiff must show "a credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). Under Wisconsin law, it is the justices who do the "enforcement" of the relevant rules, and thus are the proper subject of a challenge. The U.S. Supreme Court in *Susan B. Anthony List* found a credible threat of enforcement from an administrative agency that adjudicated violations and imposed civil penalties. *Id.* at 165. *See* Ohio Elections Comm. Rules 3517-1-11 and -14 (setting forth the commission's power to make adjudications and levy fines). Specifically, the Supreme Court found that "administrative action" such as "threatened Commission proceedings" constituted "harm sufficient to justify pre-enforcement review." *Susan B. Anthony List*, 573 U.S. at 165.

State Defendants overstate the Office of Lawyer Regulation (OLR)'s discretion in prosecuting failure to pay state bar dues. *See* State Def. Br. at 39-40. The Supreme Court's rules provide: "If the annual dues or assessments of any member remain unpaid 120 days after the payment is due, the membership of the member may be suspended in the manner provided in the bylaws; and no person whose membership is so suspended for nonpayment of dues or assessments may practice law during the period of the suspension." (Wis.) S. Ct. R. 10.03(6). The bylaws of the State Bar make

9

suspension *automatic* upon certification by Defendant Mr. Martin: "Failure to pay the dues by October 31 shall automatically suspend the delinquent member. The names of all members suspended from membership by the nonpayment of dues shall be certified by the Executive Director to the Clerk of the Supreme Court and to each judge of a court of record in this state. . ." (Wis.) S. Ct. R. Ch. 10 Appx. (State Bar Bylaws), Art. I, Sec. 3(a). OLR becomes involved if the suspended lawyer continues to practice in violation of the suspension.

If a lawyer does continue to practice after suspension for failure to pay dues, OLR likely must move forward with a case. The relevant rule says in full: "The office has discretion whether to investigate and to prosecute de minimus violations. Discretion permits the office to prioritize resources on matters where there is harm and to complete them more promptly." (Wis.) S. Ct. R. 21.02(1). The persistent, insistent, intentional nonpayment of State Bar dues is unlikely to be classified as a "de minimus" violation in the same way as "slightly tardy" notification to OLR of a misdemeanor criminal conviction. *In re Netzer,* 2014 WI 7, ¶ 48. Further limiting OLR's discretion is the Supreme Court's rule that "the court does not allow plea bargaining in attorney disciplinary cases." *In re Rajek*, 2017 WI 85, ¶ 14. Finally, the Supreme Court's rules specify that the director and staff of OLR "are acting on behalf of the supreme court in respect to the statutes and supreme court rules and orders regulating the conduct of attorneys." (Wis.) S. Ct. R. 21.13. Given that OLR has no discretion in prosecuting substantive violations, is an agency of the court, and acts on behalf of the court, it is clear that the real enforcement authority lies with the justices themselves. (Wis.) S.

Ct. R. 21.09(1) ("The supreme court determines attorney misconduct and medical incapacity and imposes discipline or directs other action in attorney misconduct and medical incapacity proceedings. . .").

On top of the foregoing, this Court has said that the possibility of non-prosecution is no bar to standing. *ACLU v. Alvarez*, 679 F.3d 583, 593-94 (7th Cir. 2012) ("It is well established that in preenforcement suits injury need not be certain. . . . Preenforcement suits always involve a degree of uncertainty about future events." (Internal quotations omitted)).

Plaintiff can show an objectively reasonable fear of enforcement by the justices such that he engages in self-censorship: he declines to exercise his constitutional right to withdraw from membership in the State Bar. "Such self-censorship in the face of possible legal repercussions suffices to show Article III injury." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (quoting *National Org. for Marriage v. McKee*, 649 F.3d 34, 48-49 (1st Cir. 2011)). *Accord Seegars v. Ashcroft*, 396 F.3d 1248, 1254 (D.C. Cir. 2005) ("[O]ur cases upholding preenforcement review of First Amendment challenges . . . appear to have rested on the special concern for 'chilling effects' on speech.").

Additionally, the State Defendants substantially overstate the holding of *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (7th Cir. 1993). Nowhere in that decision does this Court rely on or even mention the role of OLR as the prosecutor distinguished from the justices as the enforcer of the rules. Moreover, in that case: "When pressed by the panel during oral argument Plaintiffs' counsel conceded that he was unaware of any

11

Wisconsin lawyer ever being disciplined by the Justices for that lawyer's failure to pay dues to the integrated bar. In the absence of any real threat of harm resulting from noncompliance with the dues requirement, Plaintiffs' immediate claim is not ripe against the Justices. . ." *Crosetto*, 12 F.3d at 1403. Notably, then, *Crosetto* concerned ripeness, rather than authority (i.e., the intervening discretion of OLR). Plaintiff's counsel here is in a very different position as to the "real threat of harm" based on the recent record of the justices' disciplinary actions. *See In re Amoun Vang Sayaovong*, 2015 WI 100, ¶ 16 (administrative suspension for failure to pay bar dues); *In re FitzGerald*, 2007 WI 111, ¶ 6 (same); *In re White*, 2019 WI 95, ¶ 14; *In re Eichhorn-Hicks*, 2019 WI 91, ¶ 17 (same); *In re Grass*, 2019 WI 35, ¶ 46; *In re Fischer*, 2019 WI 36, ¶ 15 (same); *In re Burton*, 2019 WI 30, ¶ 21 (same); *In re Perez*, 2019 WI 99 (attorney disciplined for failure to advise client of suspended license due to failure to pay mandatory dues); *In re Capistrant*, 2015 WI 88, ¶ 9 (same). As these cases all make clear, the Wisconsin Supreme Court justices regularly impose discipline and sanctions for failure to pay mandatory bar dues, and Plaintiff has an objectively reasonable fear that the same enforcement would occur against him if he acts in accord with his constitutional right to be free from forced association.

**B. The justices are not immune from this suit**.

The justices are immune from suit as the creators of their rules, but not as the enforcers of those rules. *See* Compl. at 9 (seeking as relief an order "[e]njoin[ing] the Justices of the Wisconsin Supreme Court from enforcing their rules requiring State Bar membership through the attorney disciplinary process."). Thus, rulemaking

12

immunity does not protect them. *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005). Nor does Plaintiff seek "damages liability for acts performed in their judicial capacities." *Supreme Court of Va. v. Consumers Union of United States*, 446 U.S. 719, 735 (1980).

Rather, this is a suit against them in their administrative capacity as the enforcers of the Wisconsin Supreme Court's administrative rules. When the Court enforces attorney discipline, it acts in its administrative capacity. *See* Wis. Const. Art. VII, Sec. 3(1) ("The supreme court shall have superintending and administrative authority over all courts."). *Accord State ex rel. Moran v. Dep't of Admin.*, 103 Wis. 2d 311, 317 (1981) (describing the Court as "an autonomous administrative body" in its administration of the courts system). Acting in that capacity, it is comparable to any administrative agency which issues enforcement orders and is thus subject to preenforcement challenges and injunctive relief as to that enforcement power. *See Susan B. Anthony List*, 573 U.S. at 165.

*Supreme Court of Virginia* is not inapposite. There, the U.S. Supreme Court found "immunity does not shield the Virginia Court and its chief justice from suit in this case . . . because of its own inherent and statutory enforcement powers." 446 U.S. at 737. The U.S. Supreme Court noted that in addition to its inherent contempt powers, a Virginia court may also issue a show-cause order against any attorney if it "observes any act of unprofessional conduct . . . without any complaint being filed by the State Bar or any third party." *Id.* at 724. However, at that point the responsibility for prosecuting the misconduct is given to the commonwealth attorney, after which the case

13

proceeds through normal disciplinary channels. *Id.* The U.S. Supreme Court's ruling encompasses the entirety of the Virginia Supreme Court's "inherent and statutory enforcement powers," including not only initiating a complaint with a show-cause order, but also finding facts, adjudicating guilt, and enforcing penalties. The latter three of these four powers also lie in the Wisconsin Supreme Court.[8]

For similar reasons, the State Defendants have no sanctuary in *Reeder v. Madigan*, where the Seventh Circuit considered the Illinois House of Representatives' "power to enforce those rules via disciplinary proceedings," much like the disciplinary enforcement here. 780 F.3d 799, 805 (7th Cir. 2015). The Seventh Circuit continued, "Reeder's argument falls flat because it does not take into account the raison d'être of the Court's decision in *Supreme Court of Virginia*. The defendants' decision to deny him [press] credentials was nothing like a prosecution. It did not impose any kind of liability on him, nor did it deprive him of a license or permit." *Id*. The Illinois legislature's decision to deny a press credential to a reporter is very different from the Wisconsin Supreme Court's power to deprive an attorney of his law license, and impose monetary penalties to boot. *See* (Wis.) S. Ct. R. 21.16 (1m). In sum, the justices are being sued in their administrative enforcement capacity, and as such they are not

---

[8] The U.S. District Court for the District of Oklahoma concluded that the justices of that state's high court did not enjoy legislative immunity from a state bar challenge because they "act in an enforcement capacity" in this instance. *Schell v. Williams*, 5:19-cv-00281-HE (W.D. Okla. 2019), Doc. 61, at 3. The Oklahoma Supreme Court also has an Office of General Counsel that prosecutes all violations, like OLR, but the justices are ultimately responsible for enforcement.

14

immune from suit. Though the District Court got the *Janus* question wrong, it did reach the correct conclusion as to the justices' immunity. S.A. at 7-8.

## CONCLUSION

The District Court's decision granting the motion to dismiss should be reversed and Plaintiff should be permitted to proceed with his case to prove the violation of his First Amendment rights.

Dated: November 30, 2020

<u>/s/ Daniel R. Suhr</u>
Daniel R. Suhr
Jeffrey M. Schwab
Liberty Justice Center
190 S. LaSalle St., Suite 1500
Chicago, IL 60603
(312) 263-7668
dsuhr@libertyjusticecenter.org
jschwab@libertyjusticecenter.org
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7). The foregoing brief was prepared using Microsoft Word 2010 and contains 3,751 words in 12-point proportionately spaced Century Schoolbook font.

/s/ Daniel R. Suhr
Daniel R. Suhr
*Counsel of Record for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2020, I electronically filed the foregoing Appellants' Brief with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

>/s/ Daniel R. Suhr
Daniel R. Suhr
*Counsel of Record for Appellant*